1  MICHAEL RUBIN (SBN 80618)
   BARBARA J. CHISHOLM (SBN 224656)
2  MATTHEW J. MURRAY (SBN 271461)
   P. CASEY PITTS (SB 262463)
3  Altshuler Berzon LLP
   177 Post Street, Suite 300
4  San Francisco, California 94108
   Telephone: (415) 421-7151
5  Facsimile: (415) 362-8064
   E-mail:   mrubin@altber.com
6            bchisholm@altber.com
             cpitts@altber.com
7            mmurray@altber.com

8  JOSEPH M. SELLERS (*pro hac vice*)
   ABIGAIL E. SHAFROTH (*pro hac vice*)
9  Cohen Milstein Sellers & Toll, PLLC
   1100 New York Ave NW, Suite 500
10 Washington, DC 20005
   Telephone: (202) 408-4600
11 Facsimile: (202) 408-4699
   E-mail: jsellers@cohenmilstein.com
12          ashafroth@cohenmilstein.com

13 Attorneys for Plaintiffs

14          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15

16 GUADALUPE SALAZAR, GENOVEVA          CASE NO.   3:14-CV-02096-RS
   LOPEZ, and JUDITH ZARATE, on behalf of
   themselves and all others similarly situated,   **CLASS ACTION - FIRST AMENDED**
17                                                  **COMPLAINT**
            Plaintiffs,
18                                                  1.  Failure to Pay All Wages When Due
   vs.                                              2.  Failure to Pay Overtime Wages
19                                                  3.  Failure to Pay Minimum Wages
   MCDONALD'S CORP., a corporation,                 4.  Failure to Provide Required Meal Periods
20 MCDONALD'S U.S.A., LLC, a limited liability          or Pay Missed Meal Period Wages
   company, MCDONALD'S RESTAURANTS OF              5.  Failure to Provide Required Rest Breaks or
21 CALIFORNIA, INC., a corporation, BOBBY O.           Pay Missed Rest Break Wages
   HAYNES SR. AND CAROL R. HAYNES                  6.  Failure to Maintain Required Records
22 FAMILY LIMITED PARTNERSHIP d/b/a               7.  Failure to Furnish Accurate Itemized Wage
   MCDONALD'S, a limited partnership, and DOES        Statements
23 1 through 100, inclusive,                        8.  Failure to Indemnify Employees for
                                                        Necessary Expenses
24          Defendants.                             9.  Negligence
                                                    10. California Labor Code Private Attorneys
25                                                      General Act
                                                    11. Unfair and Unlawful Business Practices
26                                                  12. Declaratory Judgment
                                                    13. Retaliation
27
                                                    **DEMAND FOR JURY TRIAL**
28

─────────────────────────────────────────────
FIRST AMENDED COMPLAINT; Case No. 3:14-CV-02096-RS

# INTRODUCTION

1.     This is a class action brought under California law by three individuals who are employed as crew members in McDonald's fast-food restaurants in Northern California operated by Defendant Bobby O. Haynes Sr. and Carol R. Haynes Partnership Limited Partnership, d/b/a McDonald's (along with Doe defendants 51 through 100, hereinafter "Haynes Partnership") as franchisee of Defendants McDonald's Restaurants of California, Inc., McDonald's U.S.A., LLC, and McDonald's Corporation (along with Doe defendants 1 through 50, collectively hereinafter "McDonald's").  Plaintiffs Guadalupe Salazar, Genoveva Lopez, and Judith Zarate bring this action on behalf of themselves and others similarly situated to recover the wages that Defendants unlawfully failed to pay them in violation of California law.

2.     Plaintiffs Salazar, Lopez and Zarate are low-wage crew members working at the franchised McDonald's restaurants in Oakland, California that are operated by Haynes Partnership. Plaintiffs each struggle to support themselves and their families with the subsistence wages they earn from Defendants, and their ability to pay for the most basic necessities of life is reduced even further by Defendants' failure to pay what the law requires, as alleged herein.

3.     By contrast, McDonald's is a multi-billion dollar business.  On information and belief, it operates more than 35,000 restaurants globally, including approximately 1,300 restaurants in California.  McDonald's and Haynes Partnership share legal responsibility for the wage theft and other violations of the crew members' legal rights at the McDonald's-franchised restaurants operated by Haynes Partnership in California.

4.     Plaintiffs, like their crew member co-workers whom Defendants also employed during the applicable limitations period, spend or spent their workdays at McDonald's restaurants filling orders, preparing and cooking food, cleaning the restaurant, and serving customers under strictly regimented and pressured circumstances.  That pressure results in significant part from McDonald's insistence that its franchisees like Defendant Haynes Partnership must strictly monitor, control, and curtail labor costs, which Defendants accomplish by not paying for all hours worked, not paying overtime premiums for all overtime hours, not paying the required extra hour for missed meal periods and rest breaks, and by using other unlawful stratagems to comply with

McDonald's requirement that labor costs at its franchised restaurants may not exceed a designated, and artificially low, percentage of the restaurant's gross sales.  Compounding this pressure is McDonald's insistence that its franchised restaurants must also meet McDonald's strict labor-intensive expectations for operational procedure and speed of service.

5.     Although McDonald's has entered into a Franchise Agreement with Haynes Partnership that, on information and belief, purports to delegate responsibility for restaurant operations and for control over employees to Haynes Partnership, Haynes Partnership operates its franchised restaurants as an agent of McDonald's.  At all relevant times McDonald's has directed and controlled the restaurants' operations, including by controlling the material terms and conditions of employment of Plaintiffs and all other similarly situated crew members.

6.     Despite McDonald's vast revenues and multi-billion dollar annual profits, Defendants pay or paid Plaintiffs and other crew members only the minimum wage or slightly more than the minimum wage.  Indeed, according to published reports, due to the low wages McDonald's pays employees, the government is required to spend approximately $1.2 billion annually on McDonald's employees in anti-poverty program aid, including Supplemental Nutrition Assistance Program ("food stamps") and Temporary Assistance for Needy Families.  Defendants then reduce Plaintiffs' and crew members' ability to earn even the bare minimum reflected in their low wage rates by engaging in a variety of forms of unlawful wage theft, including but not limited to: altering or condoning the alteration of time records to avoid paying Plaintiffs and other crew members for time they work and for overtime premiums they earn; requiring, suffering, or permitting Plaintiffs and other crew members to work off the clock without compensation; failing to pay legally required additional wages when Defendants fail to provide Plaintiffs and crew members with full and timely meal periods and rest breaks; and failing to indemnify Plaintiffs and other crew members for necessary business expenses they incur in the discharge of their duties, including requiring Plaintiffs and other crew members to bear the expense of cash register shortages and failing to reimburse the expense of cleaning required uniforms as required by California law.

7.     Plaintiffs seek compensatory, statutory, declaratory, and injunctive relief for

themselves and the class of all current and former crew member employees of McDonald's restaurants operated by Haynes Partnership in California during the applicable limitations period ("Class Members"), to compensate these workers for the unpaid and underpaid wages that Defendants Haynes Partnership and McDonald's have stolen from them and to protect current and future McDonald's workers from being subjected to similar wage theft and otherwise unlawful working conditions by this multi-billion dollar business.

## PARTIES

8.       Plaintiff GUADALUPE SALAZAR is a fast-food restaurant worker who has been employed by Defendants as a crew member at the McDonald's restaurant located at 7300 Bancroft in Oakland, California, from approximately June 2012 through the present.  Ms. Salazar is a resident of Oakland, California.  Her wage rate is the California minimum wage, $9.00 per hour.

9.       Plaintiff GENOVEVA LOPEZ is a fast-food restaurant worker who has been employed by Defendants as a crew member at the McDonald's restaurant located at 2520 East 12th Street in Oakland, California, from approximately May 2013 through the present.  Ms. Lopez is a resident of Oakland, California.

10.       Plaintiff JUDITH ZARATE is a fast-food restaurant worker who has been employed by Defendants as a crew member at the McDonald's restaurant located at 2520 East 12th Street in Oakland, California, from approximately 2003 through the present.  Ms. Zarate is a resident of Oakland, California.

11.       Each of the Plaintiffs identified immediately above brings this lawsuit on her own behalf, on behalf of all similarly situated current and former McDonald's crew members employed by Defendants at Haynes Partnership-operated restaurants in the State of California, and on behalf of all aggrieved employees and the general public pursuant to California Labor Code §2698 et seq. and California Business & Professions Code §17200 et seq.  Plaintiffs bring this class action for injunctive relief and to recover, among other things, wages and penalties from unpaid wages earned and due, including but not limited to unpaid wages for time worked off the clock, unpaid minimum wages, unpaid and illegally calculated overtime compensation, late and missed meal period and rest break wages, wages due to discharged or quitting employees, penalties for failure to maintain

3

1   required records and to provide accurate itemized wage statements, unreimbursed business

2   expenses, and interest, attorneys' fees, costs, and expenses.

3        12.    The proposed class these Plaintiffs seek to represent includes the following similarly

4   situated individuals ("Class Members"):  All individuals currently or formerly employed by

5   Defendants as crew members at one or more of Defendant Haynes Partnership's franchised

6   McDonald's restaurants in California ("the Restaurants"), at any time within the period beginning

7   four (4) years prior to the filing of this action and ending at the time this action proceeds to final

8   judgment or settles (the "Class Period").  Plaintiffs reserve the right to name additional class

9   representatives and to identify sub-classes and sub-class representatives as may be necessary and

10  appropriate.

11       13.    Plaintiffs are informed and believe, and thereon allege, that Defendant

12  MCDONALD'S CORPORATION is a multinational, multi-billion dollar Delaware corporation,

13  with its principal place of business in Illinois.  On information and belief, McDonald's Corporation

14  operates more than 35,000 restaurants globally and in all 50 states, including California.  At all

15  relevant times, on information and belief, Defendant McDonald's Corporation has done business in

16  California and committed the unlawful acts alleged in this Complaint.

17       14.    Plaintiffs are informed and believe, and thereon allege, that Defendant

18  MCDONALD'S U.S.A., LLC is a multinational, multi-billion dollar Delaware limited liability

19  company with its principal place of business in Illinois, which operates restaurants in all 50 states,

20  including California.  On information and belief, Defendant McDonald's U.S.A., LLC is a wholly-

21  owned subsidiary of Defendant McDonald's Corporation.  At all relevant times, on information

22  and belief, Defendant McDonald's U.S.A., LLC has done business in California and committed the

23  unlawful acts alleged in this Complaint.

24       15.    Plaintiffs are informed and believe, and thereon allege, that Defendant

25  MCDONALD'S RESTAURANTS OF CALIFORNIA, INC. is a California corporation and a

26  wholly-owned subsidiary of McDonald's U.S.A., LLC and/or of McDonald's Corporation, and

27  operates more than 1,300 restaurants in California.  At all relevant times, on information and belief,

28  Defendant McDonald's Restaurants of California, Inc. has done business in California and

1  committed the unlawful acts alleged in this Complaint.

2      16.     Plaintiffs are informed and believe, and thereon allege, that Defendant BOBBY O.

3  HAYNES SR. AND CAROL R. HAYNES FAMILY LIMITED PARTNERSHIP, d/b/a

4  McDonald's, also known as BobCar McDonald's, BobCar Partnership, or Bob Car Management

5  Co., is a California limited partnership that conducts business in California, principally operating

6  fast-food restaurants and providing restaurant and related services.  Bobby O. Haynes Sr. and Carol

7  R. Haynes Partnership Limited Partnership operates at least six fast-food McDonald's restaurants

8  in California pursuant to franchise agreements with McDonald's, including but not limited to

9  restaurants located at 7300 Bancroft and 2520 East 12th Street in Oakland, California, and

10  restaurants at four other locations in Oakland and San Leandro, California.

11      17.     Defendant Bobby O. Haynes Sr. and Carol R. Haynes Partnership Limited

12  Partnership is owned and operated by Bobby O. Haynes, Sr., Carol R. Haynes, Michele Haynes-

13  Watts, and Bobby O. Haynes, Jr.

14      18.     The true names and capacities of DOES 1 through 100, inclusive, are unknown to

15  Plaintiffs at this time, and Plaintiffs therefore sue such DOE Defendants under fictitious names.

16  Plaintiffs are informed and believe, and thereon allege, that each Defendant designated as a DOE is

17  in some manner responsible for the occurrences alleged herein, and that Plaintiffs' and Class

18  Members' injuries and damages, as alleged herein, were proximately caused by the conduct of such

19  DOE Defendants.  Plaintiffs will seek leave of the court to amend this Complaint to allege the true

20  names and capacities of such DOE Defendants when ascertained.

21      19.     Defendants MCDONALD'S CORPORATION, MCDONALD'S U.S.A., LLC,

22  MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., and DOES 1 through 50, inclusive,

23  are collectively referred to herein as "McDonald's."

24      20.     Defendants BOBBY O. HAYNES SR. AND CAROL R. HAYNES FAMILY

25  LIMITED PARTNERSHIP and DOES 51 through 100, inclusive, are collectively referred to

26  herein as "Haynes Partnership."

27      21.     Defendants Haynes Partnership and McDonald's at all relevant times have been

28  employers covered by the California Labor Code and California Industrial Welfare Commission

1  ("IWC") Wage Order 5-2001.

2  <p style="text-align:center"><strong>JURISDICTION AND VENUE</strong></p>

3      22.    Plaintiffs originally filed this matter on March 12, 2014 in the Superior Court of the

4  State of California in the County of Alameda.  That court had jurisdiction because Defendants

5  McDonald's and Haynes Partnership regularly conduct business in California.   Venue in that

6  court was proper because Plaintiffs Salazar, Lopez, Zarate, and other persons similarly situated

7  performed and continue to perform work for Defendants in the County of Alameda.  Defendants

8  maintain offices and facilities and transact business in the County of Alameda, and Defendants'

9  illegal wage theft policies and practices that are the subject of this action were applied, and

10  continue to be applied, at least in part, to Plaintiffs and other persons similarly situated in the

11  County of Alameda.

12      23.    On May 7, 2014, Defendant Haynes Partnership removed this matter to federal court

13  pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The parties have agreed,

14  in a Joint Case Management Statement filed on August 7, 2014, that venue is proper in the United

15  States District Court of the Northern District of California, and that this Court has personal

16  jurisdiction over all known parties.

17  <p style="text-align:center"><strong>GENERAL FACTUAL ALLEGATIONS</strong></p>

18      24.    McDonald's contracts with, on information and belief, approximately 300

19  franchisees that operate McDonald's restaurants in California.

20      25.    Defendant Haynes Partnership, d/b/a McDonald's, is a McDonald's franchisee that

21  operates at least six McDonald's restaurants in Alameda County, California (hereinafter

22  "Restaurants").

23      26.    Plaintiffs Salazar, Lopez, and Zarate are McDonald's crew members who performed

24  and continue to perform work in the Restaurants owned and operated by Defendants Haynes

25  Partnership and McDonald's.  Plaintiffs seek relief from Defendants' policies and practices of

26  denying Plaintiffs and Class Members wages and compensation owed under California law.

27      27.    Haynes Partnership and McDonald's jointly operate the Restaurants and tightly

28  control and monitor the working conditions of Plaintiffs and Class Members, including but not

limited to controlling and monitoring the job duties performed by crew members, the hours worked by crew members, and the rate of service provided by crew members in the Restaurants.

28.     Defendants have a policy and practice of engaging in comprehensive classwide measures to curtail labor costs and to limit labor costs to a defined percentage of sales revenues, even when complying with McDonald's requirement of maintaining such a low ratio labor costs to total sales results in violations of Plaintiffs' and Class Members' workplace rights under California law.

29.     Defendants reduce the labor costs in the Restaurants not only by paying low wages to Plaintiffs and Class Members, but also by maintaining, encouraging, and approving policies and practices that have the purpose and effect of depriving Plaintiffs and Class Members of their full and timely wages when due.

30.     As a result of the policies and practices described below, work time that Plaintiffs and Class Members perform is routinely not recorded by Defendants on Plaintiffs' and Class Members' pay stubs, and Defendants have failed and continue to fail to compensate Plaintiffs and Class Members for all wages due to them and for missed, late, and shortened rest breaks and meal periods, as required by California law.

A.     **Plaintiffs' Work as McDonald's Crew Members**

31.     In each of the Restaurants, low-wage crew members including Plaintiffs perform and have performed a variety of duties, including but not limited to working as cashiers, taking food orders from customers at the counter and at the drive-through, serving food to customers, stocking supplies, preparing and cooking food, and cleaning the restaurant.

32.     Plaintiffs and Class Members applied to work and were hired to perform work in the Restaurants by making applications through McDonald's on-line application form, "Hiring to Win," and by submitting applications to managers in the Restaurants.  For example, Plaintiffs Salazar and Lopez applied through McDonald's on-line application form.

33.     Plaintiffs and Class Members work and have worked a variety of scheduled shifts in the Restaurants, including but not limited to shifts as short as three hours and as long as 10 hours.

34.     Plaintiffs and Class Members are directly supervised in the Restaurants by

7

managers, including a store manager and shift managers.  These managers inform crew members of their work assignments and work schedules, and instruct crew members as to when they may take breaks.  No Plaintiff or crew member is permitted to take any meal period or rest break unless and until a manager expressly instructs the worker to take that specific break.  These managers, at the direction of others at both Haynes Partnership and McDonald's, closely monitor and take steps to control labor costs in the Restaurants throughout the workday.

**B.      Defendants' Wage Theft**

<u>Alteration of Time Records</u>

35.      Defendant Haynes Partnership is required by McDonald's to use and does in fact use a computer hardware and software system including a point-of-sale ("POS") system (referred to collectively hereinafter as "computer system") in the Restaurants that is designed and maintained by McDonald's to enable Haynes Partnership and McDonald's to closely monitor data about labor and sales in the Restaurants.  Among other things, the computer system collects real-time information regarding each employee's hours, including punch-in and punch-out times, and pay rates.

36.      Plaintiffs and Class Members are required to punch in at the beginning of their shift and to punch out at the end of their shift.  They are also required to punch out at the beginning of each meal period and rest break and to punch back in at the end of each meal period and rest break.

37.      McDonald's computer system tracks Plaintiffs' and Class Members' punch-in and punch-out times.

38.      Plaintiffs are informed and believe, and thereon allege, that:

a.      McDonald's computer system indicates to restaurant managers when a crew member's punch-in and punch-out times entitle that crew member to premium pay for overtime hours worked, and when a crew member has not received a full or timely rest break or meal period.

b.      Restaurant managers are able to, and routinely do, alter the punch-in and punch-out times of crew members in McDonald's computer system.  For example, Plaintiffs have received paychecks showing fewer hours than they were punched in and

worked because, on information and belief, managers altered their punch records.

c. Restaurant managers engage in a policy and practice of altering the punch-in and punch-out times of crew members in order to change time entries that demonstrate when those crew members did not receive a legally required meal period or rest break and in order to eliminate time that crew members worked past the end of their scheduled shifts and/or time that would be subject to overtime pay requirements.

d. Defendants engage in a practice of managerial alteration of time records as a means of reducing their crew members' hours as reflected in McDonald's computer system.

e. McDonald's computer system records and retains records of all alterations to crew members' punch-in and punch-out times.

f. Defendants are aware of, condone, ratify, and intentionally accept the benefits of their practice and policy of altering Plaintiffs' and Class Members' time records in a manner designed to under-report and under-pay the time actually worked by Plaintiffs and Class Members.

<div align="center">Off-the-Clock Work</div>

39. Defendants have required Plaintiffs and Class Members to perform unpaid off-the-clock work in violation of California law.

40. Defendants' managers require, suffer, or permit Plaintiffs and Class Members to perform work at times those workers are not punched into McDonald's computer system.  For example, managers have required, suffered, or permitted Plaintiff Salazar to work before punching in when she arrived before her shift was scheduled to start.  Such time worked is not recorded in McDonald's computer system and is not compensated.

41. Plaintiffs are informed and believe, and thereon allege, that Defendants have a policy and practice of requiring crew members to engage in off-the-clock work in order to maintain low "labor" cost numbers in the McDonald's computer system and to avoid recording overtime hours.

42. All of the unpaid work that Defendants required, suffered, or permitted Plaintiffs

<div align="center">9</div>

1   and Class Members to perform has benefitted Defendants, enabling them to increase profits at the

2   workers' expense and to keep labor costs lower, both in absolute terms and as a percentage of

3   sales.

4                    Missed, Late and Shortened Meal Periods and Rest Breaks

5          43.     Defendants engage in a policy and practice of providing rest breaks and meal

6   periods to Plaintiffs and Class Members in such a manner that Plaintiffs and crew members have

7   not and do not receive timely and full rest breaks and meal periods.  Defendants fail to pay required

8   additional wages when Plaintiffs and Class Members are not provided timely and full rest breaks

9   and meal periods.

10         44.     Restaurant managers determine when Plaintiffs and Class Members may take rest

11  breaks and meal periods.  With rare exception, Plaintiffs and Class Members are not permitted to

12  take a rest break or meal period without first being specifically instructed by a manager that they

13  must go on break.

14         45.     Defendants have a policy and practice of not permitting Plaintiffs and Class

15  Members to take rest breaks and meal periods when the Restaurants are busy.

16         46.     Plaintiffs are informed and believe, and thereon allege, that Defendants have a

17  policy and practice of not permitting Plaintiffs and Class Members to take rest breaks and meal

18  periods when a store inspection from a Mystery Shopper is expected.  As described in paragraph 82

19  below, a Mystery Shopper is an agent of McDonald's who routinely visits McDonald's restaurants

20  to evaluate the service he or she receives.  Plaintiffs are informed and believe, and thereon allege,

21  that the Restaurants' managers are aware of the time period during which such Mystery Shopper

22  visits will occur.  Defendants have a policy and practice of not permitting Plaintiffs and Class

23  Members to take rest breaks or meal periods during that period, which may be a two- or three-hour

24  time period.  For example, Defendants' managers have told Plaintiff Salazar not to take rest breaks

25  or meal periods when a Mystery Shopper may visit.  Defendants' managers have also told Plaintiff

26  Lopez that she may not go on rest breaks or meal periods during corporate inspections.

27         47.     Because of the policies and practices described above, Defendants regularly fail to

28  provide Plaintiffs and other crew members with a full 30-minute meal period beginning within the

first five hours of work.  For example, Plaintiffs Salazar and Lopez have regularly worked five or more hours before receiving a duty-free 30-minute meal period.

48.     Defendants have a policy and practice of providing Plaintiffs and Class Members with rest breaks that are provided earlier or later than legally required, including by not providing Plaintiffs and Class Members with their first ten-minute rest break until more than 3-1/2 hours of work, and by requiring Plaintiffs and Class Members to take their rest break near or at the beginning of their shift, even when it is reasonably practicable to provide the required break near or at the middle of the work period.  For example, Plaintiffs Lopez and Zarate have often not been permitted to take a rest break until after they have worked four or more hours, and Plaintiff Salazar has been required to take a rest break at the very beginning of her shift.

49.     Defendants have a policy and practice of requiring Plaintiffs and Class Members, when they work shifts that entitle them to a second ten-minute rest break, to take their second ten-minute rest break toward the end or at the very end of their shift, or to not take a second break at all, even when it is reasonably practical to provide the required break near or at the middle of the work period.  For example, managers have required Plaintiffs to take their second rest break on shifts lasting six hours or longer near or at the end of their shifts, or have denied them a second rest break altogether.

50.     Defendants have a policy and practice of requiring Plaintiffs and Class Members, when they work shifts that entitle them to a second ten-minute rest break, to combine their first or second ten-minute rest break with their thirty-minute meal period, even when it is reasonably practicable to provide the required rest break near or at the middle of the shift.  For example, Plaintiff Lopez has been required to combine her ten-minute rest break and thirty-minute meal period despite it being reasonably practicable to take them separately.

51.     Plaintiffs are informed and believe, and thereon allege, that Defendants require Plaintiffs and Class Members to take late rest breaks and meal periods and to combine rest breaks and meal periods in order to minimize the need to schedule coverage for crew members who are on breaks and to keep labor costs artificially and unlawfully low.

52.     Defendants have a policy and practice of providing Plaintiffs and Class Members

1    with rest breaks that are less than ten minutes in length.

2        53.    Plaintiffs are informed and believe, and thereon allege, that Restaurant managers

3    have a practice of adjusting the punch records of Plaintiffs and Class Members to show that they

4    received full and timely ten-minute rest breaks and full and timely thirty-minute meal periods when

5    they did not.

6        54.    Even though Defendants' time records generally record the exact times of crew

7    member breaks (subject to the problems discussed in paragraphs 35-38), thus providing Defendants

8    with full knowledge of when Plaintiffs and Class Members are not receiving meal periods and rest

9    breaks in compliance with California law, Defendants have a policy and practice of failing to pay

10   Plaintiffs and Class Members one hour of additional pay at their regular rate for each day in which

11   they are not provided a rest break or meal period for the reasons discussed in paragraphs 43-53 or

12   for any other reason.

13                              Failure to Pay Overtime Rates

14       55.    Plaintiffs and Class Members regularly have not received premium pay for the time

15   they work in excess of eight hours per day and 40 hours per week.  For example, Plaintiffs Salazar

16   and Zarate have worked more than eight hours in a day and not been paid overtime.

17       56.    Plaintiffs are informed and believe, and thereon allege, that Restaurant managers

18   have a policy and practice of altering crew members' recorded hours in the McDonald's computer

19   system to eliminate overtime hours from the time records and/or to move to a different date or

20   otherwise alter overtime hours so that the hours are treated as not subject to overtime premium pay.

21       57.    Plaintiffs are informed and believe, and thereon allege, that the McDonald's

22   computer system alerts Restaurant managers when a crew member's recorded punch-in and punch-

23   out times entitle the crew member to overtime and notifies the managers that this is an "overtime

24   violation."

25          Failure to Keep Accurate Records and Provide Accurate Itemized Wage Statements

26       58.    As a result of the policies and practices described above, Defendants do not keep

27   accurate records of, or provide Plaintiffs and Class Members accurate itemized wage statements

28   reflecting, all time that Plaintiffs and Class Members work or the proper wage rates, including but

1   not limited to overtime rates, applicable to all hours that Plaintiffs and Class Members work.

2   59.   The pay stubs and itemized wage statements provided to Plaintiffs and Class

3   Members are not accurate because they fail to identify McDonald's as a joint employer of Plaintiffs

4   and Class Members.

5   Failure to Indemnify Employees for Necessary Expenses

6   60.   When crew members working as cashiers show a cash shortage at the end of their

7   shifts, Defendants have required them, including Plaintiff Salazar, to make up the shortage with

8   their own money without showing that the shortage was the result of the crew members' gross

9   negligence or willful or intentional act.

10   61.   Defendants have required or require that Plaintiffs and Class members wear

11   McDonald's uniforms as a condition or employment.  Defendants provided or provide a limited

12   number of uniforms to Plaintiffs and Class Members, yet have implemented no policy or practice

13   that provides for the maintenance of these uniforms.  Consequently, Plaintiffs and Class Members

14   have been required to incur expenses and/or to spend unpaid time to maintain their uniforms

15   themselves.  Because Defendants run a food service business, the uniforms of Plaintiffs and Class

16   Members regularly become greasy or dirty and necessitate special and/or frequent cleaning.

17   Defendants have a policy and practice of failing to reimburse Plaintiffs and Class Members for the

18   reasonable expenses they have incurred in maintaining their uniforms, and of failing to pay them

19   for the time they must spend maintaining their uniforms.

20   Retaliation

21   62.   After Plaintiff Salazar complained to an owner of Haynes Partnership that her pay

22   check did not show all the hours she worked, her manager retaliated against her by reducing her

23   hours, scheduling her to work on days she could not work, denying her requested vacation days

24   denied, harassing her in the restaurant, and otherwise.  Her manager also threatened her with

25   termination and told her not to report pay check problems to the owners again.

26   63.   In the summer and fall of 2014, following Plaintiff Salazar's filing of this lawsuit

27   and raising concerns regarding her pay, breaks, and other conditions of employment, Ms. Salazar

28   was subjected to adverse treatment by her manager at Haynes Partnership.  For example, Ms.

13

1    Salazar's manager at Haynes Partnership disciplined Ms. Salazar on the grounds that she was

2    purportedly uncooperative and threatened Ms. Salazar with suspension from work.  On information

3    and belief, these adverse actions against Ms. Salazar were in retaliation for her raising concerns

4    about her conditions of employment and her involvement in this lawsuit.

5    **C.      McDonald's System and the McDonald's Franchise**

6          64.    McDonald's operates, franchises, and services a system of restaurants that prepare,

7    assemble, package, and sell a limited menu of value-priced foods under the McDonald's System.

8    The McDonald's System is a concept of restaurant operations that includes, among other things,

9    certain rights in trademarks, real estate, marketing, and operational information designed to

10   promote uniformity of operations.

11         65.    The key to McDonald's success, according to its own internal and publicly filed

12   documents, is "branding" – developing and maintaining customer trust in the McDonald's brand,

13   so whether that customer is in a restaurant owned and operated by McDonald's directly or owned

14   and operated by a franchisee, and whether the customer is in a restaurant in his or her hometown, a

15   neighboring state, or a foreign country far away, the customer will know what to expect from the

16   McDonald's experience, including what to expect from McDonald's crew member interactions.

17         66.    Plaintiffs are informed and believe, and thereon allege, that globally, approximately

18   7,000 McDonald's restaurants are owned and operated directly by McDonald's, and approximately

19   28,000 are owned and operated by McDonald's franchisees, companies like Defendant Haynes

20   Partnership.

21         67.    Plaintiffs are informed and believe, and thereon allege, that McDonald's has a

22   franchise agreement with Haynes Partnership that requires Haynes Partnership to strictly adhere to

23   the McDonald's System, including, *inter alia*, by complying with all standards, business policies,

24   practices and procedures prescribed by McDonald's; using formulas, methods and policies relating

25   to operations, inventory, accounting, management, and advertising that are set forth in detailed

26   manuals developed and provided by McDonald's; using corporate-supplied or -approved

27   equipment and food products; submitting to regular comprehensive site inspections and computer

28   monitoring; and sharing a percentage of gross sales revenues with McDonald's.

68.     As detailed in paragraphs 71 through 139 below, McDonald's franchise agreements, including on information and belief, the franchise agreement McDonald's maintains with Haynes Partnership, vest in McDonald's significant control over restaurant operations, working conditions, personnel training, and the finances of franchisees' restaurants, and give McDonald's unlimited and unrestricted authority to inspect restaurants to monitor workplace conditions, including labor conditions, and to ensure compliance with the standards and policies of McDonald's.

69.     McDonald's maintains national franchise standards to which all of its franchisees are expected and required to adhere, and that affect almost every aspect of the restaurants' functioning, including practices and policies affecting crew members' labor conditions.  Plaintiffs are informed and believe, and on this basis allege, that Defendant Haynes Partnership is subject to these national franchise standards.

70.     McDonald's requires all of its franchisees to use only those goods, services, supplies, fixtures, equipment, inventory, and computer hardware that meet the specifications, requirements, and standards that McDonald's has formulated for use in the McDonald's System.

71.     Pursuant to the standard McDonald's franchise agreement, a franchisee may not assign its contractual commitment to another party.

72.     McDonald's evaluates and grades all franchisees on whether they have satisfied its franchise standards, including standards governing the recruitment, development, training and retention of qualified personnel.

73.     McDonald's franchise agreements are for fixed term periods, usually 20 years, and do not grant franchisees an automatic renewal option.  If a franchise agreement is not renewed, all ownership rights in the franchised restaurant or restaurants covered by that agreement revert in full to McDonald's.

74.     Plaintiffs are informed and believe, and on this basis allege, that McDonald's exercises significant control over the finances of franchisees, including the finances of Defendant Haynes Partnership, including in the following ways:

a.     McDonald's franchise agreements entitle McDonald's to receive a percentage of all franchisees' gross sales revenue;

15

b.    McDonald's expects all franchisees to earn a specified profit on a monthly basis;

c.    McDonald's requires all franchisees to purchase food from McDonald's-approved vendors;

d.    McDonald's requires all franchisees to pay a service fee based on a percentage of each restaurant's sales;

e.    McDonald's requires all franchisees to pay rent for use of the restaurant property or premises on which the franchisee-operated restaurants are located;

f.    McDonald's mandates promotional pricing of products sold in all franchisee-operated restaurants, which may sometimes require selling already low-margin products at a loss;

g.    McDonald's encourages all franchisees to renovate restaurants and may condition renewal of a franchise agreement on the franchisee's commitment to renovate;

h.    McDonald's requires all franchisees to use computer software that tracks financial information of the franchisees' restaurants, including sales, inventory and labor costs;

i.    McDonald's requires all franchisees to submit financial data to McDonald's, while maintaining its own independent access to the franchise's financial data; and

j.    McDonald's establishes rules for the maintenance of all franchisees' accounting books and records.

75.    McDonald's significantly restricts the business autonomy of its franchisees and their ability to make independent decisions based upon their own assessment of what is best for their particular business, by instead requiring compliance with the myriad standards it imposes on all its franchisee-owned restaurants as well as upon its own corporate-owned restaurants.

**D.    McDonald's Exercises Control Over Haynes Partnership' Operations, Policies, Procedures and Personnel**

McDonald's Oversees, Evaluates and Controls the Restaurants' Operations
Through the Use of Business Consultants and Other Agents

76.    After three consecutive years of declining stock price and slumping consumer satisfaction, McDonald's instituted a "Plan to Win" program in the early 2000's, which was a

16

worldwide program designed to update, improve, and reinforce the company's brand.  One of the elements of this program was "People."  McDonald's "People" program focused on the supervision and training of McDonald's employees in all restaurants, whether corporate- or franchisee-owned, and was designed to overcome concerns that negative customer experiences with service received at McDonald's restaurants – regardless of ownership – were having a negative impact on the corporate brand.

77.     Plaintiffs are informed and believe, and thereon allege, that Defendant McDonald's "Plan to Win" continues to provide the common operational framework for all McDonald's restaurants, including the Restaurants operated by Defendant Haynes Partnership.

78.     Plaintiffs are informed and believe, and thereon allege, that in implementing the "Plan to Win," McDonald's has paired each franchisee, including Defendant Haynes Partnership, with a particular business consultant or consultants employed by McDonald's.  The principal responsibility of the McDonald's consultant in this paired relationship is to ensure that the franchisee fully complies with all elements of the corporate strategy for improving restaurant operations, including McDonald's objectives with respect to "People."

79.     McDonald's exercises substantial control over franchisees' operations, policies, procedures and personnel through its business consultants and other agents, who conduct regular inspections and evaluations of the franchisee restaurants.

80.     Plaintiffs are informed and believe, and thereon allege, that a McDonald's business consultant is assigned to Haynes Partnership and conducts regular inspections and evaluations of the Restaurants.

81.     McDonald's evaluates the operations of all of its franchisees in the categories of quality, service, cleanliness, and people.  As part of this evaluation, McDonald's business consultants conduct a detailed top-to-bottom assessment of all aspects of franchisees' store operations designed to ensure compliance with McDonald's corporate standards, processes, practices and documentation, assigning a score for each aspect of the review.

82.     Plaintiffs are informed and believe, and thereon allege, that McDonald's business consultants, including the business consultant assigned to Haynes Partnership, evaluate and provide

feedback to franchisees on numerous separate restaurant "systems" that McDonald's imposes on its corporate-owned and franchisee-owned restaurants alike.  As part of this process, on information and belief, McDonald's consultants review the franchisee on numerous topics, including:

    a.    Recruitment and training of crew members and managers, including the amount of McDonald's-conducted training employees have received;

    b.    Shift management and crew scheduling;

    c.    Compliance with McDonald's operational guidelines and standards on subjects such as food assembly and quality, cleanliness, human resources practices, and crew members' customer interaction;

    d.    Placement and use of promotional materials; and

    e.    Areas for improved compliance with McDonald's corporate standards and development of action plans to ensure compliance with those standards.

83.    Plaintiffs are informed and believe, and thereon allege, that McDonald's also subjects each franchisee, including Defendant Haynes Partnership, to a regular series of inspections, announced and unannounced, designed to ensure compliance with all corporate directives, policies, and procedures.  Any franchisee that fails to receive a satisfactory score on a consultant's review or assessment is subject to mandatory follow-up inspections by McDonald's to ensure that restaurant operations and compliance are significantly improved in accordance with McDonald's mandatory requirements.

84.    McDonald's sends agents to the Restaurants as part of its "Mystery Shopper" program, to inspect the facilities, evaluate the speed, efficiency, and quality of the work performed by crew members, and to criticize and require improvement in each instance in which the Mystery Shopper identifies a circumstance in which one or more crew members failed to comply fully with the requirements imposed by McDonald's.

85.    McDonald's relies on the inspections, evaluations and reviews conducted by its business consultants and other agents to control franchisees, including Haynes Partnership. Plaintiffs are informed and believe, and thereon, allege that McDonald's relies these inspections, evaluations, and reviews in deciding whether the franchisee is eligible to renew or "rewrite" its

franchisee agreement; whether the franchisee may add new restaurants to its franchise or, alternatively, should lose restaurants; and whether the franchisee is eligible for McDonald's remodel programs.

<u>McDonald's Exercises Control Over Haynes Partnership' Hiring, Wages, Discipline and Training of Restaurant Personnel</u>

86.    McDonald's exercises control over all franchisees, including Haynes Partnership, by requiring them to operate in compliance with the same uniform policies and procedures that McDonald's imposes on all of its franchisees, including its policies and procedures governing hiring and training employees, conducting wage surveys, and disciplining crew members.

87.    Plaintiffs are informed and believe, and thereon allege, that McDonald's exercises control over franchisees' personnel practices, including in the following ways:

1.    McDonald's sets franchise policies on diversity, discrimination and harassment (including mandated employee reporting mechanisms), management-employee communication, solicitation and distribution of literature, leaves of absence, and student workers;

2.    McDonald's evaluates franchisees on their use of an "effective hiring process," including how job applicants are solicited;

3.    McDonald's lists franchise job openings on its own website and encourages applicants to apply using a standardized McDonald's on-line application;

4.    McDonald's provides and requires franchisees to use an on-line assessment tool for applicant screening, criteria for assessing the screening, and other criteria and instructions for interviewing applicants;

5.    McDonald's requires franchise owners to attend and satisfactorily complete an extensive and detailed training program at Hamburger University on how to operate, staff, and manage McDonald's restaurants, and to enroll their managers in similar McDonald's required training at Hamburger University or other designated training centers;

6.    McDonald's evaluates franchisees on whether franchisees have had their employees

19

participate in McDonald's-led trainings, including, for example, by requiring all new hires to view the corporate training video that Plaintiff Lopez was required to watch before beginning work;

7.    McDonald's requires franchisees to conduct an employee satisfaction survey;

8.    McDonald's evaluates franchisees on whether they have conducted wage reviews and provides a form to use for such wage reviews;

9.    McDonald's sets franchise disciplinary policy and provides forms used to document workplace conduct;

10.    McDonald's encourages franchisee employees to report instances of wage theft to McDonald's, in addition to franchisee management;

11.    McDonald's grades franchisees on employees' interactions with customers, including their tone of voice, eye contact, facial expressions, words used, and assembly of food items; and

12.    McDonald's affects the range of possible franchisee wage rates by controlling restaurants' staffing levels, controlling certain product pricing, requiring use of specific supplies and suppliers, and charging marketing, service, and other franchise fees that significantly impact franchisees' profit margins and budget lines.

88.    Plaintiffs are informed and believe, and thereon allege, that McDonald's trains franchisees' managers on personnel practices, including on state law requirements for employee breaks and overtime, the number of employees that should be working each shift, the number of employees that should be working at each station such as the grill, fryer, drink machine, registers and drive-through window, how to balance fixed and non-fixed labor costs, how to calculate and monitor a restaurant's labor percentage, and how to reduce labor costs through such practices as not permitting overtime work.

89.    Plaintiffs are informed and believe, and thereon allege, that McDonald's periodic evaluations of its franchisees, including Defendant Haynes Partnership, are graded in part on whether the franchise is using all of the documentation and record-keeping practices that McDonald's requires.

90.     Plaintiffs are informed and believe, and thereon allege, that McDonald's exercises extensive control over the personnel matters of all franchisees, including Haynes Partnership, because franchisees' labor costs are directly tied to McDonald's profits.  In its February 2014 Form 10-K filed with the United States Securities and Exchange Commission, McDonald's Corporation acknowledged as much, stating that "key features" that can affect its "operations, plans and results" include "[t]he impact on [its] margins of labor costs that [it] cannot offset through price increases, and the long-term trend toward higher wages and social expenses in both mature and developing markets, which may intensify with increasing public focus on matters of income inequality."

<div align="center">McDonald's Exercises Control Over Staffing and Scheduling<br>of Crew Members at the Restaurants</div>

91.     Plaintiffs are informed and believe, and thereon allege, that McDonald's requires all franchisees, including Haynes Partnership, to use McDonald's computer software that establishes prescribed staffing levels, weekly employee schedules, and positions of crew members within a restaurant, and that McDonald's evaluates franchisees on whether they are using this software properly.

92.     Plaintiffs are informed and believe, and thereon allege, that McDonald's instructs all franchisees, including Haynes Partnership, to use a positioning tool included in McDonald's computer software to ensure that the number of people working each shift and the number of people positioned at each station within the restaurant are consistent with, and not greater than, the numbers that McDonald's has determined are no more than the maximum number needed to fulfill its operational and financial priorities, and in particular its priorities of providing a certain level and speed of service while keeping labor costs below a specified percentage of gross sales.

93.     Plaintiffs are informed and believe, and thereon allege, that McDonald's provides manuals, training and reference books, forms, and other instructions and guidelines to all franchisees, including Haynes Partnership, that set forth corporate standards and requirements, including but not limited to checklists to be used to check on store conditions, including supplies, level of staffing and cleanliness; and instructions for calculating the number of employees that should be staffed at varying intervals.

94.     Plaintiffs are informed and believe, and thereon allege, that McDonald's business consultants review corporate-generated staffing sheets and position sheets with all franchisees.

95.     Plaintiffs are informed and believe, and thereon allege, that McDonald's business consultants work with franchisees to control the amount of crew members' hours in restaurants in relation to the amount of the restaurants' sales.

96.     McDonald's requires all franchisee restaurants to remain open seven days per week from at least 7:00 a.m. to 11:00 p.m., and McDonald's unilaterally determines whether its franchises, including Haynes Partnership, will be open or closed on major holidays.

McDonald's Exercises Control Over Crew Members' Job Duties and Performance

97.     Plaintiffs are informed and believe, and thereon allege, that McDonald's requires its franchisees, including Haynes Partnership, to meet rigid timing requirements for every component of restaurant transactions, that McDonald's tracks the timing of all crew members' execution of these tasks using McDonald's software, and that McDonald's requires details of all crew members' performance to be forwarded to McDonald's on a regular basis.  For example, McDonald's guidelines provide that a transaction at the drive through should take three or three and a half minutes, and whether that time is met is tracked in part by when crew members enter certain information on their cash registers.

98.     McDonald's provides franchisees a positioning guide that tells restaurant managers where crew members should be positioned within the store and corporate operating procedures for each station such as the grill, the drive-through and the front registers.

99.     Plaintiffs are informed and believe, and thereon allege, that McDonald's, through its business consultant, indirectly counsels individual crew members at the Restaurants on their job duties.  On information and belief, McDonald's business consultants review crew member performance and provide instructions on how crew members should improve their execution of job duties to franchise managers, who then relay those instructions to the crew members.

100.    Plaintiffs are informed and believe, and thereon allege, that McDonald's, through its business consultant, has taken action to correct crew members' performance of job duties by reporting issues to Restaurant managers, who then relay these corrections to crew members.

101.    Plaintiffs are informed and believe, and thereon allege, that McDonald's business consultants and other McDonald's agents review and monitor each franchisee, including Defendant Haynes Partnership, to determine if crew members meet the various timing requirements for each transaction in the restaurant, and will instruct franchisees to improve crew member performance if the requirements are not being met.

<u>McDonald's Exercises Control Over Haynes Partnership by Requiring the Franchisee to Use a McDonald's Computer System and Monitoring Labor and Sales Data Collected By That System</u>

102.    Plaintiffs are informed and believe, and thereon allege, that McDonald's requires all franchisees, including Defendant Haynes Partnership, to use McDonald's proprietary computer hardware and software to track practically all transactions in the franchisee restaurants, including sales, product mix, cash control, labor costs, and crew members' hours and schedules

103.    Plaintiffs are informed and believe, and thereon allege, that McDonald's has access to each of its franchisees' sales and other restaurant-level information, which is stored on the McDonald's servers.

104.    Plaintiffs are informed and believe, and thereon allege, that data from the franchisees' computers is transferred to McDonald's on a daily basis and this data is reviewed regularly by McDonald's to assess franchisee performance.

105.    Plaintiffs are informed and believe, and thereon allege, that McDonald's computer software permits all franchisees, including Defendant Haynes Partnership, to track whether labor is "high" at a given time in the Restaurants, meaning whether labor costs represent a large percentage of sales revenue.

106.    Plaintiffs are informed and believe, and thereon allege, that McDonald's computer software, which all franchisees are required to use, identifies when crew members have worked hours that qualify for overtime pay and further that the data collected by the software system are and may be used to produce a report showing crew members' hours worked without providing legally required meal periods or rest breaks.

107.    Plaintiffs are informed and believe, and thereon allege, that data captured by McDonald's computer software is used by McDonald's and Haynes Partnership to produce Daily

1   Activity Reports ("DARs") that reflect the punch-in and punch-out times of all employees in

2   franchisee restaurants on a given day.

3        108.    Plaintiffs are informed and believe, and thereon allege, that McDonald's business

4   consultants, when conducting inspections of franchisees, can and do request to review DARs and,

5   according to McDonald's operating procedures, DARs are supposed to kept in the restaurants for

6   several months.

7        109.    All McDonald's franchisee crew members are required to punch in at the beginning

8   of their shift, to punch out at the beginning of rest breaks and meal periods, to punch back in at the

9   end of rest breaks and meal periods, and to punch out at the end of their shift.  These times are

10  captured by McDonald's computer software.  At the end of each crew member's shift, a paper

11  receipt is printed on which the crew member's punch-in and punch-out times are recorded.

12       110.    Restaurant managers have authority to edit records of punch-in and punch-out

13  entries made by crew members.  Plaintiffs are informed and believe, and thereon alleged, that

14  McDonald's software system tracks and records edits made to crew members' punch-in and punch-

15  out times, and that McDonald's can determine and is aware when crew members' time has been

16  adjusted or edited.

17                          **JOINT LIABILITY ALLEGATIONS**

18  **A.    Defendants Have Jointly Employed Plaintiffs and All Class Members**

19       111.    Plaintiffs and Class Members have been jointly employed by Defendants Haynes

20  Partnership and McDonald's to work in the Restaurants.  Much of these employees' work has been

21  and is performed at the direction of Haynes Partnership' supervisors based on specific guidelines,

22  procedures, and protocols mandated by Defendant McDonald's and overseen and enforced by

23  Defendant McDonald's.  Haynes Partnership applies and enforces McDonald's guidelines,

24  requirements, and training with respect to Plaintiffs and Class Members, including but not limited

25  to requirements regarding how crew members perform their job duties, how crew members are

26  evaluated, and how crew members are scheduled and positioned for work within each of the

27  Restaurants.

28       112.    Defendant McDonald's has, along with Defendant Haynes Partnership, jointly

controlled and dictated all material terms and conditions of the employment of Plaintiffs and Class Members, including but not limited to by:

a.  Dictating the specific tasks to be undertaken by Plaintiffs and Class Members and the manner and order in which these tasks are to be completed, and enforcing detailed standard operating procedures governing the work Plaintiffs and Class Members have been required to perform, including off-the-clock work and other time worked that McDonald's knew or should have known was not being compensated and overtime hours worked that McDonald's knew or should have known was not being properly compensated;

b.  Devising and requiring standardized training that must be completed by Plaintiffs and Class Members;

c.  Overseeing directly and indirectly through on-site supervision and computer monitoring the day-to-day performance of Plaintiffs and Class Members;

d.  Conducting comprehensive evaluations and reviews on a regular basis that assessed the performance of Plaintiffs and Class Members, including by measuring their efficiency and productivity and the Restaurants' labor costs, including wages paid to Plaintiffs and Class Members;

e.  Developing plans to correct any deficiencies identified by McDonald's in the evaluations and reviews of the Restaurants; and

f.  Regularly assessing the productivity of all workers employed at the Restaurants, including Plaintiffs and Class Members, and including a review of staffing levels and labor costs.

113.  McDonald's and Haynes Partnership jointly oversee and supervise the work of Plaintiffs and Class Members through several means, including by McDonald's dictating the required number of supervisory staff who oversee Plaintiffs' and Class Members' work performance and productivity, and by McDonald's itself maintaining supervisory staff on the premises at regular intervals.

114.  McDonald's has set the standards for training, work performance, conduct, and

disciplinary infractions and procedures for all Plaintiffs and Class Members and thus exercises shared responsibility for discipline and discharge decisions involving Class Members who violate McDonald's' training, work performance, and/or conduct standards.  Further, McDonald's has authority and has jointly exercised the authority, along with Haynes Partnership, to discharge, discipline, and/or correct the work of such employees for perceived infractions of either Haynes Partnership' or McDonald's rules, policies, or procedures.

115.    McDonald's requires Haynes Partnership to provide high quality, trained staff to conduct its restaurant operations, including by imposing detailed standards for pre-employment screening, orientation, and training that must be completed before Plaintiffs and Class Members begin working at the Restaurants.

116.    Plaintiffs are informed and believe, and thereon allege, that McDonald's has jointly exercised control with Haynes Partnership over the number of hours, productivity standards, schedules, and the speed and amount of work performed by Plaintiffs and Class Members by, among other things:

    a.    Establishing standard operating metrics for the Restaurants that impose requirements for accuracy, timely processing, and productivity;

    b.    Creating projections and formulae that establish, *inter alia*, the number of hours to be expended in the Restaurants, the ratio of managers to crew members in the Restaurants, the job duties and positions to be filled by managers and crew members in the Restaurants, and the associated labor costs;

    c.    Requiring Haynes Partnership to collect detailed statistics on the number of hours worked by Plaintiffs and each member of the Class on a daily basis and to report these numbers to McDonald's in other regular reports and assessments of the Restaurants' performance and finances;

    d.    Determining, through its budgeting and staffing projection practices, the specific amount of budgeted hours that the Restaurants devote to servicing customers during a particular workweek while also controlling the volume of food products that must be sold at the Restaurants during any week and the required rates at which those

1    products must be sold; and

2       e.    Other related means.

3       117.    McDonald's has, along with Haynes Partnership, jointly exercised control over the

4    pay that Plaintiffs and Class Members receive through various means, including but not limited to,

5    by:

6       a.    Dictating the pace at which crew members' work must be performed;

7       b.    Exercising strict controls over what Haynes Partnership can pay crew members

8             through McDonald's budgeting and staffing projection procedures;

9       c.    Exercising strict controls over the number and cost of overtime hours worked in the

10            McDonald's restaurants;

11      d.    Closely monitoring the number of hours worked by crew members and income

12            earned through sales of food and other goods to customers; and

13      e.    Other means designed to suppress and/or lower the wages paid to Plaintiffs and

14            Class Members.

15      118.    McDonald's has, along with Haynes Partnership, jointly exercised control over the

16   working conditions under which Plaintiffs and Class Members perform their jobs by, among other

17   things:

18      a.    Supervising, monitoring, and checking their work, as alleged in more detail above;

19      b.    Determining the protocol and procedure for performing all job functions at the

20            McDonald's restaurants that must be followed as the minimum level of acceptable

21            performance in those restaurants;

22      c.    Setting the daily pace of work, including by imposing onerous and unrealistic

23            productivity standards;

24      d.    Setting work rules; and

25      e.    Other related means.

26      119.    Defendants Haynes Partnership and McDonald's have been and continue to be joint

27   employers of Plaintiffs and Class Members for the reasons above, and the following reasons,

28   among others:

a.   Defendants have jointly controlled and dictated all material terms and conditions of the employment of Plaintiffs and Class Members;

b.   Plaintiffs and Class Members have jointly applied for employment through both Haynes Partnership and McDonald's, including by submitting applications to Haynes Partnership supervisors who are required to use and have in fact used orientation and/or training materials from McDonald's;

c.   Defendants Haynes Partnership and McDonald's jointly implement the new-hire orientation that Plaintiffs and Class Members must undertake after hiring, which has taken place at the Restaurants with McDonald's training materials;

d.   Defendants Haynes Partnership and McDonald's have had authority and have jointly exercised the authority to discipline and/or correct the work of Plaintiffs and Class Members for perceived infractions of either McDonald's or Haynes Partnership' rules or policies;

e.   Defendants Haynes Partnership and McDonald's have jointly exercised control over the number of hours and types of work performed by Plaintiffs and Class Members by, among other things, deciding whether and when to require crew members to perform work and deciding on the amount and pace of work the crew members must perform;

f.   Defendants Haynes Partnership and McDonald's have jointly exercised control over the working conditions under which Plaintiffs and Class Members perform their jobs by supervising, monitoring, and checking their work, including through inspections and Mystery Shoppers that rate crew members' job performance; by determining the protocol and procedure for assigning crew members to work stations, evaluating and disciplining crew members, and creating crew members' schedules; and by setting the daily pace of work;

g.   Defendants Haynes Partnership and McDonald's have jointly exercised control over the compensation paid to Plaintiffs and Class Members, including but not limited to by training Haynes Partnership owners and managers on how to control labor costs

28

through wage rates, scheduling, and compensation practices, and by requiring Haynes Partnership Restaurants to maintain labor costs below a certain percentage of gross sales; and

h. Plaintiffs and Class Members physically worked and reported to work on premises that, on information and belief, are owned by McDonald's.

120. The restaurant job duties performed by Plaintiffs and Class Members constitute an integral, core function of the restaurant business of Defendants Haynes Partnership and McDonald's.

121. McDonald's has suffered or permitted Plaintiffs and other Class Members to work in the Restaurants by acquiescing in and not hindering their working, including by not remedying but instead accepting and profiting from the unlawful conditions under which they work;

122. Plaintiffs and Class Members have performed work that consists primarily of labor that does not require specialized training, education, or the exercise of judgment or discretion to perform.

123. For the reasons set forth above, among others, Defendants Haynes Partnership and McDonald's, directly or indirectly, or through an agent or any other person, have employed or exercised control over the wages, hours, or working conditions of Plaintiffs and Class Members.

124. For the reasons set forth above, among others, Defendant McDonald's, together with Defendant Haynes Partnership, directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of all Plaintiffs and Class Members.

**B.      Defendants Have Committed the Violations Alleged Herein as Co-Conspirators**

125. Plaintiffs are informed and believe, and thereon allege, that at all material times, each Defendant acted and is continuing to act as a co-conspirator of each other defendant and of certain unnamed and as-yet unknown co-conspirators.

126. Plaintiffs are informed and believe, and thereon allege, that prior to the start of the applicable limitations periods, each defendant entered into a conspiracy and agreement with the other defendants and with unnamed and unknown co-conspirators and/or subsequently joined said

29

1  conspiracy and ratified the prior acts and conduct of the other defendants and/or co-conspirators

2  who had previously entered into said conspiracy.  The purpose of said ongoing conspiracy includes

3  unlawfully evading compliance with state labor laws in an effort to artificially reduce Defendants'

4  labor costs and unlawfully maximize Defendants' profits by failing to pay Plaintiffs and Class

5  Members the wages and benefits required by law, failing to provide meal periods, rest breaks, and

6  other labor rights mandated by law, failing to provide workers with information required by law,

7  failing to reimburse Plaintiffs and Class Members for necessary expenses, and by other means.

8  Plaintiffs are currently unaware of when each defendant or other co-conspirator joined said

9  conspiracy but, on information and belief, allege that Defendants and their co-conspirators all

10 knowingly, maliciously and willfully entered into said conspiracy which continues to this day.  By

11 engaging in the conduct and omissions alleged in this Complaint, each defendant was acting within

12 the course and scope of its agency, with the authorization of the other defendants, and in

13 furtherance of the ongoing conspiracy.

14 **C.    Defendants Have Aided and Abetted Each Other in the Commission of the Violations
          Alleged Herein**

15

16      127.    Defendants Haynes Partnership and McDonald's aided and abetted each other in the

17 commission of the violations against Plaintiffs and Class Members as alleged herein.

18      128.    Haynes Partnership and McDonald's knew that their conduct as alleged herein was

19 in breach of their duties to Plaintiffs and Class Members, yet gave substantial assistance or

20 encouragement to each other to so act.  In addition, the conduct of Haynes Partnership and

21 McDonald's breached those defendants' duties to Plaintiffs and Class Members.

22      129.    Haynes Partnership and McDonald's have given substantial assistance or

23 encouragement to each other by, for example, requiring Plaintiffs and Class Members to meet high

24 productivity standards under severe time constraints, while also taking steps to keep labor costs

25 low, and by charging and agreeing to pay high franchise fees, and together caused violations of

26 Plaintiffs' and Class Members' rights under California law, as set forth herein.

27 **D.    Haynes Partnership Acted as McDonald's Agent**

28      130.    Plaintiffs are informed and believe, and thereon allege, that at all material times,

1    Haynes Partnership acted as an agent of McDonald's; Haynes Partnership employed Plaintiffs and

2    Class Members on behalf of McDonald's for those defendants' mutual benefit; and Defendants

3    jointly had the authority to control and exercised control over the wages, hours, and working

4    conditions of Plaintiffs and Class Members.

5            131.    The control McDonald's has asserted and continues to assert over Defendant

6    Haynes Partnership exceeds any control necessary to protect McDonald's trademark or good will.

7            132.    By engaging in the violations alleged herein, Haynes Partnership was acting within

8    the course and scope of its agency, with the authorization of McDonald's.

9    **E.    McDonald's Was Negligent in Its Retention, Supervision, and/or Control of Haynes
         Partnership**

10

11           133.    On information and belief, McDonald's has been the owner and/or lessee of the

12   Restaurants where Plaintiffs and Class Members worked, and the only franchisor of the Restaurants

13   during the applicable Class Period.

14           134.    At all relevant times, McDonald's has closely monitored, supervised, and controlled

15   the operations of the Restaurants, and has known or should have known of the violations of the

16   state labor and employment law rights of Plaintiffs and Class Members that have been occurring at

17   the Restaurants since the start of the limitations period, including violations committed by Haynes

18   Partnership, as alleged herein.  These violations include but are not limited to requiring Plaintiffs

19   and Class Members to work without proper compensation for all hours worked, failing to

20   compensate Plaintiffs and Class Members at legally required wage rates, failing to compensate

21   Plaintiffs and Class Members when not provided legally required meal periods and rest breaks, and

22   failing to disclose critical wage and hour information to Plaintiffs and Class Members.

23           135.    At all relevant times, McDonald's has negligently retained, supervised, and/or

24   controlled Haynes Partnership as the franchisee of its restaurants.  Although McDonald's knew or

25   should have known of the violations alleged herein, McDonald's failed to take any reasonable steps

26   to stop those violations from continuing or increasing in scope or frequency, and instead created

27   conditions that inevitably increased the likelihood that these violations would continue to occur and

28   worsen, including by maintaining contractual arrangements with Haynes Partnership that contain

1    powerful economic incentives for both McDonald's and Haynes Partnership to require increased

2    productivity from Plaintiffs and Class Members while lowering the costs of their labor, including

3    by reducing the amount of reported hours and overtime hours worked.

4         136.    McDonald's knew or should have known that retaining Haynes Partnership to

5    operate the Restaurants on McDonald's behalf would create an undue risk that the state labor and

6    employment law rights of Plaintiffs and Class Members would be violated as alleged herein, and

7    that those workers would thereby be harmed, in part because McDonald's knew or should have

8    known, based on the terms of its contracts with Haynes Partnership and its knowledge of what had

9    been occurring at the Restaurants and at other restaurants throughout the country, including

10   McDonald's-corporate restaurants, that Haynes Partnership would not be able to simultaneously

11   meet McDonald's productivity standards, stay within McDonald's labor and cost budgets, and

12   maintain a profit margin at the rates paid by McDonald's while complying with all applicable state

13   employment law standards.

14        137.    McDonald's has known or should have known that Haynes Partnership was

15   violating and would continue to violate the employment law rights of Plaintiffs and Class Members

16   as alleged herein, because McDonald's closely monitored, supervised, and controlled Haynes

17   Partnership' restaurant operations, including the hours worked by Plaintiffs and Class Members,

18   the breaks received by those crew members, the amounts paid to those crew members, and the

19   conditions under which those crew members labored.

20        138.    Although McDonald's has had the authority to control, and has exercised substantial

21   control, over Haynes Partnership' operation of the Restaurants, including the material terms and

22   conditions of the employment of Plaintiffs and other Class Members, McDonald's has failed to

23   ensure compliance with state employment law standards or to implement effective procedures for

24   ensuring such compliance in the Restaurants.  McDonald's also failed to take reasonable measures

25   to prevent the violations alleged herein from continuing to occur including, *inter alia*, by failing to

26   set rates for restaurant services, productivity standards, and staffing and labor budgets that would

27   realistically permit compliance with the applicable labor and employment laws; failing to exercise

28   its authority to monitor, supervise, and control Haynes Partnership in a manner that ensured

1  compliance with state labor and employment laws, instead of turning a willful blind eye to

2  violations; and/or failing to prohibit Haynes Partnership from continuing to violate Plaintiffs' and

3  Class Members' rights as alleged herein.

4       139.    The violations and harms to Plaintiffs and Class Members alleged herein are the

5  result of McDonald's failure to exercise due care in the retention, supervision, and/or control of

6  Haynes Partnership and, based on the facts described above, which McDonald's knew or should

7  have known when it continued to retain, supervise, and control Haynes Partnership, those

8  violations and harms were foreseeable.

9  <center>**CLASS ACTION ALLEGATIONS**</center>

10       140.    Plaintiffs Salazar, Lopez, and Zarate, as class representatives, bring this action on

11  behalf of a class of all similarly situated individuals, pursuant to Federal Rule of Civil Procedure

12  §23.  The proposed class includes the following similarly situated individuals ("Class Members"):

13  All individuals currently or formerly employed by Defendants as crew members at one or more of

14  Defendant Haynes Partnership's franchised McDonald's restaurants in California ("the

15  Restaurants"), at any time within the period beginning four (4) years prior to the filing of this

16  action and ending at the time this action proceeds to final judgment or settles (the "Class Period").

17  Plaintiffs reserve the right to name additional class representatives and to identify sub-classes and

18  sub-class representatives as may be necessary and appropriate.

19       141.    <u>Ascertainability</u>.  The identity of all Class Members is readily ascertainable from

20  Defendants' records, and class notice can be provided to all Class Members by conventional means

21  such as U.S. mail, email, and workplace postings.

22       142.    <u>Numerosity</u>.  The size of the class makes a class action both necessary and efficient.

23  The class consists of over 100 McDonald's employees currently or formerly working at the

24  Restaurants during the applicable limitations period.  Members of the class are ascertainable but so

25  numerous that joinder is impracticable.  The class includes future class members who will benefit

26  from the injunctive relief sought herein and whose joinder is inherently impossible.

27       143.    <u>Common Questions of Law and Fact</u>.  This case poses common questions of law

28  and fact, which are likely to generate common answers advancing resolution of the litigation,

<center>33</center>

1  affecting the rights of all Class Members, including:

2      a.    The legality of Defendants' compensation systems;

3      b.    The policies, practices, programs, procedures, protocols, and plans of Defendants

4            regarding payment of wages;

5      c.    The policies, practices, programs, procedures, protocols, and plans of Defendants

6            regarding payment of overtime premiums;

7      d.    Whether Defendants paid Plaintiffs and Class Members their full wages when due

8            as required by California Labor Code §§204, 206, 223, and 1195.5;

9      e.    Whether Defendants required, suffered, or permitted Plaintiffs and Class Members

10           to work in excess of eight hours per day and/or 40 hours per week;

11     f.    Whether Defendants paid Plaintiffs and Class Members the legally required

12           overtime premium for hours worked in excess of eight hours per day and/or 40

13           hours per week;

14     g.    Whether Defendants provided Plaintiffs and Class Members with accurate itemized

15           wage statements as required by California Labor Code §226;

16     h.    Whether Defendants maintained records for Plaintiffs and Class Members as

17           required under California Labor Code §§226 and 1174 and IWC Wage Order No. 5-

18           2001 §7.

19     i.    Whether Defendants violated California Labor Code §226.7 and 512 and IWC

20           Wage Order 5-2001 §11 by failing to provide Plaintiffs and Class Members with a

21           meal period for every five hours worked and by failing to compensate said

22           employees one hour of wages in lieu of each full and timely meal period that was

23           not provided;

24     j.    Whether Defendants violated California Labor Code §226.7 and IWC Wage Order

25           5-2001 §12 by failing to provide paid rest breaks to Plaintiffs and Class Members

26           for every four hours or major fraction thereof worked, failed to provide paid rest

27           breaks to Plaintiffs and Class Members in the middle of each work period, and

28           failed to compensate said employees one hour of wages in lieu of each full and

34

1          timely rest break that was not provided;

2        k.      Whether Defendants violated California Labor Code §§221, 450 and 2802 and IWC

3           Wage Order 5-2001 §§8 and 9 by failing to indemnify Plaintiffs and Class Members

4           for necessary business expenses they incurred in the discharge of their duties,

5           including by requiring Plaintiffs and Class Members to pay for cash register

6           shortages that were not the result of the employee's dishonest or willful act or gross

7           negligence and by failing to maintain Plaintiffs' and Class Members' required

8           uniforms or reimburse Plaintiffs and Class Members for the necessary expenses of

9           cleaning their uniforms or other necessary expenses;

10      l.       Whether Defendants engaged in unfair and unlawful business practices in violation

11          of Business & Professions Code §17200 et seq.;

12     m.    Whether Defendants are joint employers of Plaintiffs and Class Members;

13     n.     Whether the named Defendants conspired with each other and/or with any unnamed

14          co-conspirator, as alleged herein;

15     o.     Whether any Defendants aided and abetted other Defendants in the commission of

16          the violations alleged herein;

17     p.     Whether any Defendants acted as the agent of other Defendants in the commission

18          of the violations alleged herein;

19     q.     Whether McDonald's negligently retained, supervised and/or controlled Haynes

20          Partnership; and

21     r.     What relief is necessary to remedy Defendants' unfair and unlawful conduct as

22          herein alleged.

23     144.   <u>Typicality.</u>  The claims of the individual plaintiffs are typical of the claims of the

24 class as a whole.  Defendants' unlawful wage policies and practices, which have operated to deny

25 Plaintiffs the overtime premiums, minimum wages, other unpaid wages, and other compensation,

26 benefits, penalties, and protections required by law, are typical of the unlawful wage policies and

27 practices that have and will continue to operate to deny other Class Members lawful compensation.

28     145.   <u>Adequacy of Class Representation</u>.  The individual plaintiffs can adequately and

<div align="center">35</div>

1  fairly represent the interests of the class as defined above, because their individual interests are

2  consistent with, not antagonistic to, the interests of the class.

3       146.   <u>Adequacy of Counsel for the Class</u>.  Counsel for Plaintiffs have the requisite

4  resources and ability to prosecute this case as a class action and are experienced labor and

5  employment and class action attorneys who have successfully litigated other cases involving

6  similar wage and hour issues, including on a class action basis.

7       147.   <u>Propriety of Class Action Mechanism</u>.  This suit is properly maintainable as a class

8  action under Federal Rule of Civil Procedure §23 because Defendants have implemented a series of

9  unlawful schemes that are generally applicable to the class, making it appropriate to issue final

10  injunctive relief and corresponding declaratory relief with respect to the class as a whole.  This suit

11  is also properly maintainable as a class action because the common questions of law and fact

12  predominate over any questions affecting only individual members of the class.  For all these and

13  other reasons, a class action is superior to other available methods for the fair and efficient

14  adjudication of the controversy set forth in this Complaint.

15  <div align="center">**FIRST CLAIM FOR RELIEF**</div>

16  <div align="center">**Failure to Pay All Wages When Due**</div>

17  <div align="center">**[Cal. Labor Code §§204, 206, 223, 225.5 1194.5 1195.5]**</div>

18  <div align="center">**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**</div>

19  <div align="center">**Against All Defendants)**</div>

20       148.   Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

21  by reference all previous paragraphs.

22       149.   California Labor Code §204 requires an employer to pay all wages to its employees

23  when those wages are due.  California Labor Code §206 requires that, in a case of a dispute over

24  wages, an employer must pay, without condition and within the time set by statute, all wages, or

25  parts thereof, conceded to be due.  California Labor Code §223 prohibits an employer from secretly

26  paying a lower wage while purporting to pay the required wage designated by statute or by

27  contract.  California Labor Code §225.5 provides that every person who unlawfully withholds

28  wages due any employee in violation of §223 shall be subject to a civil penalty for an initial

<div align="center">36</div>

violation of $100 for each failure to pay each employee, and for each subsequent violation or any willful or intentional violation of $200 for each failure to pay each employee plus 25 percent of the amount unlawfully withheld.  California Labor Code §1195.5 requires an employer to correctly compute and pay wages due to employees, including wages above the minimum wage.

150.   During the Class Period, Defendants have followed and continue to follow several policies and practices directly resulting in their failure to pay Plaintiffs and Class Members all wages for all hours worked when they are due, and of withholding wages due by secretly paying a lower wage than purported.  These policies and practices include, but are not limited to the following:

a.   <u>Altered Time Records</u>.  On information and belief, Defendants have failed and continue to fail to pay Plaintiffs and Class Members for all hours worked by following a policy and practice of encouraging, permitting, and/or ratifying managers or supervisors routinely to edit or delete time recorded by the punch-in and punch-out system.  On information and belief, this policy and practice has resulted in Defendants paying Plaintiffs and Class Members for less time than they have actually worked.

b.   <u>Off-the-Clock Work</u>.  Defendants have followed and continue to follow a policy and practice of requiring, suffering, or permitting Plaintiffs and Class Members to perform uncompensated work off the clock while not punched in.

c.   <u>Minimum Wages, Overtime, and Missed Meal Period and Rest Break Premium Wages</u>.  As alleged in the Second through Fifth Claims for Relief below and incorporated by reference here, Defendants have followed and continue to follow a policy and practice of failing to pay Plaintiffs and Class Members minimum wages, overtime compensation, and additional wages due for missed, untimely, or shortened meal periods and rest breaks, thereby failing to pay Plaintiffs and Class Members all wages due for all hours worked.

151.   Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

152. As a proximate result of Defendants' unlawful actions and omissions, Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code.

153. California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions. Plaintiffs and current employee Class Members, who are low-wage workers for whom Defendants' failure to pay all wages when due for all hours worked creates substantial hardship, are entitled to preliminary and permanent injunctive relief under the governing legal standards, and are entitled to an order requiring Defendants to pay all wages when due and to keep accurate track of all time Plaintiffs and Class Members spend working each day.

<div align="center">

**SECOND CLAIM FOR RELIEF**

**Failure to Pay Overtime Wages**

**[Cal. Labor Code §§510, 1194, 1194.5, 1198; IWC Wage Order No. 5-2001, §3]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

</div>

154. Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

155. It is unlawful under California law for an employer to require, suffer or permit an employee to work in excess of eight hours per workday or 40 hours per workweek without paying premium wages under California Labor Code §510 and IWC Wage Order 5-2001 §3.

156. California Labor Code §1198 makes employment of an employee for longer hours than the IWC sets or under conditions the IWC prohibits unlawful. California Labor Code §1194(a) entitles an employee to recover in a civil action the unpaid balance of all overtime compensation due but not paid.

157. Plaintiffs and Class Members are current and former non-exempt employees entitled to the protections of California Labor Code §§510, 1194, and IWC Wage Order No. 5-2001.

158.   Plaintiffs and Class Members have worked and at times continue to work in excess of eight hours per workday and in excess of 40 hours per workweek.

159.   During the Class Period, Defendants have followed and continue to follow a policy and practice of not paying Plaintiffs and Class Members properly for overtime, and have failed and continue to fail properly to compensate Plaintiffs and Class Members for all overtime hours worked under California law.  For example, Defendants have followed and continue to follow a policy and practice of failing to pay Plaintiffs and Class Members for all overtime hours Defendants require, permit, or suffer Plaintiffs and Class Members to work off the clock; hours that Defendants alter or remove from time records; and hours Defendants move from one day to another to avoid overtime rates.

160.   Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

161.   As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code and IWC Wage Order 5-2001.

162.   California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiffs and current employee Class Members, who are low-wage workers for whom Defendants' failure to pay required overtime creates substantial hardship, are entitled to preliminary and permanent injunctive relief under the governing legal standards, and are entitled to an order requiring Defendants to pay required overtime premiums and to keep track of the time Plaintiffs and Class Members spend working over eight hours each day and over 40 hours each week.

**THIRD CLAIM FOR RELIEF**

**Failure to Pay Minimum Wages**

**[Cal Labor Code §§1182.12, 1194, 1194.2, 1194.5, 1197, 1198;**

**IWC Wage Order No. 5-2001, §4]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

163.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

164.    California Labor Code §§1182.12 and 1197, and IWC Wage Order 5-2001 §4, require Defendants to pay Plaintiffs and Class Members at or above the state minimum wage of $8.00 per hour for every hour Defendants suffer or permit those employees to work.

165.    California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.  California Labor Code §§1194(a) and 1194.2(a) provide that an employer that has failed to pay its employees the legal minimum wage is liable to pay those employees the unpaid balance of the unpaid wages as well as liquidated damages in an amount equal to the wages unpaid and interest thereon.

166.    During the Class Period, Defendants have followed and continue to follow a policy and practice of failing to pay Plaintiffs and Class Members at or above the California minimum wage for many hours worked by Plaintiffs and Class Members, including but not limited to hours Defendants require, permit, or suffer Plaintiffs and Class Members to work off the clock and hours that Defendants alter or remove from time records.

167.    Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

168.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code and IWC Wage Order 5-2001.

169.     California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiffs and current employee Class Members, who are low-wage workers for whom Defendants' failure to pay required overtime creates substantial hardship, are entitled to preliminary and permanent injunctive relief under the governing legal standards, and are entitled to an order requiring Defendants to pay minimum wages and to keep accurate track of the time Plaintiffs and Class Members spend performing all compensable work.

**FOURTH CLAIM FOR RELIEF**

**Failure to Provide Required Meal Periods or Pay Missed Meal Period Wages**

**[Cal. Labor Code §§226.7, 512, 1194.5, 1198;**

**IWC Wage Order No. 5-2001, §11]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

170.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

171.     California Labor Code §226.7(a) prohibits an employer from requiring an employee to work during any meal period mandated by an applicable Industrial Wage Order.  California Labor Code §512 and  IWC Wage Order 5-2001 §11(A) prohibit employers from employing a worker for more than five hours without a meal period of at least 30 minutes.  California Labor Code §512 prohibits employers from employing a worker for more than 10 hours without a second meal period of at least 30 minutes.  Under both California Labor Code §226.7(b) and IWC Wage Order 5-2001 §11(B), if an employer fails to provide an employee a meal period as required, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday that a meal period is not provided as required.

172.     California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

173.     During the Class Period, Defendants have had and continue to have a policy and practice of failing to provide Plaintiffs and Class Members full and timely meal periods required by

41

California Labor Code §§226.7 and 512 and IWC Wage Order 5-2001 §11, including but not limited to through the following:  Plaintiffs and Class Members often have not been and are not provided a meal period within their first five hours of work.  When Plaintiffs and Class Members receive meal periods, these meal periods often have been, and continue to be, late or shortened.  Defendants' restaurant locations are frequently busy and Defendants have implemented and continue to implement a policy and practice of understaffing crew members at all Haynes Partnership Restaurants.  Defendants have permitted and continue to permit Plaintiffs and Class Members to take breaks only when told to do so by their managers.  Defendants also have prohibited and continue to prohibit Plaintiffs and Class Members from taking breaks when the store is busy or during times when a Mystery Shopper may be coming to the restaurant.  Through these and other policies and practices alleged above and incorporated herein by reference, Plaintiffs and Class Members have regularly been denied, and continue to be denied, the opportunity to take a full, uninterrupted, and timely meal period as required under the California Labor Code §§226.7 and 512, and IWC Wage Order No. 5-2001 §11.

174.    Defendants have further violated and continue to violate California Labor Code §226.7 and IWC Wage Order No. 5-2001 §11, by having had and continuing to have a policy and practice of failing to pay each of their employees who was not provided with a full and timely meal period an additional one hour of compensation at each employee's regular rate of pay.

175.    Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

176.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code and IWC Wage Order 5-2001.

177.    California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiffs and current employee Class Members, who are low-wage workers for whom Defendants' failure to provide

required meal periods or pay an additional hour's wages when required meal periods are missed, late, or shortened creates substantial hardship, are entitled to preliminary and permanent injunctive relief under the governing legal standards, and are entitled to an order requiring Defendants to provide required meal periods, to pay one hour's wages for every day that an employee's required meal period is missed, late, or shortened, and to keep accurate track of the times Plaintiffs and Class Members begin and end each of their meal periods.

**FIFTH CLAIM FOR RELIEF**

**Failure to Provide Required Rest Breaks or Pay Missed Rest Break Wages**

**[Cal. Labor Code §§226.7, 1194.5 1198; IWC Wage Order No. 5-2001, §12]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

178.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

179.    California Labor Code §226.7(a) prohibits an employer from requiring an employee to work during any rest break mandated by an applicable Industrial Wage Order.  IWC Wage Order 5-2001 §12(A) requires employers to authorize and permit employees who work three and one half or more hours in a day to take a paid rest break of at least 10 minutes for every four hours worked or major fraction thereof, which insofar as practicable shall be in the middle of each work period. Under both California Labor Code §226.7(b) and IWC Wage Order 5-2001 §12(B), if an employer fails to provide an employee a rest break as required, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday that a rest break is not provided as required.

180.    California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

181.    During the Class Period, Defendants have had and continue to have a policy and practice of failing to provide Plaintiffs and Class Members full and timely rest breaks required by California Labor Code §226.7 and IWC Wage Order 5-2001 §12, including but not limited to through the following:

1.    <u>Missed, Late, and Shortened Rest Breaks</u>.  As set forth above, Defendants willfully understaff the Restaurants, in part, on information and belief, to satisfy Defendants' objectives that labor costs be kept to a minimum.  As a direct consequence of this understaffing and imperative to keep labor costs low, Plaintiffs' and Class Members' rest breaks frequently have been and continue to be missed, late, and/or shortened.  Plaintiffs and Class Members regularly have not been authorized or permitted to take their first or second 10-minute rest break, have been only authorized or permitted to take less than a full 10-minute rest break, or have been otherwise required to perform work during their first or second 10-minute rest break.

2.    <u>Rest Break Timing</u>.  Additionally, Defendants have followed and continue to follow a policy and practice of failing to provide Plaintiffs and Class Members 10-minute rest breaks in the middle of each work period despite it being reasonably practicable to provide the required break near or at the middle of the work period, including but not limited to by requiring Plaintiffs and Class Members to take their first 10-minute rest break near or at the beginning of their shift or after more than four hours of work, by requiring Plaintiffs and Class Member to take their 10-minute rest breaks consecutively with or shortly before or after their 30-minute meal periods, and by requiring Plaintiffs and Class members to take a second 10-minute rest break near or at the end of their shifts, thereby violating California Labor Code §226.7 and IWC Wage Order No. 5-2001 §12.

182.    Defendants have further violated and continue to violate California Labor Code §226.7 and IWC Wage Order No. 5-2001 §12, by having had and continuing to have a policy and practice of failing to pay each of their employees who was not provided with a full and timely rest break an additional one hour of compensation at each employee's regular rate of pay.

183.    Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

184.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code and IWC Wage Order 5-2001.

185.    California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiffs and current employee Class Members, who are low-wage workers for whom Defendants' failure to provide required rest breaks or pay an additional hour's wages when required rest breaks are missed, late, or shortened creates substantial hardship, are entitled to preliminary and permanent injunctive relief under the governing legal standards, and are entitled to an order requiring Defendants to provide required rest breaks, to pay one hour's wages for every day that an employee's required rest break is missed, late, or interrupted, and to keep accurate track of the times Plaintiffs and Class Members begin and end each of their rest breaks.

**SIXTH CLAIM FOR RELIEF**

**Failure to Maintain Required Records**

**[Cal. Labor Code §§226, 1174, 1194.5, 1198; IWC Wage Order No. 5-2001 §7]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

186.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

187.    California Labor Code §1174(c)-(d) requires employers to keep records showing the names and addresses of all employees employed, and to keep, at a central location in the State of California or at the establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to all employees employed at the establishment.  IWC Wage Order 5-2001 §7(A)(3) further requires employers to keep time records showing when the employee begins and ends each work period, meal period, and split shift interval.  Under §7(A)(5), employers must also record each employee's total hours worked and applicable rates of pay, and must make such information "readily available" to the employee upon request.  Under §7(C), all

1  required records must be in the English language and in ink or other indelible form, properly dated,

2  showing month, day, and year, and must be kept on file by the employer for at least three years at

3  the place of employment or at a central location within the State of California.  Under both §7(C)

4  and California Labor Code §226(b), all required records must be available for inspection by an

5  employee upon reasonable request.

6      188.    California Labor Code §1198 makes unlawful the employment of an employee

7  under conditions the IWC prohibits.

8      189.    Pursuant to Defendants' policy and practice, Defendants have willfully failed, and

9  continue willfully to fail, to maintain accurate, complete, and readily available records, in violation

10  of California Labor Code §1174 and IWC Wage Order 5-2001 §7.

11      190.    In addition, Defendants have failed and continue to fail to maintain required records

12  that accurately reflect the actual time and hours worked by Plaintiffs and Class Members and the

13  regular and overtime rates of pay associated with these hours worked.

14      191.    Plaintiffs and Class Members have suffered and will continue to suffer actual

15  economic harm resulting from these recordkeeping violations, as they have been, and will continue

16  to be, precluded from accurately monitoring the wages to which they are entitled, have been

17  required to retain counsel and others to evaluate and calculate unpaid wages, and have suffered

18  delays in receiving the wages and interest that are due and owing to them.  Defendants' ongoing

19  violations of these mandatory recordkeeping laws have caused, and will continue to cause,

20  irreparable harm to Plaintiffs and Class Members, among other reasons because as long as

21  Defendants fail to maintain the required records, Plaintiffs and Class Members will be unable to

22  determine or demonstrate the precise number of hours actually worked, or the wages and penalties

23  owed to them for the hours that Defendants have required, suffered or permitted them to work.

24      192.    By willfully failing to maintain the records required by California Labor Code §

25  1174(c) or the accurate and complete records required by §1174(d), Defendants are also liable for a

26  civil penalty of five hundred dollars for each violation under §1174.5.

27      193.    California Labor Code §1194.5 authorizes issuance of and injunction where an

28  employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiffs and

46

1  current employee Class Members are entitled to injunctive relief under the governing legal

2  standards, and are entitled to an order requiring Defendants to provide Plaintiffs and Class

3  Members all of the information required by California Labor Code §1174 and IWC Wage Order 5-

4  2001.

**SEVENTH CLAIM FOR RELIEF**

**Failure to Furnish Accurate Itemized Wage Statements**

**[Cal. Labor Code §§204, 226; IWC Wage Order No. 5-2001, §7]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

10  194.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

11  by reference all previous paragraphs.

12  195.    California Labor Code §226(a) requires employers semimonthly or at time of

13  paying wages to provide to their employees detailed wage and hour information including total

14  hours worked, applicable hourly rates, and deductions.  IWC Wage Order 5-2001 §7(B) requires

15  employers semimonthly or at the time of each payment of wages to furnish to each employee an

16  itemized statement in writing showing the following information: all deductions; the inclusive

17  dates of the period for which the employee is paid; the name of the employee or the employee's

18  social security number; and the name of the employer.  California Labor Code §204(b)(2) requires

19  that if an employee works in excess of the employee's normal work period in one pay period and

20  the employer pays for those hours in the following pay period, the hours in excess of the

21  employee's normal work period in the current pay period must be itemized as corrections on the

22  paystub for the next regular pay period, and the paystub containing those corrections must state the

23  inclusive dates of the pay period for which the employer is correcting its initial report of hours

24  worked.  These required disclosures of information are essential to enable employees to determine

25  whether they have been paid in compliance with the law and to determine the identity of all

26  employers who are responsible for any payments that remain due.

27  196.    California Labor Code §226(e) provides that an employee who suffers injury as a

28  result of a knowing and intentional failure by an employer to comply with §226(a) may recover the

47

greater of actual damages or the civil penalties designated by statute of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period up to an aggregate penalty of $4,000.

197.    California Labor Code §226.3 provides that any employer who violates §226(a) shall further be subject to a civil penalty of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in §226(a).

198.    California Labor Code §1198 makes employment of an employee under conditions the IWC prohibits unlawful.

199.    Pursuant to Defendants' unlawful polices and practices alleged herein, Defendants have knowingly and intentionally failed to furnish Plaintiffs and Class Members with the information required by California Labor Code §226(a) and IWC Wage Order 5-2001 §7(B), including but not limited to the legally mandated disclosures of total hours worked, hourly rates, identity of all joint employers, and an itemization of all deductions taken.  This failure has injured, continues to injure, and was intended to injure Plaintiffs and Class Members by, among other things, enabling Defendants to avoid paying these workers all wages due without detection of wrongdoing; creating confusion among these workers over whether they had received all wages due and owing; making it difficult and expensive for these workers to reconstruct pay records and accurate records of all hours worked; forcing these workers to make mathematical computations to analyze whether the wages paid compensated them for all hours worked; requiring these workers to retain attorneys and others to help them determine the fact, scope, and extent of Defendants' wrongful conduct; and causing delay in these workers recovering their full back pay and interest.

200.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover such economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code and IWC Wage Order 5-2001.

201.    California Labor Code §226(h) authorizes courts to issue injunctive relief to remedy

48

violations of §226(a).  Plaintiffs and Class Members are entitled to injunctive relief under the

governing legal standards, and are entitled to an order requiring Defendants: (a) to immediately

begin providing to Plaintiffs and current employee Class Members itemized wage statements

containing all of the information required to be disclosed by California Labor Code §226(a); and

(b) to immediately provide to all Plaintiffs and Class Members the information required to be

disclosed by California Labor Code §226(a), dating back to those employees' beginning of

employment or to the start of the applicable limitations period, whichever is further back in time.

### EIGHTH CLAIM FOR RELIEF

**Failure to Indemnify Employees for Necessary Expenses**

**[Cal. Labor Code §§221, 450, 1198, 2802, 1194.5; IWC Wage Order No. 5 2001, §§8, 9]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

202.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

by reference all previous paragraphs.

203.    California Labor Code §2802(a) requires an employer to indemnify an employee for

all necessary expenditures or losses incurred by the employee in direct consequence of the

discharge of his or her duties, or of his or her obedience to the directions of the employer.

California Labor Code §221 makes it unlawful for employers to collect or receive from an

employee any part of wages paid.  California Labor Code §450 makes it unlawful for an employer

to compel or coerce employees to purchase anything of value from the employer.  IWC Wage

Order 5-2001 §8 provides that the only circumstances under which an employer may take a

deduction from an employee's wages due to cash shortage, breakage, or loss of equipment is if the

employer can show that the shortage, breakage, or loss was the result of the employee's gross

negligence or dishonest or willful act.  IWC Wage Order 5-2001, §9 provides that if an employer

requires a uniform or part of a uniform to be worn by an employee, the employer must provide and

maintain the uniform, or pay for the maintenance of that uniform.

204.    Defendants have failed and continue to fail to indemnify Plaintiffs and Class

Members for all business expenses and/or losses incurred in direct consequence of the discharge of

their duties, including but not limited to by requiring Plaintiffs and Class Members to bear the cost of: (1) cash shortages without being able to show that such shortages were the result of the employee's gross negligence or dishonest or willful act; and (2) maintaining uniforms Defendants required and continue to require them to wear.

205.    By requiring Plaintiffs and Class Members to pay for work-related expenses without reimbursement, and by deducting cash shortages from the pay of Plaintiffs and Class Members when they worked at cash registers without showing the shortage was the result of the employee's gross negligence or dishonest or willful act, Defendants, pursuant to their policies and practices, have violated, and on information and belief continue to violate, California Labor Code §§221, 450, and 2802 and IWC Wage Order 5-2001, §8.  These mandatory payments and deductions constitute an unlawful mechanism by which Defendants obtain unlawful deductions or kickbacks from the wages they lawfully owe to Plaintiffs and Class Members.

206.    By requiring Plaintiffs and Class Members to wear clean uniforms to work, but providing them with a limited number of uniforms and implementing no policy providing for the maintenance of the uniforms, Defendants have required and continue to require Plaintiffs and Class Members to maintain their uniforms themselves, without being compensated for the costs of such maintenance.  As Defendants run a food service business, the uniforms of Plaintiffs and Class Members regularly become greasy or dirty and necessitate special and/or frequent cleaning. Defendants have failed and continue to fail to maintain the uniforms or reimburse Plaintiffs and Class Members for the time spent and reasonable expenses they incur in maintaining their uniforms in violation of California Labor Code §§221, 450, and 2802 and IWC Wage Order 5-2001, §9.

207.    By requiring Plaintiffs and Class Members to pay for work-related expenses such as uniform maintenance and cash shortages without reimbursement, Defendants, pursuant to their policy and practice, have violated and continue to violate California Labor Code §§221, 450, and 2802 and IWC Wage Order 5-2001, §§8 and 9.

208.    Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

209.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

50

1   Plaintiffs and Class Members have sustained economic damages, including but not limited to

2   unpaid wages, unreimbursed expenses and improper deductions, and lost interest, in an amount to

3   be established at trial, and are entitled to recover economic and statutory damages and penalties

4   and other appropriate relief from Defendants' violations of the California Labor Code and IWC

5   Wage Order 5-2001.

6          210.    California Labor Code §1194.5 authorizes injunctions where an employer has

7   willfully violated laws governing wages, hours, or working conditions.  Plaintiffs and current

8   employee Class Members, who are low-wage workers for whom Defendants' failure to reimburse

9   necessary business expenses creates substantial hardship, are entitled to preliminary and permanent

10  injunctive relief under the governing legal standards, and are entitled to an order requiring

11  Defendants to reimburse all necessary expenses incurred by employees in the discharge of their

12  duties, including by reimbursing Plaintiffs and Class Members for the costs of maintaining their

13  uniforms, or by maintaining the uniforms, and to refrain from deducting cash shortages from

14  employees' wages unless they can show the loss was the result of the employee's gross negligence

15  or dishonest or willful act.

16                          **NINTH CLAIM FOR RELIEF**

17                                  **Negligence**

18          **(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

19                          **Against Defendant McDonald's)**

20          211.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

21  by reference all previous paragraphs.

22          212.    McDonald's has owed and continues to owe a duty to Plaintiffs and Class Members,

23  both as their joint employer and as an entity that benefits directly from their services, not to subject

24  those individuals to the foreseeable harms as alleged herein that would reasonably result from

25  McDonald's failure to exercise due care in its contracting and supervision of Haynes Partnership as

26  the entity it chose to operate the Restaurants as its franchisee.  As the owner of the McDonald's

27  trademark and operator of the multinational McDonald's company and as a franchisor with

28  unusually high systems of control over its franchisees, who operate on term-limited and conditional

51

contracts, McDonald's had and continues to have the contractual, actual, and other authority to ensure that its franchisees comply with all state labor and employment laws and to ensure that Plaintiffs' and Class Members' legal rights are fully protected while working in McDonald's restaurants, serving McDonald's food and selling McDonald's products, under McDonald's direct and indirect supervision.

213.    On information and belief, at all relevant times, McDonald's has retained, supervised, and controlled Haynes Partnership as its agent and contractor for the purpose of operating the Restaurants.

214.    McDonald's violated its duty to Plaintiffs and Class Members by failing to exercise due care in the retention, supervision, and/or control of Haynes Partnership.  Given a long history of employment law violations at the Restaurants, and that the terms of the McDonald's-Haynes Partnership contract and attendant operating requirements and pressures created powerful incentives for Haynes Partnership to violate the labor and employment law rights of Plaintiffs and Class Members, and based on McDonald's close monitoring and control over the Restaurant's operations, McDonald's knew or should have known when it retained, supervised, and controlled Haynes Partnership as the franchisee of the Restaurants, that it was creating an undue risk of harm to Plaintiffs and Class Members.

215.    As a direct and proximate result of McDonald's conduct as alleged in this Complaint, Plaintiffs and Class Members have been harmed, including but not limited to suffering lost wages and other benefits in amounts to be proven at trial.

## TENTH CLAIM FOR RELIEF

### California Labor Code Private Attorneys General Act

### [Cal. Labor Code §2698 et seq.]

**(Brought by All Plaintiffs on behalf of Themselves, the Plaintiff Class, all similarly situated current and former McDonald's employees, and the Public Against All Defendants)**

216.    Plaintiffs, on behalf of themselves and all aggrieved employees and/or on behalf of the plaintiff class, as well as the general public of the State of California, reallege and incorporate by reference all previous paragraphs.

217.     Under the California Labor Code Private Attorneys General Act, California Labor Code §§2698-99 ("PAGA"), any aggrieved employee may bring a representative action as a private attorney general on behalf of the general public, including all other aggrieved employees, to recover civil penalties for their employers' violations of the California Labor Code and IWC Wage Orders.   These civil penalties are in addition to any other relief available under the Labor Code, and must be allocated 75 percent to the State of California's Labor and Workforce Development Agency and 25 percent to the aggrieved worker, pursuant to California Labor Code §2699.

218.     Pursuant to California Labor Code §1198, Defendants' employment of any Plaintiff or Class Member for longer hours than those fixed by IWC Wage Order 5-2001 or under conditions of labor prohibited by Wage Order No 5-2001 is unlawful and constitutes a violation of the California Labor Code, actionable under PAGA.  Pursuant to California Labor Code §1198, it is unlawful for Defendants to have failed to pay or cause to be paid to Plaintiffs and Class Members overtime or minimum wages required by Wage Order 5-2001; to have required Plaintiffs and Class Members to work for longer hours than those fixed, or under conditions of labor prohibited by, Wage Order 5-2001; and to have violated, or refused or neglected to have complied with, any other provision of Wage Order 5-2001 as alleged herein.

219.     Plaintiffs allege, on behalf of themselves, all aggrieved employees and/or on behalf of the plaintiff class, as well as the general public of the State of California, that Defendants have violated the following provisions of the California Labor Code and the following provisions of the IWC Wage Orders that are actionable through the California Labor Code and PAGA, as previously alleged herein: California Labor Code §§204, 206, 221, 223, 226, 226.7, 450, 510, 512, 1174, 1182.12, 1194, 1195.5, 1197-99, and 2802, and IWC Wage Order 5-2001 §§3, 4, 7, 8, 9, 11, and 12.  Each of these violations entitles Plaintiffs, as private attorneys general, to recover the applicable statutory civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

220.     California Labor Code §2699(a), which is part of PAGA, provides in pertinent part:

221.     Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency

53

or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

222.    California Labor Code §2699(f), which is part of PAGA, provides in pertinent part:

(1)  For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . .

(2)  If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

223.    Plaintiffs are entitled to civil penalties, to be paid by Defendants and allocated as PAGA requires, pursuant to California Labor Code §2699(a) for Defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is already specifically provided by law; and Plaintiffs are entitled to civil penalties, to be paid by Defendants and allocated as PAGA requires, pursuant to California Labor Code §2699(f) for Defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is not already specifically provided.

224.    Pursuant to California Labor Code §2699.3, on March 12, 2014, before filing the original Complaint in this action, Plaintiffs, on behalf of themselves and all Class Members, gave written notice by certified mail to the California Labor and Workforce Development Agency ("LWDA") and Defendants of the specific provisions of the California Labor Code and IWC Wage Orders alleged to have been violated, including the facts and theories to support the alleged violations.  The letter included a copy of, and incorporated by reference, the entire original Complaint.  On April 8, 2014, the LWDA sent a letter to Plaintiffs stating that it had received and reviewed Plaintiffs' notice and it did not intend to investigate the alleged violations.

225.    On November 7, 2014, before filing this First Amended Complaint, Plaintiffs, on

behalf of themselves and all Class Members, sent a supplemental written notice by certified mail to the LWDA and Defendants of the specific provisions of the California Code and IWC Wage Orders alleged to have been violated, including the additional facts and theories pertaining to uniform maintenance added in this First Amended Complaint to support the alleged violations in the Eighth Claim for Relief for Failure to Indemnify Employees for Necessary Expenses.  Plaintiffs will amend this complaint if the LWDA notifies them within 33 days of the postmark of that supplemental notice that it intends to investigate the additional allegations pertaining to uniform maintenance in the Eighth Claim for Relief.

226.    Therefore, Plaintiffs have complied with all of the requirements set forth in California Labor Code §2699.3 to pursue a representative action under PAGA.

227.    Under PAGA, Plaintiffs and the State of California are entitled to recover the maximum civil penalties permitted by law for the violations of the California Labor Code and Wage Order 5-2001 that are alleged in this Complaint.

**ELEVENTH CLAIM FOR RELIEF**

**Unfair and Unlawful Business Practices**

**[Cal. Bus. & Prof. Code §17200 et seq.]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

228.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

229.    Defendants have engaged in unfair and unlawful business practices in violation of California Business & Professions Code §17200 et seq. by engaging in the unlawful conduct alleged above, including but not limited to: failing to pay all wages when due and secretly paying a lower wage than purported; failing to pay the overtime premiums required by state law; failing to pay the minimum wage required by state law; failing to provide workers with all meal periods and paid rest breaks to which they are entitled; failing to pay workers an additional hour's pay for all days in which they were not provided a full and timely meal or rest break as required by state law; failing to provide employees information required by California Labor Code §§204, 226(a), and

1174 and Wage Order 5-2001; concealing from workers material information concerning Defendants' joint employer status and the nature and extent of the conspiracy in which Defendants are engaged; failing to indemnify workers for necessary expenses they incurred in the discharge of their duties; and negligently retaining, supervising, and/or controlling agents and/or contractors acting on their behalf.

230.     Plaintiffs are informed and believe, and based upon such information and belief, allege that by engaging in the unfair and unlawful business practices complained of above, Defendants were able to lower their labor costs and thereby to obtain a competitive advantage over law-abiding employers with which they compete, in violation of California Business & Professions Code §17200 et seq. and California Labor Code §90.5(a), which sets forth the public policy of California to vigorously enforce minimum labor standards to ensure that employees are not required or permitted to work under substandard and unlawful conditions and to protect law-abiding employers and their employees from competitors that lower their costs by failing to comply with minimum labor standards.

231.     As a direct and proximate result of Defendants' unfair and unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained injury and damages, including unpaid wages and lost interest, in an amount to be established at trial.  Plaintiffs and Class Members seek restitution of all unpaid wages owed to Plaintiffs and Class Members, disgorgement of all profits that Defendants have enjoyed as a result of their unfair and unlawful business practices, penalties, and injunctive relief.

<div align="center">

**TWELFTH CLAIM FOR RELIEF**

**Declaratory Judgment**

**[Cal. Code of Civil Procedure §1060 et seq.]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

</div>

232.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

233.     An actual controversy has arisen and now exists between the parties relating to the

1   legal rights and duties of the parties as set forth above, for which Plaintiffs desire a declaration of

2   rights and other relief available pursuant to the California Declaratory Judgment Act, California

3   Code of Civil Procedure §1060 et seq.

4        234.   A declaratory judgment is necessary and proper in that Plaintiffs contend that

5   Defendants have committed and continue to commit the violations set forth above and Defendants,

6   on information and belief, will deny that they have done so and/or that they will continue to do so.

7                     **THIRTEENTH CLAIM FOR RELIEF**

8                              **Retaliation**

9                       **[Cal. Labor Code §98.6]**

10          **(Brought by Plaintiff Salazar Against All Defendants )**

11       235.   Plaintiff Salazar realleges and incorporates by reference all previous paragraphs,

12  with exception of the allegations in paragraphs 140-147.

13       236.   California Labor Code §98.6(a) prohibits employers from discharging or otherwise

14  discriminating against any employee "because of the exercise by the employee . . . on behalf of

15  himself, herself, or others of any rights afforded him or her."

16       237.   Defendants violated California Labor Code §98.6(a) by discriminating against

17  Plaintiff Salazar by, among other things, reducing her hours, changing her hours to times she was

18  not available to work, denying requested days off, "writing her up" and otherwise subjecting her to

19  increased discipline and threats of suspension, and harassing her, because she complained to her

20  managers that she was not paid for all hours she worked and/or because she engaged in other

21  protected activity, including but not limited to by participating as a named plaintiff in this lawsuit.

22  Plaintiff Salazar's complaint involved the exercise of her rights protected by California Labor Code

23  §§204, 226(a), 510, 1174 and IWC Wage Order 5-2001 §§3 and 7, including but not limited to the

24  right to be compensated in accordance with state law and to receive and/or request complete and

25  accurate information regarding her pay, hourly wage, overtime pay, and hours worked.

26       238.   Plaintiff Salazar seeks damages, pursuant to Labor Code §98.6(b), which provides

27  that "[a]ny employee who is . . . in any . . . manner discriminated against in the terms and

28  conditions of his or her employment" for exercising his or her rights is entitled to reimbursement of

1  lost wages and work benefits caused by those acts of the employer.

2      239.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

3  Plaintiff Salazar has sustained economic damages, including loss of wages and other work benefits

4  and lost interest, in an amount to be established at trial.

5      240.    Plaintiffs are informed and believe, and thereon allege, that the unlawful conduct of

6  Defendants and/or their agents, supervisors, managers, and/or employees, as described herein, was

7  malicious, fraudulent, and/or oppressive, and was done with a willful and conscious disregard for

8  the rights of Plaintiff Salazar and for the harmful consequences of Defendants' actions; and,

9  further, that Defendants and/or their agents, employees, managers or supervisors authorized,

10  condoned, and ratified the unlawful conduct of the officers, supervisors, managers, and/or other

11  employees of Defendants who retaliated against Plaintiff Salazar.  Consequently, Plaintiff Salazar

12  is entitled to punitive damages against Defendants, in amounts according to proof.

13                                  **PRAYER FOR RELIEF**

14      WHEREFORE, Plaintiffs respectfully request the following relief:

15      1.      Certification of this action as a class action on behalf of the proposed class under

16  Federal Rule of Civil Procedure §23;

17      2.      Designation of Plaintiffs as representatives of the plaintiff class;

18      3.      A temporary, preliminary, and permanent injunction requiring Defendants to pay

19  Plaintiffs and Class Members all wages, including but not limited overtime and minimum wages,

20  for all hours worked when due, and requiring Defendants to keep accurate track of all time

21  Plaintiffs and Class Members work;

22      4.      A temporary, preliminary, and permanent injunction requiring Defendants to

23  provide Plaintiffs and Class Members all legally required meal periods and rest breaks and to pay

24  an additional hour's pay for every day that a meal period or rest break is missed, untimely, or

25  shortened, and requiring Defendants to keep accurate track of the time Plaintiffs and Class

26  Members are provided and receive meal periods and rest breaks;

27      5.      A temporary, preliminary, and permanent injunction requiring Defendants to

28  provide Plaintiffs and Class Members all of the information required by California Labor Code

§§226(a) and 1174 and IWC Wage Order 5-2001 §7;

6.      A temporary, preliminary, and permanent injunction requiring Defendants to reimburse all necessary expenses incurred by Plaintiffs and Class Members in the discharge of their duties, including by either reimbursing the costs of maintaining uniforms or directly maintaining uniforms, and to refrain from deducting cash shortages from Plaintiffs' and Class Members' wages unless they can show the loss was the result of the employee's gross negligence or dishonest or willful act;

7.      A permanent injunction prohibiting Defendants from violating the California Labor Code and IWC Wage Order 5-2001, and committing unlawful and unfair business practices proscribed by California Business & Professions Code §17200 et seq.;

8.      A declaratory judgment that Defendants have knowingly and intentionally violated the following provisions of law:

a.      California Labor Code §§204, 206, 223, and 1195.5 by failing to pay full wages when due for all hours worked;

b.      California Labor Code §§510 and 1194(a) and IWC Wage Order 5-2001 §3, by failing to provide premium wages for work in excess of eight hours per workday or 40 hours per workweek;

c.      California Labor Code §§1182.12, 1194(a), 1194.2(a), and 1197 and IWC Wage Order 5-2001 §4, by failing to pay at least the California minimum wage;

d.      California Labor Code §§226.7 and 512 and IWC Order 5-2001 §§11 and 12, by failing to provide all required meal periods and rest breaks and failing to compensate employees for missed, untimely, or shortened meal periods and rest breaks;

e.      California Labor Code §1174 and IWC Wage Order No. 9-2001 §7, by failing to maintain and provide employees with access to complete and accurate records;

f.      California Labor Code §226, by failing to provide the information required semimonthly or with each payment of wages;

g.      California Labor Code §§221, 450, and 2802 and IWC Wage Order No. 5 2001, §§8

59

1        and 9, by failing to indemnify workers for necessary expenses incurred in the

2        discharge of their duties, including expenses relating to uniform maintenance and

3        cash register shortages;

4    h.    California Business and Professions Code §§17200-08, by violating the provisions

5        set forth in subparagraphs (a)-(g); and

6    i.    California Labor Code §98.6 for retaliating against Plaintiff Salazar;

7    9.    An award of restitution or damages in the amount of unpaid wages, overtime,

8  minimum wage compensation (plus liquidated damages pursuant to California Labor Code

9  §1194.2), and unlawful deductions from wages (or liquidated damages pursuant to California

10  Labor Code § 226(e), whichever is greater), including interest thereon, subject to proof at trial;

11    10.    An award of statutory penalties pursuant to California Labor Code §§226.3, 558,

12  1174.5, 1197.1, and 2698-99, and California Business & Professions Code §17206, subject to proof

13  at trial;

14    11.    An award of penalties for failure to pay full wages when due pursuant to California

15  Labor Code §§206, 210, and 225.5 subject to proof at trial;

16    12.    An award of restitution of all amounts owed in unpaid wages, overtime, minimum

17  wage compensation, and unlawful deductions from wages, and interest thereon, in an amount

18  according to proof at trial, pursuant to California Business & Professions Code §17203;

19    13.    Disgorgement of profits and all other appropriate equitable relief authorized by

20  California Business & Professions Code §17203;

21    14.    Punitive damages for the malicious retaliation against Plaintiff Salazar;

22    15.    Prejudgment and postjudgment interest on all sums awarded;

23    16.    Attorneys' fees and litigation expenses in an amount the Court determines to be

24  reasonable, pursuant to Labor Code §§216(b), 218.5, 226(h), 1194(a), 2699(g)(1), and 2802(c), and

25  California Code of Civil Procedure §1021.5, and such other provisions as may be applicable;

26    17.    Costs of suit; and

27    18.    Such other and further relief as is equitable, just, and proper.

28

1   Dated:  November 7, 2014                    Respectfully submitted,

2                                               MICHAEL RUBIN
3                                               BARBARA J. CHISHOLM
                                                P. CASEY PITTS
4                                               MATTHEW J. MURRAY
                                                Altshuler Berzon LLP
5
                                                JOSEPH M. SELLERS
6                                               ABIGAIL E. SHAFROTH
                                                Cohen Milstein Sellers & Toll, PLLC
7
8                                               Attorneys for Plaintiffs

9                                    By:    ___/s/ Barbara J. Chisholm_____
10                                          Barbara J. Chisholm

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT; Case No. 3:14-CV-02096-RS

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and similarly situated McDonald's employees, hereby demand a jury trial on all causes of action and claims with respect to which they have  right to jury trial.

Dated:  November 7, 2014                                Respectfully submitted,

MICHAEL RUBIN
BARBARA J. CHISHOLM
P. CASEY PITTS
MATTHEW J. MURRAY
Altshuler Berzon LLP

JOSEPH M. SELLERS
ABIGAIL E. SHAFROTH
Cohen Milstein Sellers & Toll, PLLC

Attorneys for Plaintiffs

By:      ___/s/ Barbara J. Chisholm_____
Barbara J. Chisholm

FIRST AMENDED COMPLAINT; Case No. 3:14-CV-02096-RS