1  Fred W. Alvarez (SBN 68115)
   Allison B. Moser (SBN 223065)
2  JONES DAY
   1755 Embarcadero Road
3  Palo Alto, CA  94303
   Telephone: 650.739.3939
4  Facsimile: 650.739.3900
   Email: falvarez@jonesday.com
5          amoser@jonesday.com

6  Matthew W. Lampe (SBN 4620852) (pro hac vice)
   JONES DAY
7  222 East 41st Street
   New York, NY 10017-6702
8  Telephone: 212.326.3939
   Facsimile: 212.755.7306
9  Email: mlampe@jonesday.com

10 Lawrence C. DiNardo (SBN 3128594) (pro hac vice)
   Elizabeth B. McRee (SBN 6275501) (pro hac vice)
11 JONES DAY
   77 West Wacker Drive, Suite 3500
12 Chicago, IL 60601
   Telephone: 312.782.3939
13 Facsimile: 312.782.8585
   Email: emcree@jonesday.com

14

15 Attorneys for Defendants McDonald's Corporation,
   McDonald's USA, LLC and McDonald's Restaurants
   of California, Inc.

16

   **IN THE UNITED STATES DISTRICT COURT FOR THE**
17 **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO**

18 GUADALUPE SALAZAR, GENOVEVA
   LOPEZ, and JUDITH ZARATE, on behalf of
19 themselves and all others similarly situated,

20            Plaintiffs,                    CASE NO.  3:14-cv-02096-RS

21       v.                                  NOTICE OF MOTION AND
                                             MOTION FOR SUMMARY
22 MCDONALD'S CORP., a corporation,          JUDGMENT OF DEFENDANTS
   MCDONALD'S U.S.A., LLC, a limited         MCDONALD'S USA, LLC AND
23 liability company, MCDONALD'S             MCDONALD'S CORPORATION
   RESTAURANTS OF CALIFORNIA, INC., a
24 corporation, BOBBY O. HAYNES SR. AND      Date: Thursday, July 21, 2016
   CAROL R. HAYNES FAMILY LIMITED            Time: 1:30 p.m.
25 PARTNERSHIP d/b/a MCDONALD'S, a           Courtroom: 3
   limited partnership, and DOES 1 through 100, Judge: Hon. Richard Seeborg
26 inclusive,
                                             Complaint Filed:   March 12, 2014
27            Defendants.

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on July 21, 2016, or as soon thereafter as this matter may be heard, in Courtroom 3, 17th Floor, of the above-captioned court at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants McDonald's USA, LLC ("McDonald's USA") and McDonald's Corporation ("McDonald's Corp.") (the "McDonald's Defendants") will, and hereby do, move for summary judgment in their favor and against plaintiffs Guadalupe Salazar, Genoveva Lopez, and Judith Zarate ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 56 and Northern District of California Civil Local Rules 7-2, 7-4, and 56.

The McDonald's Defendants seek summary judgment against Plaintiffs on the grounds that the record evidence confirms that: (i) they are not a joint employer of the employees of the Bobby O. Haynes Sr. and Carol R. Haynes Family Limited Partnership ("Haynes"), nor does an agency relationship exist with the Haynes; (ii) they neither owe any duty of care to Plaintiffs nor have they breached any such duty required to state a claim of negligence; (iii) there is no evidence sufficient to support a claim under any unlawful conspiracy or aiding and abetting theory; (iv) there is no basis to assert a claim against McDonald's Corp. because it plays no role in the Haynes operations; and (v) there are no genuine issues of material fact regarding these questions, and therefore the McDonald's Defendants are entitled to judgment as a matter of law.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Elizabeth B. McRee, the Declaration of Bruce Steinhilper, and the Declaration of Kimberly Keeton filed and served herewith, all of the pleadings and papers on file in this matter, and upon such further evidence and argument as may be presented at the hearing of this Motion.

1    Dated: May 6, 2016                         Respectfully submitted,

2                                               JONES DAY

3

4                                               By: _____ /S/ Elizabeth B. McRee _____
                                                       Elizabeth B. McRee
5                                               Counsel for Defendants
                                                MCDONALD'S CORPORATION
6                                               MCDONALD'S USA, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................ 2

    A.   The Franchise Relationship Between McDonald's USA and Haynes ................... 2

    B.   Additional Resources Made Available to Haynes as a McDonald's Franchisee ................................................................................................ 4

    C.   Haynes' Restaurant Operations And Employment Practices ............................. 6

    D.   Plaintiffs' Employment At Haynes' Franchise Restaurants ............................... 7

III. ARGUMENT ................................................................................................ 10

    A.   The Undisputed Record Evidence Establishes That the McDonald's Defendants Are Not Plaintiffs' Employer or Joint Employer ............................. 10

        1.   Haynes – Not the McDonald's Defendants -- Interviewed Plaintiffs, and Decided Whether To Hire Them ............................................. 13

        2.   Haynes – Not the McDonald's Defendants – Determined the Compensation Paid to Plaintiffs .............................................. 13

        3.   Haynes – Not The McDonald's Defendants – Trained Plaintiffs on Their Job Duties ...................................................................... 13

        4.   Haynes – Not the McDonald's Defendants – Determined the Work Schedules for Plaintiffs, and Controlled Their Job Assignments ............. 14

        5.   Haynes – Not the McDonald's Defendants – Was Responsible For Ensuring Plaintiffs Correctly Recorded Their Time ................................. 14

        6.   Haynes – Not the McDonald's Defendants – Administered Meal and Rest Break Policies at Haynes' Restaurants ................................... 14

        7.   Haynes – Not the McDonald's Defendants – Evaluated the Performance of Plaintiffs and Enforced Work Rules ............................... 15

        8.   Haynes – Not the McDonald's Defendants – Maintained a Payroll Bank Account in California for the Payment of Wages to Plaintiffs ........ 15

    B.   The Undisputed Record Evidence Establishes that the McDonald's Defendants Are Not Liable Under an Agency Theory ...................................... 16

        1.   Haynes Is Not the Agent of the McDonald's Defendants ........................ 16

        2.   Plaintiffs Cannot Establish That Haynes Is An Ostensible Agent ............ 17

    C.   The Operational Requirements of McDonald's USA, and the Resources It Makes Available, Do Not Equate to Control Over Haynes' Business ................. 20

    D.   Plaintiffs' Negligence Claim Fails Because It Is Preempted By the Labor Code and Because the McDonald's Defendants Owe No Duty of Care to Plaintiffs ....................................................................................... 23

    E.   Plaintiffs Cannot Prove Their Claims of Conspiracy and Aiding and Abetting .......................................................................................... 25

IV.  CONCLUSION ............................................................................................ 25

# MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF AUTHORITIES

Cases                                                                    Page

*Aleksick v. 7-Eleven, Inc.*
    205 Cal. App. 4th 1176 (2012) ..................................................................................12, 23

*Assoc. Creditors' Agency v. Davis,*
    13 Cal. 3d 374 (1975) ........................................................................................................17

*Brewer v. Premier Golf Properties,*
    168 Cal. App. 4th 1243 (2008) .........................................................................................23

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...........................................................................................................10

*Chetal v. American Home Mortg.,*
    2009 WL 2612312 (N.D. Cal. Aug. 24, 2009)..................................................................25

*Cislaw v. Southland Corp.,*
    4 Cal. App. 4th 1284 (1992) .................................................................................16, 20, 24

*D.L.S. v. Maybin,*
    130 Wash. App. 94 (Wash. Ct. App. 2005) ...............................................................18, 20

*Dianda v. PDEI, Inc.,*
    377 F. App'x 676 (9th Cir. 2010) .....................................................................................25

*Dufour v. Be LLC,*
    2010 WL 431972 (N.D. Cal. Feb. 2, 2010) .....................................................................25

*Field v. Am. Morg. Exp. Corp.,*
    2011 U.S. Dist. LEXIS 84601 (N.D. Cal. Aug. 2, 2011).................................................21

*Folsom v. Burger King,*
    135 Wash. 2d 658 (1998)..................................................................................................24

*Geter v. ADP Screening & Selection Servs., Inc.,*
    2015 WL 1867041 (D.N.J. Apr. 23, 2015) ......................................................................24

*Gray v. McDonald's USA, LLC,*
    874 F. Supp. 2d 743 (E.D. Tenn. 2012) ...........................................................................18

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3   *Helm v. Alderwoods Grp., Inc.*,

4       696 F. Supp. 2d 1057 (N.D. Cal. July 29, 2009)....................................................23

5   *Hoffnagle v. McDonald's Corp.*,

6       522 N.W.2d 808 (Iowa 1994) ..............................................................................24

7   *In re Oracle Corp. Sec. Litig.*,
        627 F.3d 376 (9th Cir. 2010).................................................................................10

8
    *Incantalupo v. Lawrence Union Free Sch. Dist. No. 15*,
9       829 F. Supp. 2d 67 (E.D.N.Y. 2010)....................................................................17

10  *Juarez v. Jani-King of Calif., Inc.*,

11      2012 U.S. Dist. LEXIS 7406 (N.D. Cal. Jan. 23, 2012) ..............................12, 13, 21

12  *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*,

13      59 Cal. App. 4th 741 (1997) ................................................................................18

14  *Martinez v. Combs*,

15      49 Cal. 4th 35 (2010) ...............................................................................10, 11, 24

16  *Ochoa v. McDonald's Corp.*,

17      2015 WL 5654853 (N.D. Cal. Sept. 25, 2015) .............................................. passim

18  *Patterson v. Domino's Pizza, LLC*,
        60 Cal. 4th 474 (2014) ........................................................................... passim

19
    *Perez v. State Farm Mut. Auto. Ins. Co.*,
20      2011 WL 5833636 (N.D. Cal. Nov. 15, 2011)........................................................25

21  *Santiago v. Amdocs, Inc.*,

22      2011 U.S. Dist. LEXIS 36111 (N.D. Cal. Apr. 2, 2011) .......................................23

23  *Serino v. Payday Calif., Inc.*,

24      2010 U.S. App. LEXIS 8697 (9th Cir. Apr. 27, 2010) ...........................................24

25  *Silfee v. Automated Data Processing, Inc.*,

26      2015 WL 1137526 (M.D. Penn. Mar. 12, 2015)....................................................24

27  *Singh v. 7-Eleven, Inc.*,
        2007 WL 715488 (N.D. Cal. Mar. 8, 2007).........................................11, 12, 14, 15

28

**TABLE OF AUTHORITIES**
(continued)

Page

*VanDeMark v. McDonald's Corp.*,
153 N.H. 753 (2006) .................................................................................................25

*Vann v. Massage Envy Franchising LLC*,
2015 WL 74139 (S.D. Cal. Jan. 6, 2015)...................................................... passim

*Vernon v. State of California*,
116 Cal. App. 4th 114 (2004) ....................................................................................1

**STATUTES**

Cal. Labor Code § 2699 .............................................................................................23

Labor Code § 98.6.....................................................................................................23

Labor Code § 2810.5.................................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a)..................................................................................................10

Wage Order 5 .............................................................................................................11

1    **I.     INTRODUCTION**

2          The California Supreme Court has held that a franchisor is not vicariously liable for its

3    franchisees' employment decisions unless it has a "'comprehensive and immediate level of day-

4    to-day authority' over matters such as hiring, firing, direction, supervision, and discipline of the

5    employee." *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 499 (2014) (quoting *Vernon v.*

6    *State of California*, 116 Cal. App. 4th 114, 127-28 (2004)). In applying this standard to one of

7    Plaintiffs' counsel's other cases involving nearly identical claims and factual allegations against

8    McDonald's USA, LLC and McDonald's Corporation ("McDonald's Defendants"), another court

9    in this District recently found as a matter of law that the McDonald's Defendants do not have the

10   comprehensive control required to be liable for the franchisee's employment decisions. *See*

11   *Ochoa v. McDonald's Corp.*, 2015 WL 5654853, at *4-7 (N.D. Cal. Sept. 25, 2015).

12         Here, the undisputed evidence also compels summary judgment for the McDonald's

13   Defendants. Plaintiffs and the Haynes family, who are franchisees operating McDonald's

14   restaurants through the Bobby O. Haynes Sr. and Carol R. Haynes Family Limited Partnership

15   ("Haynes"), all admitted Haynes alone interviewed and hired Plaintiffs. Haynes alone determined

16   Plaintiffs' wages. Haynes trained Plaintiffs at Haynes' office in San Leandro, California, and at

17   Plaintiffs' individual restaurants. Haynes restaurant managers alone created Plaintiffs' schedules,

18   gave them their work assignments, enforced the Haynes organization work rules, and were

19   responsible for discipline of Plaintiffs. And Haynes alone hired its own payroll vendor and paid

20   Plaintiffs from Haynes' bank accounts. The undisputed evidence demonstrates that the

21   McDonald's Defendants did not carry out, or have authority to carry out, any of these functions,

22   and are not Plaintiffs' direct employer or in an actual agency relationship with Haynes.

23         The fact Haynes uses certain equipment and technology for sales and other transactions,

24   must make its restaurants available for periodic inspection, and has access to training on standards

25   and expectations along with other optional resources provided by McDonald's USA does not

26   change this result. As *Patterson* held, franchisors—like McDonald's USA—may protect their

27   brands by implementing and enforcing standards on franchisees, 166 Cal. App. 4th at 498 n.21,

28   including by implementing a business plan, which may involve "[a] long list of marketing,

1  production, operational and administrative areas," taking "the form of printed manuals, training

2  programs, advertising services, and managerial support, among other things." *Id.* at 489-90.

3  These common standards are "not, standing alone, sufficient to impose 'employer' or 'principal'

4  liability on the franchisor" for employment-related decisions of the franchisee. *Id.* at 498 n.21.

5      The McDonald's Defendants are also entitled to summary judgment on all remaining

6  theories, including ostensible agency. In *Ochoa*, the court denied judgment on ostensible agency

7  only because plaintiffs submitted self-serving declarations claiming they believed they were

8  employed by McDonald's, and the court found the record insufficient to show those beliefs were

9  unreasonable at the summary judgment stage. 2015 WL 5654853, at *8. By contrast, the evidence

10 shows the franchisee in this case informed Plaintiffs that Haynes is their sole employer and not an

11 agent of the McDonald's Defendants. Haynes directly told Plaintiffs through job applications,

12 wage statements, and written acknowledgements that Plaintiffs signed when hired, that Haynes

13 alone employed Plaintiffs and is an independent employer. The undisputed evidence thus

14 confirms that the McDonald's Defendants are entitled to judgment on all of Plaintiffs' claims.

15 **II.    BACKGROUND**

16   **A.    The Franchise Relationship Between McDonald's USA and Haynes**

17      McDonald's USA's franchise model drives the expansion of McDonald's-branded

18 products and services throughout the U.S. while allowing local business owners to benefit from

19 the resources it provides to establish their own successful businesses. (Decl. of Bruce Steinhilper

20 ("Steinhilper Decl.") ¶¶ 6-7.) Through a franchise agreement, McDonald's USA gives franchisees

21 a license to use the McDonald's name, trademark, and business practices, and to benefit from an

22 established method of operating a restaurant. (*Id.* ¶¶ 8-9.) The execution of a business plan and

23 operation of the business remain solely under the control of the franchisees. (*Id.* ¶ 9.)

24      Since 2010, Haynes has operated eight franchised restaurants in Oakland and San Leandro

25 under separate franchise agreements that can be terminated only for material breach ("Franchise

26 Agreements"). (*E.g.*, Steinhilper Decl. Exs. A, B ("Fr. Ags.") ¶ 18.) The Franchise Agreements

27 define the parties' relationship, and provide that Haynes has "no authority, express or implied, to

28 act as agent of McDonald's." (*Id.* ¶ 16.) They also state that the parties "are not and do not intend

1    to be partners, associates, or joint employers in any way and McDonald's shall not be construed

2    to be jointly liable for any acts or omissions of [Haynes] under any circumstances." (*Id.*)

3         The Franchise Agreements also set forth the requirements and standards Haynes must

4    meet to maintain the franchise, and McDonald's USA's obligations to Haynes in return. Haynes

5    bears the investment costs for its restaurants, including costs of fixtures, signs, equipment, and

6    food. (*Id.* ¶ 12; Dep. of Michael Lewis, April 8, 2015 ("Lewis Dep.") Ex. 126 at 17.) Haynes

7    must also pay to McDonald's USA an initial fee, a monthly service fee based on gross sales, and

8    rent (Fr. Ags. ¶¶ 7-9, 17; Lewis Dep. Ex. 126 at 11-18.) The Agreements further require Haynes

9    to use certain prescribed equipment and limited technology to operate its franchise restaurants.

10   (Fr. Ags. ¶ 1.)  Specifically, Haynes must use the Point of Sale (POS) system to process and track

11   sales and other transactions (Lewis Dep. 44:7-10, 63:7-17), and the In Store Processor (ISP),

12   proprietary software of McDonald's (*id.* 60:7-61:18), to open and close the POS system at the

13   start and end of the business day (*id.* 63:18-22).

14        In exchange for the service fees paid by Haynes, the Franchise Agreements require

15   McDonald's USA to provide certain resources to help Haynes operate their restaurants. For

16   instance, McDonald's USA provides business manuals (Fr. Ags. ¶ 4) that outline certain required

17   procedures and practices related to, for example, product specifications and food safety, as well as

18   optional policies and practices related to personnel, crew management and scheduling, and

19   training for Haynes to adopt if it chooses (Dep. of Bobby Haynes, Jr., April 18, 2016 ("Haynes,

20   Jr. Dep.") 121:4-9; Dep. of Bruce Steinhilper, April 7, 2015 ("Steinhilper Dep.") 47:8-49:4;

21   Steinhilper Decl. Exs. C-E). McDonald's USA likewise makes its principal training resource,

22   Hamburger University, available to Haynes and the general managers of Haynes restaurants, and

23   requires that every restaurant be managed by a Hamburger University graduate. (Fr. Ags. ¶ 6;

24   Dep. of Steven Dubois, Feb. 11, 2016 ("Dubois Dep.") 230:9-13.) Beyond that, the Franchise

25   Agreements do not provide McDonald's USA with any role in Haynes' relationship with its

26   employees, requiring Haynes to "personally devote full time and best efforts to the operation of

27   the Restaurant" (Fr. Ags. ¶ 13), and "employ adequate personnel so as to operate the Restaurant

28   at its maximum capacity and efficiency" (*id.* ¶ 12(g)).

The Franchise Agreements also oblige McDonald's USA to provide field support staff, called "business consultants," to visit Haynes' restaurants to consult on operational, marketing, and general business subjects, and to ensure compliance with quality, service, and cleanliness standards. (Fr. Ags. ¶ 3; Dubois Dep. 17:21-23, 58:9-13.) Consultants "don't have any authority in [the Haynes] business whatsoever." (Haynes, Jr. Dep. 252:11-16.) Consultants cannot make staffing decisions (*id.* 251:25-252:16) or access Haynes' crew schedules or payroll reports (*id.* 254:2-255:2). And Haynes can reject any business advice from Consultants (*id.* 250:3-251:4), including, for example, advice to hire a mid-manager for the organization (*id.* 247:25-248:25).

Consultants also review Haynes' restaurants against the National Franchising Standards, a set of metrics used to guide future franchising decisions, including whether to expand a relationship to include additional locations and whether to enter into a new franchise term once the existing franchise term ends. (Steinhilper Dep. 165:10-17; *id.* Ex. 109 at 1.) Because the National Franchising Standards are not part of the Franchise Agreements, and "are not intended to, and do not necessarily address whether an Owner/Operator is in compliance with the Franchise Agreement," McDonald's USA cannot enforce compliance with the standards on Haynes. (*Id.* Ex. 109 at 1.) Rather, Consultants are instructed that the purpose of the reviews "is not to tell the Owner Operator how to manage their employees or run their business." (*Id.* Ex. 113 at 54.) "[W]hile [Consultants] can suggest, [they] cannot pressure the Owner Operator to change policies that they do not wish to change." (*Id.*)

**B.    Additional Resources Made Available to Haynes as a McDonald's Franchisee**

Though McDonald's USA makes available to Haynes certain optional technology and software resources as part of the franchise relationship and encourages their use, McDonald's USA cannot and does not compel Haynes to use the resources. For example, the timekeeping and scheduling functions of the ISP are discretionary for franchisees, as are the ISP's other back office functions like cash management, inventory, and payroll. (Lewis Dep. 79:4-9; Haynes, Jr. Dep. 257:9-258:6.) Haynes has discretion to use or not use any or all of those functions, to start and stop their use, to use them to varying degrees, or to use them in conjunction with other business resources not part of the ISP software. (Lewis Dep. 79:4–9; Haynes, Jr. Dep. 258:8-

259:9.) Haynes witnesses confirmed this, testifying that they were not aware of McDonald's USA ever requiring them to use the ISP's scheduling tools, that they were not familiar with the ISP's dynamic shift positioning guide (Haynes, Jr. Dep. 103:17-22), and that McDonald's has never told Haynes it expects Haynes to use the staffing, scheduling, and positioning tool (Dep. of Michele Haynes-Watts, Mar. 29, 2016 ("Haynes-Watts Dep.") 76:19-22). Haynes is likewise free to use or not use any aspect of the e*Restaurant software package, a web-based technology that a franchisee may adopt to manage personnel records, prepare employee schedules, and assign employee roles and responsibilities. (Dep. of Michael Lewis, Apr. 8, 2016, 280:10-24; Haynes, Jr. Dep. 121:4-9.)

Haynes also has the option to purchase, for a monthly fee, a business analytics tool called Regional Restaurant Data Diagnostics (R2D2) to assist in the operation of its restaurants. (Lewis Dep. 86:15–87:3.) R2D2 allows Haynes the option to choose from dozens of business reports generated from data collected from subscribers. (*Id.* 198:12-199:5.) While Consultants can suggest reports for Haynes to subscribe to, Haynes can reject those suggestions and has done so (Haynes, Jr. Dep. 193:14-95:5), and Haynes at all times decides how (if at all) to use those reports (Steinhilper Decl. ¶ 10; Haynes-Watts Dep. 76:8-22; Dep. of Bobby Haynes, Sr., April 26, 2016 ("Haynes, Sr. Dep.")) 130:18-22).

Likewise, McDonald's USA offers franchisees training and management systems to help franchisees improve their restaurant operations. Though McDonald's USA encourages franchisees to take advantage of these opportunities, Haynes is not required to do so. (*Id.*) Haynes treats these resources as "guides," using only the parts it believes are useful for its business. (Haynes-Watts Dep. 79:25-80:6.) For example, McDonald's USA recommended adoption of the Restaurant Department Management ("RDM") system, a management model based on a specific departmental organization. (*Id.* 108:3-109:8.) Haynes initially considered implementing the RDM system in its restaurants because it liked the concept (*id.* 111:22-112:5), but ultimately decided not to use it because it determined that RDM did not work for its organization (*id.* 109:2-18). Likewise, while McDonald's USA offers computer-based training for shift or first-line restaurant managers, Haynes can and does select and certify employees as shift managers without any

1   computer-based training. (*Id*. 114:8-115:1.)

2        **C.**     **Haynes' Restaurant Operations And Employment Practices**

3        Haynes alone selects, interviews, and hires employees at each of the restaurants it

4   operates. (Haynes-Watts Dep. 220:21-221:23.) About half the employment applications Haynes

5   receives come through an optional fee-based service provided by a third-party vendor (Aon Corp.

6   ("Aon")) called "Hiring to Win," which includes an online assessment of job applicants. (*Id*.

7   171:15-172:16.) While Aon categorizes applicants with green, yellow and red flags based on their

8   assessments, Haynes does not provide those results to managers who do the hiring, and Haynes

9   remains free at all times to accept or reject the results as it sees fit. (*Id*. 173:5-22.)

10        Once Haynes has made its hiring decision, Haynes determines each new crew member's

11   wage rate. (Haynes-Watts Dep. 224:18-225:10.) New crew members receive an orientation packet

12   compiled by Haynes (Haynes, Sr. Dep. 146:11-18) and are trained by a Haynes employee at

13   Haynes' business office in San Leandro, California. (Haynes-Watts Dep. 22:4-23:11.) Haynes'

14   restaurant managers provide uniforms to crew members and set their own policies for uniform

15   maintenance. (*Id*. 225:11-20.) Haynes' restaurant managers set work schedules of crew members

16   at their individual stores, considering factors like the experience of crew members, the hours of

17   the store, and expected sales volume. (Haynes, Jr. Dep. 259:11-260:14.) Haynes' shift managers

18   determine crew members' specific work assignments (*id*. 261:21-24), and ensure they are

19   afforded meal periods and rest breaks (Haynes-Watts Dep. 223:16-224:7). Only Haynes'

20   restaurant managers can edit crew member time records. (Haynes, Jr. Dep. 262:13-18.) And only

21   Haynes' restaurant managers can evaluate (Haynes-Watts Dep. 222:6-12), and discipline its

22   employees (*id*. 222:13-223:9).

23        At all relevant times, Haynes has used ABC as its payroll provider. (Haynes, Jr. Dep.

24   255:4-10.) As part of the payroll process, a Haynes employee types and transmits employee time

25   record data to ABC using a form provided by ABC. (Haynes-Watts Dep. 61:3-22.) ABC created

26   the format for the checks and wage statements that go to Haynes employees. (*id*. 191:15-17.)

27   Only "Haynes Family Limited Partnership," and not the McDonald's Defendants, is listed as

28   employer on paystubs of Haynes employees. (*Id*. Ex. 73-74.) Employee paychecks bear the

1  Haynes' office address in San Leandro, and are signed by Bobby Haynes, Sr., not the

2  McDonald's Defendants. (*Id.*) The McDonald's Defendants have no access to or control of

3  Haynes' payroll system or bank accounts. (Haynes, Jr. Dep. 262:24-264:11.)

4      **D.    Plaintiffs' Employment At Haynes' Franchise Restaurants**

5      Guadalupe Salazar has worked at the Haynes restaurant at 7300 Bancroft in Oakland from

6  June 2012 to the present. (Dkt. No. 34, First Am. Compl. ("FAC") ¶ 8.) Genoveva Lopez has

7  worked at the Haynes restaurant at 2520 East 12th Street in Oakland from May 2013 to the

8  present. (*Id.* ¶ 9.) Judith Zarate has worked at the 12th Street restaurant since 2003. (*Id.* ¶ 10.)

9      Haynes interviewed and hired Plaintiffs. Zarate testified that the only person she spoke to

10 when she applied to work at a Haynes restaurant was "Griselda" (Zarate Dep. 24:2-9) – a

11 supervisor for the Haynes family (*id.* 21:10-24) – and Griselda offered Lopez her job.  (*Id.* 23:11-

12 23.) Salazar testified that she was interviewed by Michele Haynes, and was offered a job by either

13 Ms. Haynes or Ms. Haynes' secretary. (Salazar Dep. 35:6-36:5, 54:5-20.)  Lopez was interviewed

14 by Bobby Haynes Sr. at the Haynes' office, and the Haynes manager at the restaurant where

15 Lopez worked told her she was hired.  (Lopez Dep. 39:5-40:15, 43:10-15.)

16     Haynes informed Plaintiffs that Haynes was their employer. The Plaintiffs who applied for

17 jobs online acknowledged that they were "applying for employment with an independently owned

18 and operated McDonald's franchisee, a separate company and employer from McDonald's

19 Corporation and any of its subsidiaries." (Lopez Dep. 32:22-36:4, Exs. 1, 2; Salazar Dep. 37:23-

20 24, 45:12-46:2, Exs. 1, 2.) Soon after they were hired, Plaintiffs received an "Our Policies"

21 booklet, which informed them that "[t]he McDonald's restaurant you work at is owned and

22 operated by an independent McDonald's Franchisee (your 'owner/operator'). This is your

23 employer…. Individuals employed by independent owners of McDonald's restaurants are not

24 employees of McDonald's Corporation or its subsidiaries." (Lopez Dep. 103:6-23, Ex. 10;

25 Salazar Dep. 83:21-85:1, Ex. 10.) Plaintiffs also received a "Welcome to McDonald's" booklet

26 which similarly informed them: "Individuals employed by independent owners of McDonald's

27 restaurants are not employees of McDonald's Corporation or its subsidiaries." (Lopez Dep.

28 93:16-94:1, Exs. 7, 8; Salazar Dep. 79:23-81:22, Ex. 8.) In addition, Plaintiffs signed orientation

1   receipts, which acknowledge: "I understand that I am an employee-at-will of an independently

2   owned and operated McDonald's franchise." (Salazar Dep. Ex. 11.) And they each signed "Crew

3   Folder" acknowledgement forms, which state that the applicant is applying for employment "[a]t

4   this independently owned and operated McDonald's." (Lopez Dep. 52:2-13, Ex. 6; Salazar Dep.

5   57:25-58:5, Ex. 3; Zarate Dep. 32:2-9, Ex. 1.) Plaintiffs' annual W-2 tax forms likewise identify

6   "Haynes Family Partnership" as their "employer." (Lopez Dep. 44:13-45:3, 202:15-25, Exs. 3, 4;

7   Salazar Dep. 70:17-25, Ex. 5; Zarate Dep. 36:3-5, Ex. 2.)

8          <u>Haynes trained Plaintiffs at its offices and at the restaurants where it assigned them to</u>

9   <u>work</u>. Zarate had no formal training when she was hired, but learned to perform her duties on the

10   job by watching other employees at her restaurant and through instruction from her restaurant

11   manager. (Zarate Dep. 29:2-23.) Salazar testified that she had orientation at Haynes' office, and

12   was later shown training videos by a manager at her restaurant. (Salazar Dep. 55:9-57:17, 66:10-

13   16, 169:12-170:23.) Lopez stated that she had orientation at Haynes' offices, watched two 15-

14   minute videos on food preparation, and received on-the-job training from Haynes employees.

15   (Lopez Dep. 81:4-86:12.)  Plaintiffs all confirmed that restaurant managers and other restaurant

16   employees provided training on how to record their work hours and how to prepare new products.

17   (Lopez Dep. 102:21-25; Salazar Dep. 171:11-18; Zarate Dep. 82:17-83:9.)

18          <u>Haynes scheduled Plaintiffs' hours of work, and directed their job duties</u>. Zarate testified

19   that her restaurant manager sets her work hours, and that she "always" goes to her manager with

20   requests or questions about her work schedule. (Zarate Dep. 55:8-56:20.) Salazar and Lopez also

21   stated that their restaurant managers set their schedules, and that they speak to their restaurant

22   managers about their work hours, and requests for scheduling changes or accommodations.

23   (Salazar Dep. 95:18-97:16; Lopez Dep. 71:20-74:23.) Plaintiffs' restaurant manager, shift

24   manager, or floor manager determines their job duties each day (Lopez Dep. 53:19-54:9; Salazar

25   Dep. 96:1-18, 98:13-99:7, 142:2-143:17; Zarate Dep. 58:13-16), and Zarate and Salazar testified

26   that their managers sometimes change their positions (Zarate Dep. 58:3-12; Salazar Dep. 140:17-

27   24.) Plaintiffs all testified that their managers inform them when they have to work late or may

28   leave early. (Lopez Dep. 77:2-16; Salazar Dep. 147:2-148:5; Zarate Dep. 75:3-8.)

1    Haynes' restaurant managers communicated with Plaintiffs about meal periods and rest

2  breaks. Lopez stated that, when she was hired, she learned when and for how long to take meal

3  periods and rest breaks from her co-worker – and co-plaintiff – Judith Zarate. (Lopez Dep.

4  138:18-139:16.) While Lopez sometimes informs a manager before she takes her break, at other

5  times she takes her break without seeking permission from her managers. (Lopez Dep. 140:15-

6  141:18.)  Zarate testified that her restaurant managers trained her that "after five hours, [she]

7  should take [her 30-minute] lunch," and that she should also take two 10-minute breaks during

8  her usual seven-and-a-half-hour shift. (Zarate Dep. 88:7-13, 112:22-25.) Though Zarate usually

9  takes breaks when directed by her floor managers (*id.* 88:7-18; 109:1-10), she sometimes asks her

10  managers to take a later meal period (*id.* 134:4-25). Salazar testified that her restaurant manager,

11  shift manager, or the crew member-in-charge tells her when to take her breaks (Salazar Dep.

12  177:8-178:8), and when a supervisor forgets about her break, Salazar reminds her supervisor, and

13  takes her break. (*Id.* 228:2-25.)

14    Haynes managers enforced work rules. Salazar recalled a time when her manager

15  "Ronald" disciplined her for drinking a soda in an area of the restaurant in which employees were

16  not permitted to eat or drink. (*Id.* 201:1-24.) Zarate confirmed that she received "written warnings

17  or disciplines," from restaurant managers, shift managers, and floor managers, and that she

18  sometimes discussed these written warnings with her restaurant manager. (Zarate Dep. 95:17-

19  98:22.)  No Plaintiff ever was disciplined by any employee of the McDonald's Defendants.

20  (Zarate Dep. 125:5-17; Lopez Dep. 114:8-16, 192:3-23; Salazar Dep. 114:1-23.)

21    Plaintiffs raised any questions or concerns about their jobs only with Haynes managers.

22  When Salazar had questions about her paycheck, she contacted her restaurant manager and, if her

23  manager was not able to help her, she contacted Michele Haynes. (Salazar Dep. 188:19-189:25.)

24  Lopez testified that she talked to her restaurant manager when she had a question about work, and

25  recalled another time when she complained to her shift manager about her meal period. (Lopez

26  Dep. 114:17-21, 147:10-24.) Lopez admitted that if she had a complaint, she would speak to a

27  restaurant manager or a member of the Haynes family. (*Id.* 109:15-110:13.) Zarate stated that she

28  called Michele Haynes to report a problem with her work hours, and that Bobby Haynes Jr. and

1   Michele Haynes both can "do something about [her] job." (Zarate Dep. 61:5-62:9, 94:3-95:3.) All

2   three Plaintiffs testified that they went to their Haynes restaurant managers if they had questions

3   about their time records or pay, and never contacted the McDonald's Defendants.  (Salazar Dep.

4   181:2-22, 188:6-20; Zarate Dep. 101:16-102:22; Lopez Dep. 109:15-110:13.)

5          <u>Plaintiffs never met or spoke with any employee of the McDonald's Defendants regarding</u>

6   <u>their employment</u>. Salazar could recall only one time in more than three years she has worked for

7   Haynes that she spoke with anyone from the McDonald's Defendants – when a man named

8   "Steve" spoke to her at the drive-thru window. (Salazar Dep. 110:18-113:10.) Zarate testified that

9   she never spoke with anyone employed by "McDonald's Corporation" or "McDonald's USA."

10  (Zarate Dep. 125:5-17.) She testified that she had "no idea who they are," and "no idea" about the

11  relationship between the Haynes and the McDonald's Defendants. (*Id*. 125:5-25.) Lopez also

12  testified that she had never spoken to anyone from "McDonald's corporate," and had no

13  knowledge that anyone from "McDonald's corporate" had any involvement in her hiring, work

14  schedule, job duties, training, or setting her wages.  (Lopez Dep. 192:3-23.)

15  **III.    ARGUMENT**

16         Summary judgment should be granted when "there is no genuine dispute as to any

17  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

18  moving party need not disprove the opponent's case; rather, it may prevail by demonstrating the

19  lack of evidentiary support for that case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

20  To defeat a motion for summary judgment, "[t]he non-moving party must show more than the

21  mere existence of a scintilla of evidence" to support its clams. *In re Oracle Corp. Sec. Litig.*, 627

22  F.3d 376, 387 (9th Cir. 2010). "In fact, the nonmoving party must come forth with evidence from

23  which a jury could reasonably render a verdict in the non-moving party's favor." *Id*.

24         **A.    The Undisputed Record Evidence Establishes That the McDonald's
               Defendants Are Not Plaintiffs' Employer or Joint Employer.**

25         It is well settled in California that "no generally applicable rule of law imposes on anyone

26  other than an *employer* a duty to pay wages." *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010)

27  (emphasis in original). Thus, "defendants are potentially liable under plaintiffs' California Labor

28

1   Code claims only if they employ the plaintiffs and the putative class." *Ochoa,* 2015 WL 5654853,

2   at *2; *see also Singh v. 7-Eleven, Inc.,* 2007 WL 715488, at *6 (N.D. Cal. Mar. 8, 2007)

3   (dismissing Labor Code claims against franchisor that was found not to be plaintiffs' employer).

4          The California Supreme Court has held that Industrial Wage Commission Wage Orders

5   determine who is an employer under the Labor Code. *See Martinez*, 49 Cal. 4th at 52, 66; *Vann v.*

6   *Massage Envy Franchising LLC*, 2015 WL 74139, at *6 (S.D. Cal. Jan. 6, 2015) ("In section

7   1194 actions, California Industrial Welfare Commission Wage Orders define the employment

8   relationship.") IWC Wage Orders define an employer as one "who directly or indirectly, or

9   through an agent or any other person, employs or exercises control over the wages, hours, or

10  working conditions of any person." *Martinez*, 49 Cal. 4th at 64; *see also* Wage Order 5 (applying

11  to hospitality industry). The term "employ," in turn, is defined as "to engage, suffer, or permit to

12  work." Wage Order 5. In *Martinez*, the California Supreme Court interpreted "employ" to mean:

13  (a) to exercise control over the wages, hours or working conditions, (b) to suffer or permit to

14  work, or (c) to engage, thereby creating an employment relationship. 49 Cal. 4th at 64.

15         Each of these three interpretations analyze similar factors, all of which focus on the ability

16  to control the terms and conditions of employment. To "exercise control over the wages, hours or

17  working conditions" means to make decisions regarding hiring, firing, training, supervising, rates

18  of pay, hours worked, and related matters. *Martinez*, 49 Cal. 4th at 72. "Suffer or permit to work"

19  was historically intended to reach the situation in which "[a] proprietor who knows that persons

20  are working in his or her business without having been formally hired, or while being paid less

21  than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having

22  the power to do so," *id.* at 69, with "the power to do so" meaning the power to hire and fire, set

23  wages and hours, and tell the workers where and when to report to work, *id.* at 70-71. And, under

24  the common law "engage" test, a franchisor "becomes potentially liable for the actions of the

25  franchisee's employees, only if it has retained or assumed a general right of control over factors

26  such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the

27  workplace behavior of the franchisee's employees." *Patterson*, 60 Cal. 4th at 497-98.

28         In *Patterson v. Domino's Pizza, LLC*, the California Supreme Court made it clear that a

1   franchisor cannot be held liable for the actions of employees of its franchisee based the

2   "imposition and enforcement of a uniform marketing and operational plan." 60 Cal. 4th at 478.

3   Even where the franchisor prescribes standards for product quality, general store operations, and

4   brand image, and "vigorously enforce[s]" those standards, *id.* at 478, it cannot be held liable as an

5   employer if it does not exercise a "comprehensive and immediate level of day-to-day authority

6   over matters such as hiring, firing, direction, supervision, and discipline of the employee," *id.* at

7   499. Thus, in *Patterson*, the franchisor was not liable because it did not retain or assume the right

8   to control "the relevant day-to-day operations at its franchised locations." *Id.* at 503.

9          Most recently, the courts in *Vann* and *Ochoa* granted summary judgment to franchisors,

10   finding they were not employers under the Labor Code. In *Vann*, the court held that, even though

11   the franchisor scripted conversations between franchisee employees and clients, required

12   employee background checks, distributed an operations manual to franchisees, and conducted

13   regular inspections, "there is … no evidence that [the franchisor] controlled employees' work

14   schedules," mandated a uniform pay policy, or controlled hiring or firing. 2015 WL 74139, at *8.

15   In *Ochoa*, the court found that plaintiffs' "voluminous submissions" on McDonald USA's

16   relationship with franchisees "d[id] nothing to negate or call into question the dispositive fact that

17   the authority to make hiring, firing, wage, and staffing decisions at the [franchisee's] restaurants

18   lies in [the franchisee] and its managers – and in them alone." 2015 WL 5654853, at *5. Many

19   other courts have granted summary judgment to franchisors, applying similar reasoning. *See*

20   *Aleksick v. 7-Eleven, Inc.* 205 Cal. App. 4th 1176, 1190 (2012) (finding franchisee "responsible

21   for overall store operations, including hiring and firing employees, setting rates of pay and raises,

22   scheduling work and vacations, and giving performance reviews"); *Juarez v. Jani-King of Calif.,*

23   *Inc.*, 2012 U.S. Dist. LEXIS 7406, at *12 (N.D. Cal. Jan. 23, 2012) (finding franchisee had

24   discretion to hire, fire, and supervise its employees); *Singh*, 2007 WL 715488, at *7 ("California

25   courts have consistently held that a principal-agency relationship exists only when the franchisor

26   retains complete or substantial control over the daily activities of the franchisee's business.").

27          Here too, the Franchise Agreements, deposition testimony from Haynes and McDonald's

28   USA, and admissions from Plaintiffs all confirm that the McDonald's Defendants have no control

at all over hiring, firing, and the terms and conditions of employment at the Haynes restaurants.

### 1. Haynes – Not the McDonald's Defendants -- Interviewed Plaintiffs, and Decided Whether To Hire Them.

The Franchise Agreements make clear that sole responsibility for operating the restaurants and "employ[ing] adequate personnel so as to operate the Restaurant at its maximum capacity and efficiency" resides with Haynes. (Fr. Ags. ¶ 12(g).) Haynes stated that it selects applicants to interview, personally conducts interviews, and alone decides who to hire. (Haynes, Jr. Dep. 260:17-261:17.) Plaintiffs confirmed that they interviewed only with members of the Haynes family or employees of Haynes, and were hired by Haynes. (Lopez Dep. 40:4-15, 43:13-21; Salazar Dep. 52:5-8, 54:5-12; Zarate Dep. 22:20-23:24.) Haynes' control over hiring confirms that the McDonald's Defendants are not joint employers. *See Patterson*, 60 Cal. 4th at 501 ("[Franchisee] exercised sole control over selecting the individuals who worked in his store.").

### 2. Haynes – Not the McDonald's Defendants – Determined the Compensation Paid to Plaintiffs.

Michele Haynes-Watts determines each new crew member's hourly wage rate. (Haynes-Watts Dep. 224:18-225:10.) Plaintiffs all testified that their restaurant managers speak with them about their wages, and that they address requests for raises to Haynes managers. (Lopez Dep. 66: 11-67:5; Salazar Dep. 106:4-107:15; Zarate Dep. 60:6-14). Haynes' control over wages confirms that the McDonald's Defendants are not joint employers. *See Juarez*, 2012 U.S. Dist. LEXIS 7406, at *12 (franchisees "determine[d] the amount and manner of their [employees'] pay").

### 3. Haynes – Not The McDonald's Defendants – Trained Plaintiffs on Their Job Duties.

A Haynes employee provides orientation to all newly-hired employees at Haynes' offices in San Leandro. (Haynes-Watts Dep. 22:4-23:11.) Plaintiffs confirmed they received orientation at Haynes' office (Salazar Dep. 55:9-57:17; Lopez Dep. 84:4-22), and/or received on-the-job training from managers and crew members (Zarate Dep. 29:2-23). They likewise admitted that Haynes managers and other restaurant employees trained them on how to record their work hours, on policies and procedures for meal and rest breaks, and how to prepare new products. (Lopez Dep. 192:24-193:23; Salazar Dep. 171:11-18; Zarate Dep. 82:17-83:9.) And Haynes management

1   testified it can choose what training to provide to its employees. (Haynes-Watts Dep. 21:9-10.)

2   Haynes' control over training confirms that the McDonald's Defendants are not joint employers.

3   *See Singh*, 2007 WL 715488, at *4 (noting that franchisee trained its own employees).

4        **4.      Haynes – Not the McDonald's Defendants – Determined the Work**
5                   **Schedules for Plaintiffs, and Controlled Their Job Assignments.**

6        The managers at Haynes' restaurants set work schedules of crew members (Haynes-Watts

7   Dep. 223:10-15), and determine their specific work assignments each day (Haynes, Jr. Dep. 261:

8   21-24). Plaintiffs confirmed that their Haynes managers set their work hours, that they go to their

9   managers with requests for scheduling accommodations, and that their managers provide daily

10  job assignments. (Zarate Dep. 55:8-56:20, 58:3-16; Salazar Dep. 95:18-99:7; Lopez Dep. 71:20-

11  74:23.) Haynes' control over work schedules and assignments confirms that the McDonald's

12  Defendants are not joint employers. *See Vann*, 2015 WL 74139, at *8 (noting that "work

13  schedules were created, managed, and distributed within the particular franchise location").

14       **5.      Haynes – Not the McDonald's Defendants – Was Responsible For**
           **Ensuring Plaintiffs Correctly Recorded Their Time.**

15       Only Haynes supervisors can edit or correct time entries when crew members fail to

16  properly record time, including when failing to clock in or clock out. (Haynes, Jr. Dep. 262:13-

17  23.) Plaintiffs confirmed this, and stated that if they wanted to correct mistakes recording their

18  time, they informed only Haynes managers of the need for corrections. (Salazar Dep. 181:2-22;

19  Zarate Dep. 87:4-18; Lopez Dep. 129:23-130:12.) Haynes' control over time records is more

20  uncontroverted evidence that the McDonald's Defendants are not joint employers. *See Vann*,

21  2015 WL 74139, at *7 (franchisee set pay and timekeeping policies).

22       **6.      Haynes – Not the McDonald's Defendants – Administered Meal and**
           **Rest Break Policies at Haynes' Restaurants.**

23       Only shift managers at Haynes restaurants have authority to organize and track meal

24  periods and rest breaks. (Haynes-Watts Dep. 223:16-224:7.) And Plaintiffs described that they

25  either wait to be notified by a Haynes manager to take a break (Zarate Dep. 108:10-109:10;

26  Salazar Dep. 177:8-178:8), ask permission from a Haynes manager to take a break (Lopez Dep.

27  140:15-141:18), or remind a Haynes manager when it is time to take a break (Salazar Dep. 228:7-

28

25). Haynes' control over meal periods and rest breaks is undisputed and further confirms that the McDonald's Defendants are not joint employers. *See Patterson*, 60 Cal. 4th at 502 (noting that only the franchisee enforced the sexual harassment policy at its restaurant).

### 7. Haynes – Not the McDonald's Defendants – Evaluated the Performance of Plaintiffs and Enforced Work Rules.

The undisputed evidence demonstrates that only restaurant general managers evaluate the work of and discipline restaurant employees. (Haynes-Watts Dep. 222:6-223:6.) Plaintiffs likewise testified that only a Haynes restaurant manager or a shift manager imposed employee discipline. (Zarate Dep. 95:17-98:22; Salazar Dep. 201:1-24.) Haynes' control over performance evaluations and discipline further demonstrates that the McDonald's Defendants cannot be deemed joint employers. *See Patterson*, 60 Cal. 4th at 502 ("The record shows that [franchisee], not Domino's, wielded [the] significant control [of imposing discipline].").

### 8. Haynes – Not the McDonald's Defendants – Maintained a Payroll Bank Account in California for the Payment of Wages to Plaintiffs.

The McDonald's Defendants do not have access to, nor are they a signatory to, Haynes' bank account, and have never been listed as an employer on Haynes' paychecks. (Haynes, Jr. Dep. 264:3-11; Haynes-Watts Dep. 234:1-235:10.) The McDonald's Defendants do not participate in the administration of payroll, timekeeping, recordkeeping, or payment of wages. (Haynes-Watts Dep. 225:8-226:5.) The McDonald's Defendants have no role in transmitting Haynes' time data to the payroll provider or with how that information is used to pay employees. (Haynes-Watts Dep. 23:6-24:11, 60:12-61:13.) Haynes' control over payroll also demonstrates that the McDonald's Defendants are not joint employers. *See Singh*, 2007 WL 715488, at *6 ("7-Eleven was not responsible for . . . using its funds to pay plaintiffs.").

In sum, the McDonald's Defendants did not control the terms and conditions of Plaintiffs' employment in any way, and the fact that Haynes may use optional systems, resources, and technology (discussed in Section III.C, *infra*) does not change that fact, much less establish a "comprehensive and immediate level of day-to-day authority" over Haynes employees. *See Patterson*, 60 Cal. 4th at 499. Thus, no triable issue of fact exists regarding the claimed employment relationship among the McDonald's Defendants and Haynes and its employees.

1

2

**B.      The Undisputed Record Evidence Establishes that the McDonald's Defendants Are Not Liable Under an Agency Theory.**

**1.      Haynes Is Not the Agent of the McDonald's Defendants.**

Plaintiffs also allege that the McDonald's Defendants are vicariously liable for the employment decisions of Haynes because Haynes was their agent with respect to the violations alleged in the Complaint. In *Patterson*, the California Supreme Court analyzed joint employment and agency together, applying a single "degree of control" analysis to determine if the franchisor could be held liable for the acts or omissions of its franchisee. 60 Cal. 4th at 500-04. This is consistent with long-established precedent finding that an agency relationship exists only when the franchisor retains "complete or substantial control" over the daily activities of the franchisee's business. *See, e.g., Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992) (citing 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 6, pp. 24-25); *Braboy*, 2011 U.S. Dist. LEXIS 18116, at *3 (finding "the evidence of the actual substantive relationship between the parties indicates that with respect to the hiring, and day to day supervision and control over plaintiff's working environment and job duties, it was [a separate Staples entity's] employees and supervisors who were responsible"). Because, as discussed above, the McDonald's Defendants did not control any aspect of Haynes' relationship with its employees – and because the Franchise Agreements expressly disavow any agency relationship – they also cannot be in an agency relationship with Haynes under the "complete or substantial" control test.

Moreover, to the extent Plaintiffs allege that the McDonald's Defendants exercise indirect control over Haynes' operations by acting jointly or in conjunction with Haynes to "reduce the labor costs in the Restaurants" through "policies and practices that have the purpose and effect of depriving Plaintiffs and Class Members of their full and timely wages when due" (FAC ¶ 29), their argument lacks evidentiary support sufficient to raise a genuine issue of material fact.

The McDonald's Defendants do not directly or indirectly discourage Haynes from paying full wages to crew members. (Steinhilper Decl. ¶ 11.) Nor do they benefit from any labor cost savings at the restaurants operated by franchisees – none of the payments Haynes makes to McDonald's USA pursuant to its Franchise Agreements are affected by labor costs. (*Id.*) The

1   initial fee Haynes paid when the Agreements were executed, the base monthly rent it pays for the

2   restaurants, and the fees it pays for systems, software, and services are fixed amounts set forth in

3   the Franchise Agreements and related documents, and remain the same regardless of the wages,

4   labor costs, or net profit of the restaurants. (Fr. Ags. ¶ 7; Lewis Dep. Ex. 126 at 11-18.) The

5   variable monthly service fee and rent Haynes pays to McDonald's USA are calculated as a

6   percentage of "gross sales," based only on the restaurant's revenue, without consideration of labor

7   costs. (Fr. Ags. ¶¶ 7-8; Steinhilper Dep. 83:9-25.) Finally, the cost of fixtures, signs, equipment,

8   food, paper, and other supplies are not impacted by labor costs.  (Lewis Dep. Ex. 126 at 11-18.)

9           The very point of the franchise relationship at issue here, and franchising generally, is to

10  "raise capital and grow [the franchisor's] business, while shifting the burden of running the local

11  stores to the franchisee" because the franchisee is "willing to invest [its] time and money, and

12  assume the risk of loss, in order to profit from its own business," *Patterson*, 60 Cal. 4th at 490.

13  The McDonald's Defendants could operate the restaurants themselves and "reap[] the full

14  benefits (e.g., maximizing profits) and bear[] the full burden (e.g., investing capital and risking

15  liability) of running a business." *Id*. at 488. But having decided to pass the benefit of operating

16  the restaurants involved in this case to Haynes, it would defeat the very purpose of the franchise

17  business model to then assume the risk of managing franchisee labor costs, especially at the day-

18  to-day or hour-to-hour level Plaintiffs allege in their Complaint. *Ochoa*, 2015 WL 5654853, at *1,

19  3 (finding indirect control insufficient to establish employment).

20              **2.      Plaintiffs Cannot Establish That Haynes Is An Ostensible Agent.**

21          Plaintiffs cannot escape summary judgment by relying on an ostensible agency theory.

22  Ostensible agency can exist only when no actual agency or employment relationship exists. *See*

23  *Assoc. Creditors' Agency v. Davis*, 13 Cal. 3d 374 (1975). For an entity to be responsible based

24  on ostensible agency, it must commit, or fail to commit, an act causing a plaintiff to reasonably

25  believe that a third party is acting as the entity's agent, and the plaintiff must reasonably rely on

26  that belief to her detriment. *Id*. Plaintiffs have not pled facts sufficient to support all elements of

27  an ostensible agency claim here, and should be precluded from making the argument. *See, e.g.,*

28  *Incantalupo v. Lawrence Union Free Sch. Dist. No. 15,* 829 F. Supp. 2d 67, 72 (E.D.N.Y. 2010).

1    In any event, the undisputed evidence demonstrates that Plaintiffs could not have

2    reasonably believed Haynes was an agent of the McDonald's Defendants or that they relied on

3    any such belief in accepting employment with Haynes. To the extent Plaintiffs rely on hallmarks

4    of the franchise business model – like McDonald's logos, uniforms, and packaging – to establish

5    that they reasonably believed they were employed by the McDonald's Defendants, not Haynes,

6    such arguments are foreclosed by the reasoning and decision of the California Supreme Court in

7    *Patterson*. While the court was not presented with an ostensible agency claim in *Patterson*, it held

8    that "uniform workplace standards intended to protect its brand, and the quality of customer

9    service, at its franchised locations is not, standing alone, sufficient to impose 'employer' or

10   'principal' liability on the franchisor for statutory common law violations." 60 Cal. 4th at n.21.

11   *Patterson* does not permit the conclusion that self-serving statements from Plaintiffs that they

12   believed "McDonald's" is their employer can impute liability on the McDonald's Defendants

13   under facts and circumstances that the California Supreme Court held insufficient to establish

14   "true agency" or employer status under the Labor Code. Any other result would be an indirect

15   rejection of the entire framework that the California Supreme Court endorsed in *Patterson*.

16   Indeed, courts routinely reject ostensible agency claims made by employees of franchisees

17   against franchisors. In *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743 (E.D. Tenn. 2012),

18   the court rejected an ostensible agency claim brought by a franchisee's employee who sued for

19   discrimination and negligence. The court distinguished cases that "involve third-party plaintiffs

20   who have no previous relationship with the defendant. Those cases [] focus on appearances as an

21   indicator of agency because they involve plaintiffs who relied on the appearance of agency

22   arguably because they had no other knowledge of the actual relationship between the franchisee

23   and franchisor." *Id*. at 751-52. *See also*, *D.L.S. v. Maybin*, 130 Wash. App. 94 (Wash. Ct. App.

24   2005) (granting summary judgment to McDonald's on claim by employee of franchisee).[1]

25

26   _____

[1] Where ostensible agency has been found to be a basis of liability in the franchising context, it has involved *non-employee*, third-parties who have engaged in *isolated or short-term interactions* with the franchisor. These cases typically involve customers suing under tort theories. *See, e.g., Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741 (1997) (real estate investor brought suit against Coldwell Banker for affiliate-broker's representation in investor's transaction to purchase land).

27

28

1    In *Ochoa*, the court found the fact record on ostensible agency was not fully developed,

2  and ruled that a triable question of fact existed based solely on plaintiffs' eleventh-hour

3  submission of declarations in opposition to summary judgment.  But Plaintiffs in this case were

4  repeatedly informed that the McDonald's Defendants were not their employer or a principal of

5  the franchisee, defeating any claim that Plaintiffs' purported belief was reasonable or that

6  McDonald's acted or neglected to act in a way that would make that belief reasonable. The many

7  ways Plaintiffs were informed that Haynes, not McDonald's, was their employer include:

8    • Online employment applications that acknowledged Plaintiffs "were applying for employ-
9    ment with an independently owned and operated McDonald's franchisee, a separate
     company and employer from McDonald's Corporation and any of its subsidiaries." (Lopez
10   Dep. 32:13-36:4, Exs. 1-2; Salazar Dep. 37:23-25, 45:12-46:2, Exs. 1-2.)

11   • The "Our Policies" booklet stating: "Who is Your Employer? The McDonald's restaurant
     you work at is owned and operated by an independent McDonald's Franchisee (your
12   'owner/operator'). This is your employer…. Individuals employed by independent owners
     of McDonald's restaurants are not employees of McDonald's Corporation or its
13   subsidiaries." (Lopez Dep. 103:6-23, Ex. 10; Salazar Dep. 83:21-85:1, Ex. 10.)

14   • The "Welcome to McDonald's" booklet stating "[i]ndividuals employed by independent
     owners of McDonald's restaurants are not employees of McDonald's Corporation or its
15   subsidiaries." (Lopez Dep. 93:16-94:1, Exs. 7, 8; Salazar Dep. 79:23-81:22, Ex. 8.)

16   • New-hire orientation conducted at Haynes' offices, which bear no "McDonald's"
     branding, where employees are orally informed Haynes is their employer. (Decl. of
17   Kimberly Keeton ("Keeton Decl.") ¶ 3, 6.)

18   • A notice pursuant to Labor Code section 2810.5 that informs the employee that the "Name
     of Employer" is "The Bobby O. Haynes and Carol R. Haynes Family Limited Partnership
19   DBA BobCar McDonald's." (Keeton Decl. ¶ 5, Ex. A.)

20   • Signed orientation receipts that acknowledge: "I understand that I am an employee-at-will
     of an independently owned and operated McDonald's franchise." (Salazar Dep. Ex. 11.)

21   • Signed "Crew Folder" acknowledgement forms, which acknowledge applicant is applying
22   for "employment" "[a]t this independently owned and operated McDonald's." (Lopez
     Dep. 52:2-13, Ex. 6; Salazar Dep. 57:25-58:5, Ex. 3; Zarate Dep. 32:2-9, Ex. 1.)

23   • Bi-monthly pay statements, which identify "Haynes Family Limited Partnership" as their
24   "employer." (Lopez Dep. 160:15-161:5, Ex. 14; Salazar Dep. 101:11-102:25, Ex. 12;
     Zarate Dep. 104:14-105:23, Ex. 13.)

25   • W-2 tax forms covering multiple years, which identify "Haynes Family Limited
26   Partnership" as their "employer." (Lopez Dep. 44:9-21, 202:15-25, Exs. 3, 4; Salazar Dep.
     70:17-25, Ex. 5; Zarate Dep. 35:10-37:16, Ex. 2.)

27   Moreover, Plaintiffs cannot show they relied to their detriment on their purported belief

28

---

1   that Haynes restaurants are operated by an agent of the McDonald's Defendants. Plaintiffs admit

2   that they applied for employment at Haynes restaurants because, for instance, the restaurants were

3   close to their homes (Salazar Dep. 31:12-32:4) and other family members worked there (Zarate

4   Dep. 19:13-22), not because they believed Haynes was an agent of the McDonald's Defendants.

5   And Plaintiffs admitted they understood they were employed by an independently owned and

6   operated McDonald's franchise, not the McDonald's Defendants. (Lopez Dep. 36:1-4, 43:13-18,

7   95:19-96:3; Salazar Dep. 48:7-49:1, 81:20-25.) In the face of all this uncontroverted evidence,

8   Plaintiffs cannot establish any element of an ostensible agency claim. *See Maybin*, 130 Wash.

9   App. at 100 (Wash. Ct. App. 2005) (finding no apparent agency where plaintiff applied with

10  franchisee restaurant because it was close to home).

### C.   The Operational Requirements of McDonald's USA, and the Resources It Makes Available, Do Not Equate to Control Over Haynes' Business.

11

12         Despite the undisputed evidence that only Haynes controls the terms and conditions of

13  Plaintiffs' employment, Plaintiffs assert throughout their Complaint that operational requirements

14  and various resources McDonald's USA makes available to Haynes are sufficient to create a joint

15  employer or agency relationship. However, California courts have found that franchisors like

16  McDonald's USA have a legitimate interest in protection of their brand, and thus are "allow[ed]

17  to exercise certain controls over the enterprise without running the risk of transforming the

18  independent contractor franchisee into an agent." *Cislaw*, 4 Cal. App. 4th at 1292.

19         Specifically, *Patterson* held that making recommendations on pricing, staffing levels,

20  discipline, and terminations; training franchisees when their business opened and when a new

21  product was launched; providing an orientation program and employee handbooks, and requiring

22  inspections, did not create an employment or agency relationship. 60 Cal. 4th at 503. Likewise, in

23  *Ochoa*, the court held, among other things, that a franchisee's use of software and business tools

24  provided by McDonald's USA, and the Franchise Agreements' requirement that McDonald's

25  USA provide Consultants to the franchisee did not establish control over the business. 2015 WL

26  5654853, at *5-7. Here, as in *Ochoa*, Haynes need only use McDonald's software to open and

27  close the POS system at the start and end of the business day, and Haynes at all times determines

28

1    whether it accepts any advice from Consultants, allowing McDonald's no control over Haynes'

2    day-to-day business decisions. *See also Vann*, 2015 WL 74139, at *2 (required use of a specific

3    computer system for accounting and point of sale information, pre-hire background checks, and

4    use of "regional developers to recruit potential franchisees and assist in opening new franchises"

5    did not create an employment or agency relationship); *Field v. Am. Morg. Exp. Corp.*, 2011 U.S.

6    Dist. LEXIS 84601, at *16, 19 (N.D. Cal. Aug. 2, 2011) (providing a human resources director to

7    give guidance on "hiring, supervision, training, appraisal, discipline and termination," did not

8    create an employment relationship); *Juarez*, 2012 U.S. Dist. LEXIS 7406, at *13-14 (finding

9    control over billing and accounting, the right to terminate franchise's service to clients, and com-

10   munication with a franchisee's clients to ensure satisfaction did not establish joint employment).

11        Specifically, while the Franchise Agreements require Haynes to use a standard POS

12   platform, including the ISP, the only required functions of those systems are those that open and

13   close the business day, and those necessary to conduct sales transactions. All other functions,

14   including those related to timekeeping and scheduling, are completely optional for Haynes (Lewis

15   Dep. 79:4-9), and Haynes witnesses confirmed that they never have been pressured to use any

16   optional scheduling tools (Haynes, Jr. Dep. 257:5-24.)

17        McDonald's USA also makes available to Haynes "Hiring to Win," and R2D2. But, as in

18   *Ochoa*, Haynes at all times retains complete discretion to hire or reject any applicant it chooses,

19   regardless of the results of the "Hiring to Win" assessment – indeed, Haynes retains discretion as

20   to whether it even subscribes to the service. (Haynes, Jr. Dep. 241:24-242:1, 261:1-17.) As for

21   R2D2, Haynes had to elect to use the service before the software was installed and receives only

22   reports that it specifically selects out of dozens of options. (Lewis Dep. 198:21-199:5, 233:6-23.)

23   McDonald's USA also provides Haynes with its Operations and Training Manual. (Steinhilper

24   Dep. 46:4-17.) But that manual expressly provides that policies related to personnel practices,

25   crew management and scheduling, and training are completely optional for franchisees:

26   • People: "Franchisees are independent employers who make their own decisions and
       policies regarding employment-related matters pertaining to their employees. Franchisees
27     may choose to use part, all, or none of the contents in these materials that will be helpful
       to them in operating their own McDonald's restaurants." (Steinhilper Decl. Ex. C.)

28

---

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 3:14-cv-02096-RS**

- Training: "Franchisees are independent employers and are solely responsible for hiring, assigning roles and responsibilities to, training, and advancing their employees. Franchisees should establish their own policies and may choose the information from this chapter that will be helpful to them in operating their business." (Steinhilper Decl. Ex. D.)

- Crew Management and Scheduling: "Subsidiaries, affiliates, and licensees establish their own human resources policies and may choose the information from this chapter that will be helpful to them in operating their businesses." (Steinhilper Decl. Ex. E.)

With the exception of product training and the requirement that each restaurant have at least one manager trained at Hamburger University, all training and electronic learning modules McDonald's USA provides to Haynes or its employees, while encouraged, may be ignored. (Fr. Ags. ¶ 6; Steinhilper Decl. ¶ 10.) To the extent any of this training touches on employment practices, McDonald's USA makes clear that "Owner/Operators are responsible for all employment related matters in their restaurant(s) and exercise complete control over [such matters]." (Steinhilper Decl. Ex. F at 163.) And Haynes confirms that at times it declines certain training, such as training for certified shift managers. (Haynes-Watts Dep. 114:8-24.)

Moreover, the use of Consultants by McDonald's USA to ensure the protection of the trademarks and brand does not create an employment or agency relationship. *See Patterson*, 60 Cal. 4th at 485-86, 503; *Ochoa*, 2015 WL 5654853, at *6-7, *Vann*, 2015 WL 74139, at *7-8. Plaintiffs produced no evidence that Consultants gave them or their managers any direction with respect to day-to-day employment issues. And Consultants are reminded that they cannot dictate personnel policies, or advise on individual employment matters. Indeed, under the current business review process, review of people practices is conducted by Haynes' own self-assessment. (Steinhilper Decl. Ex. F.) The prior review process also made clear that:

> [A]ny decision to change people policies or practices rests solely in an owner operated restaurant with the independent Owner Operator…. [T]he Consultant should never render advice concerning individual personnel matters…. [T]he Owner Operator is responsible for handling their own individual employment issues.

(Steinhilper Dep. Ex. 113 at 54; Haynes-Watts Dep. 220:21-223:25.)

As in *Ochoa*, the resources and standards Plaintiffs allege "integrate" the McDonald's Defendants and Haynes do not amount to the "comprehensive and immediate level of day-to-day authority" required to establish vicarious liability. *Patterson*, 60 Cal. 4th at 499. Indeed, they are exactly the types of resources and standards California courts have found consistent with brand

1   protection – and insufficient to establish the franchisor's control over terms and conditions of

2   employment.  *See, e.g., Vann*, 2015 WL 74139, at *7-8 (operations manuals, software, and visits

3   from business consultants, found insufficient to create an employment or agency relationship);

4   *Patterson*, 60 Cal. 4th at 484 (reports and audits, computer and data access, and visits from

5   franchisor's inspectors, found insufficient  to create employment or agency relationship). As

6   *Vann* noted, "[e]nsuring that a client can receive the same type of experience in California as she

7   does in Texas is a necessary concern of franchisors," and does not create an employment or

8   agency relationship. 2015 WL 74139, at *8; *Patterson*, 60 Cal. 4th at 485 ("[S]ystemwide

9   standards and controls provide a means of protecting the trademarked brand at great distances").[2]

10      **D.      Plaintiffs' Negligence Claim Fails Because It Is Preempted By the Labor Code
                  and Because the McDonald's Defendants Owe No Duty of Care to Plaintiffs.**

11      Plaintiffs' negligence claim is barred as a matter of law because the California Labor

12   Code provides the exclusive remedy for their alleged injuries. *See Ochoa,* 2015 WL 5654853, at

13   *9 (rejecting negligence claims because they "duplicate the theories of liability plaintiffs assert

14   under the California Labor Code"). Under California's "new right-exclusive remedy" doctrine,

15   common law claims are preempted to the extent that they replicate causes of action covered by

16   the Labor Code. *See Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1252 (2008);

17   *Santiago v. Amdocs, Inc.*, 2011 U.S. Dist. LEXIS 36111, *10 (N.D. Cal. Apr. 2, 2011) (citing

18   California cases and dismissing conversion claim because "the right to overtime wages and wages

19   for meal and rest periods are created by statute" and must be brought under statute). Plaintiffs'

20   negligence claim asserts the same fact allegations and violations as their Labor Code claims – that

21   the McDonald's Defendants' claimed control over Haynes' operations and terms and conditions

22   of Plaintiffs' employment caused Haynes to violate the Labor Code – and are thus preempted.

23   *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1075-76 (N.D. Cal. July 29, 2009) (finding

24   common law claims preempted by the Labor Code). As *Ochoa* held, Plaintiffs' negligence claim

25   _____

26      [2] Because Plaintiffs cannot prove their Labor Code claims against the McDonald's
     Defendants, their PAGA claims (FAC ¶¶ 216-27) and Business & Professions Code claims (*id.*
     ¶¶ 228-31) also fail.  *See* Cal. Labor Code § 2699 (employment relationship required to recover

27   PAGA penalties); *Aleksick*, 205 Cal. App. 4th at 1191-93 (UCL claims failed where franchisor
     was not plaintiff's employer). Salazar's retaliation claim also fails because it is brought under

28   Labor Code Section 98.6, which like other Labor Code claims, applies only to employees.

1   is a clear attempt to circumvent the mandate of the Labor Code that an employment relationship

2   must exist to impose liability for the claims advanced here. *See also Martinez*, 49 Cal. 4th at 52.

3           Even if Plaintiffs' negligence claim were not preempted, it would fail because the

4   McDonald's Defendants owe no legal duty to Plaintiffs. Courts addressing whether a franchisor

5   owes a duty to a franchisee's employees "have generally concluded no duty of care exists." *See*

6   *Folsom v. Burger King*, 135 Wash. 2d 658 (1998) (finding no duty to franchisee's employees

7   because franchisor did not control day-to-day operations); *see also Patterson*, 60 Cal. 4th at 496

8   n.19 (noting "the apparent majority of decisions" have found franchisors not liable for torts

9   committed at franchisee restaurants); *Cislaw*, 4 Cal. App. at 1295 (franchisor not liable). Here, the

10  same facts fatal to Plaintiffs' joint employer claim – namely, that Haynes alone controlled the

11  operations of its restaurants and terms and conditions of employment – also establish that the

12  McDonald's Defendants owe no duty of care to Plaintiffs. *See Hoffnagle v. McDonald's Corp.*,

13  522 N.W.2d 808 (Iowa 1994) (finding no duty of care where franchisee has daily control over

14  operations, operates the business, determines wages, and hires, fires, and disciplines employees).

15          Moreover, to the extent Plaintiffs base their negligence claim on Haynes' use of optional

16  timekeeping or scheduling tools, their claim should be rejected for two additional reasons. *First*,

17  the McDonald's Defendants assume no duty to Plaintiffs simply because they provide business

18  software or services to their employer. Rather, where (as here) a plaintiff cannot show that the

19  software or service provider was a joint employer, in an agency relationship with the employer, or

20  otherwise directly connected to the plaintiff, any attempt to impose liability on the provider fails.

21  *See, e.g., Silfee v. Automated Data Processing, Inc.*, 2015 WL 1137526, at *4 (M.D. Penn. Mar.

22  12, 2015) (Plaintiff "fails to allege any facts to support his contention that ADP, an entity distinct

23  from his employer that was contracted with for the provision of payroll services, had an active

24  role in decision-making on issues relating to wage and compensation decisions"); *Geter v. ADP*

25  *Screening & Selection Servs., Inc.*, 2015 WL 1867041, at *7 (D.N.J. Apr. 23, 2015) (Plaintiff "did

26  not purchase anything from ADP. The allegation that Planned Companies bought an inaccurate

27  consumer report concerning Plaintiff from ADP does not provide Plaintiff with a cause of action

28  against ADP"). *See also, Serino v. Payday Calif., Inc.,* 2010 U.S. App. LEXIS 8697 (9th Cir. Apr.

27, 2010) (rejecting claims against payroll provider because it was not plaintiff's employer);

*Dianda v. PDEI, Inc.*, 377 F. App'x 676 (9th Cir. 2010) (same).

*Second*, no duty of care exists where a franchisee's implementation of a policy or practice is optional. *See, e.g., VanDeMark v. McDonald's Corp.*, 153 N.H. 753, 758-59 (2006) (finding no duty to franchisee's employees where there was no "explicit mandate upon the franchisee to implement" security policies provided by McDonald's). As shown above, Haynes' use of the ISP or e*Restaurant for scheduling, timekeeping and payroll was entirely optional, and the settings could be changed at Haynes' will, without any approval by McDonald's. This defeats any claim that the McDonald's Defendants can be held liable for Haynes' use of the ISP or e*Restaurant.

**E.   Plaintiffs Cannot Prove Their Claims of Conspiracy and Aiding and Abetting.**

The undisputed record shows that Plaintiffs also cannot establish that the McDonald's Defendants conspired with or aided and abetted Haynes in alleged violations of the Labor Code or any derivative violations. Conspiracy requires proof of an agreement or act to violate the law, *Dufour v. Be LLC*, 2010 WL 431972, at *9 (N.D. Cal. Feb. 2, 2010), and aiding and abetting requires "substantial assistance or encouragement" of another's tort, *Chetal v. American Home Mortg.*, 2009 WL 2612312, at *4 (N.D. Cal. Aug. 24, 2009). The only acts Plaintiffs allege in support of these allegations are that the McDonald's Defendants "conspired" to reduce labor costs – which does not violate the law – or pressured Haynes to meet productivity standards and pay franchise fees while maintaining low labor costs – which also does not violate the law. (FAC ¶¶ 126, 129, 230.) These allegations also fail for reasons discussed above regarding joint employer and agency claims – the McDonald's Defendants do not discourage Haynes from paying full wages to crew members, and do not benefit from labor cost savings at Haynes restaurants.[3]

**IV.   CONCLUSION**

For the reasons explained above, there is no genuine issue of material fact as to the claims against the McDonalds Defendants, and they are entitled to summary judgment on all claims.

---

[3] McDonald's Corp. should be dismissed for the additional reason that it has no direct relationship with any franchised entities in the U.S. (Steinhilper Decl. ¶ 4.) McDonald's Corp. has no responsibilities to Haynes, and does not receive any payments or fees from Haynes. (*Id.* ¶ 5.) *See, e.g., Perez v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 5833636 (N.D. Cal. Nov. 15, 2011) (dismissing plaintiffs' claims because they had no relationship with affiliate entity defendants).

1

2     Dated: May 6, 2016                         Respectfully submitted,

3                                                JONES DAY

4

5                                                By:   _/s/ Elizabeth B. McRee_
                                                       Elizabeth B. McRee

6                                                Counsel for Defendants
                                                 MCDONALD'S CORPORATION
7                                                MCDONALD'S USA, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 6, 2016, I electronically filed the foregoing Notice of Motion

3

and Motion for Summary Judgment of Defendants McDonald's USA, LLC and McDonald's

4

Corporation with the Clerk of the Court using CM/ECF, which will automatically serve this filing

5

on all counsel of record in this case.

6

7

8

By:    */s/ Elizabeth B. McRee*

9

Elizabeth B. McRee

10

Counsel for Defendants
MCDONALD'S CORPORATION

11

MCDONALD'S USA, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28