MICHAEL RUBIN (SBN 80618)
BARBARA J. CHISHOLM (SBN 224656)
P. CASEY PITTS (SBN 262463)
MATTHEW J. MURRAY (SBN 271461)
RAPHAEL N. RAJENDRA (SBN 255096)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:   (415) 421-7151
Facsimile:    (415) 362-8064
E-mail:  mrubin@altber.com
          bchisholm@altber.com
          cpitts@altber.com
          mmurray@altber.com
          rrajendra@altber.com

JOSEPH M. SELLERS (*pro hac vice*)
MIRIAM R. NEMETH (*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone:   (202) 408-4600
Facsimile:    (202) 408-4699
E-mail: jsellers@cohenmilstein.com
          mnemeth@cohenmilstein.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – San Francisco

| | |
|---|---|
| GUADALUPE SALAZAR, *et al.*, on behalf of themselves and others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>MCDONALD'S CORP., *et al.*,<br><br>                Defendants. | CASE NO. 3:14-cv-02096-RS<br><br>**DECLARATION OF DAVID M. BRESHEARS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:          December 8, 2016<br>Time:         1:30 P.M.<br>Courtroom:   3<br>Judge:        Hon. Richard Seeborg<br><br>Complaint Filed:   March 12, 2014 |

REDACTED VERSION OF
DOCUMENT SOUGHT TO BE
FILED UNDER SEAL

I, David M. Breshears, hereby declare:

1.     The facts set forth herein are personally known to me, and I have firsthand knowledge of the same.  If called as a witness, I could and would competently testify thereto.

2.     I am a Certified Public Accountant, licensed in the State of California, and Certified in Financial Forensics.  I am currently a partner at Hemming Morse, LLP, CPAs, Forensic and Financial Consultants.  My work in the accounting profession includes experience as an auditor and as a consultant.  My expert qualifications, including my testimony, are described in Exhibit A hereto.

3.     I have consulted on and/or testified in over 200 matters involving wage-and-hour-related disputes, including those arising under the FLSA and the California Labor Code.  These matters have involved allegations of unpaid overtime, off-the-clock work, meal and rest break violations, employment misclassification, time shaving, record keeping violations, and unreimbursed business expenses.

4.     My firm has been compensated for my review and analysis in this matter at my standard hourly rate of $440 per hour.  Others have assisted me in my work, under my supervision and at my direction, and my firm has been compensated for their work at their standard hourly rates.  My firm's compensation on this assignment is not on contingency and does not depend on whether Plaintiffs prevail in this action.

**Assignment**

5.     I have been retained by counsel for the named Plaintiffs and others similarly situated in the matter of *Guadalupe Salazar, et al. v. McDonald's Corp., et al.*  I am informed by Plaintiffs' counsel that Plaintiffs have alleged, among other things, that they and other crew members (1) were not properly compensated for all hours worked and (2) did not receive all required and timely meal periods and rest breaks or proper compensation for those missed or untimely breaks.  I have been asked to review time and payroll records since March 1, 2010 as they relate to these class-wide allegations.  In this declaration I refer to individuals within the Plaintiffs' proposed class as "crew members," "class members" or "employees within the class."

6.     Plaintiffs' counsel has instructed me to assume that the following job positions are not within the class of hourly, non-exempt, non-managerial employees: Cert. Swing Mgr., Floor Supervisor, Mgr. Trainee-Calif., Part Time Certified Swing, Shift Manager Trainee, Store Manager, and Store Mgr Trainee - F.  For purposes of my analysis and this declaration, employees holding these positions are not considered class members.  If the data reflected that a person was within the class for a period of time, and then acquired a job position excluded from the class, my analysis includes data related to that person for the time he or she held a position within the class and excludes data for the time he or she held a position excluded from the class.[1]

## Evidence Considered

7.     In undertaking my assignment, I have considered information from a variety of sources, each of which is of a type that is regularly relied upon by experts in my field.  Those sources are identified throughout this report and are collected in Exhibit B.

8.     I have been provided with time punch data for eight McDonald's restaurants in California[2] in the form of Time Punch Summary Reports (by store pay period) and/or Time Punch

_____

[1] If any additional data is provided detailing positions that do or do not fall within the class definition, these positions can be added into or removed from my analysis without any modification to the methodology discussed herein.

[2] The data is contained in documents HAYNES_000460 – HAYNES_059935 and HAYNES_089171 – HAYNES_113875 (16,554 files, of which 900 were Time Punch Summary Reports, 14,455 were Time Punch Change Approval Reports, and the rest were blank, showed time punch totals only, were Daily Crew Schedule Reports, or were Payroll Labor Exceptions Reports).  The eight restaurants for which this information was provided are:

| Store No. | Date Range of Data |
|---|---|
| 1666 | March 2010 – August 2015 |
| 6593 | March 2010 – mid-September 2015 |
| 7100 | August 2010 – August 2015 (except no data November 2010) |
| 7847 | December 2010 – August 2015 |
| 10235 | September 2010 – August 2015 |
| 11834 | November 2010 – mid-September 2015 |
| 23467 | October 2010 – August 2015 (except no data mid-October – December 2014) |
| 30911 | April 2010 – August 2015 |

It appears that the time records are incomplete, as there are also some days within some pay periods for which there are no Time Punch Summary Reports or Time Punch Change Approval Reports.  If additional data is provided, I can update my analysis accordingly.

Change Approval Reports (by store day) (collectively, the Time Punch Reports), which contain the

following information: ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████. Hours in the Time Punch Summary Reports are

formatted as ██████████████████████████████████████; hours in the

Time Punch Change Approval Reports are formatted only as "████████".

9.    I have also been provided with pay data for these same eight restaurants.

Specifically, I was provided and considered Microsoft Excel files with the bates numbers

HAYNES_059940 and HAYNES_088980; these files include the following information:

███████████████████████████████████████████████████████

█████████████████. These pay data files cover the check dates from March 5, 2010 through

September 9, 2015[3] and appear to include information for ██████ check dates attributable to ██████

unique combinations of home store location and employee name.

10.    I was also provided and considered pay data in the Microsoft Excel file entitled

"COL and PLA Employee Payroll Report 03-01-2010-05-20-2016," which, for the same eight

restaurants, includes the following information: ████████████████████████████

█████████████████████████████████. This pay data file

covers the check dates from March 5, 2010 through May 20, 2016 and appears to include

information for ██████ check dates attributable to ██████ unique employee names.

11.    I have been informed by Plaintiffs' counsel that time punches were used to calculate

an employee's compensable hours, including overtime hours, and that the time punches for a

specific shift were assigned to the date on which that shift started.  My review and analysis of the

time and payroll records are consistent with counsel's description.

12.    The Time Punch Reports include information for ██████ payroll dates attributable

to ██████ unique combinations of store and employee.  The Time Punch Reports include ██████

shifts, recorded on ████████ payroll dates, with recorded hours attributable to ██████ unique

---

[3] It is my understanding from my review of time and payroll records that the standard pay period
was bi-monthly.

combinations of store and employee.  (Of the ███████ payroll dates, ██ contain no recorded hours.)

13.     I have used the employee punch times in the Time Punch Reports[4] to determine, for each unique combination of store and employee and shift, the number of recorded hours punched in per shift, as well as the number and duration, if any, of recorded breaks.[5]

14.     In organizing the time punch data into shifts, I assumed, as discussed above, that Defendants assign all time punches within a shift to the same date, and thus that a new date indicates a new shift.  Additionally, at the instruction of Plaintiffs' counsel, I have assumed a new shift when there was a gap greater than one hour[6] between two instances of an employee's recorded time punched in within a payroll date.[7]

15.     My analysis of the Time Punch Reports currently includes ███████ shifts with recorded hours attributable to ████ employees in the class.

## Miscalculation of Hours and Wages

16.     Based on my comparisons of the time punch data to the payroll data, it appears that there are identifiable unpaid recorded work hours due to errors whereby minutes reported in the "███████" format are incorrectly transcribed from the time records to the payroll company as though they had been reported as ███████.  In other words, recorded work hours represented as "███████" are paid as though they had been recorded as "███████████████," without

---

[4] For store dates with both Time Punch Summary Reports and Time Punch Change Approval Reports, I have relied on the Time Punch Summary Reports for the shift ins and outs as well as the paid break outs and ins and on the Time Punch Change Approval Reports for the job title code. For store dates with only Time Punch Summary Reports, I have assumed the job title code, if any, based on the employee's job title code in surrounding days.

[5] I identified meal and rest periods according to the following method: where the Time Punch Reports reflected that a break was paid, I treated it as a paid rest break; where the reports reflected a break was unpaid, I treated it as an unpaid meal break.

[6] Plaintiffs' counsel directed me to the following opinion letter as one basis for this assumption: California Division of Labor Standards Enforcement Opinion Letter, Dec. 11, 2002, available at http://www.dir.ca.gov/dlse/opinions/2002-12-11.pdf (last visited September 30, 2016) (a "split shift" is "a work schedule which is interrupted by non-paid non-working periods . . . other than bona fide rest or meal periods," and "a 'bona fide' meal period is one that does not exceed one hour (60 minutes) in length.").

[7] Of the ███████ payroll dates with recorded hours, only ████ have more than one shift for the same employee.

Declaration of David M. Breshears in Support of Plaintiffs' Motion for Class Certification
Case No. 3:14-cv-02096-RS

1  properly converting the base-sixty "███████" format to the base-ten "███████████████"

2  format.  For example, where this error occurred, recorded work hours totaling 47 hours and 52

3  minutes in a pay period were paid as ██████ hours rather than ██████ hours.

4      17.    ████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████.

8      18.    Based on my comparison of the time and payroll records provided, it appears that

9  this error affected payroll in at least some pay periods for all the stores.  Of the ██████ employee

10  pay periods I analyzed, at least █████████████ show that this discrepancy occurred with respect to

11  regular hours,[8] which would result in fewer regular hours paid.  I have noted that, at store ██████,

12  approximately ██████ of the employee pay periods contained this conversion error. I have determined

13  that at least ██████ regular hours appear to have been unpaid due to this issue. This same

14  methodology can be applied to overtime and double-time hours as well, to determine any unpaid

15  overtime hours.

16

17                      **Unpaid Overtime**

18      19.    Plaintiffs' counsel has asked me to make the following assumptions:

19          a.   Hours worked up to eight in one workday and up to 40 in any one workweek

20              constitute regular work hours and may be paid at the regular rate.  In this

21              declaration I refer to these hours as "regular hours."

22          b.   Hours worked over eight in one workday and over 40 in any one workweek, as

23              well as the first eight hours worked on the seventh consecutive day of work in

24              any one workweek, constitute overtime hours and must be paid at time-and-one-

25              half of the regular rate.  In this declaration I refer to these hours as "overtime

26

_____

27  [8] This number is likely conservative, as the error may not be noted if there were missing time records in an employee pay period or if the employee pay period could not be traced to the payroll records (e.g., due to the employee working at a store different from her home store location).

28

hours."

      c.   Hours worked over 12 in one workday and over eight on the seventh consecutive day of work in any one workweek constitute double time hours and must be paid at double the regular rate.  In this declaration I refer to these hours as "double-time hours."

20.     To determine regular, overtime, and double-time hours as reflected in the Time Punch Reports, I first summarized, for each employee, the recorded hours clocked in per payroll date, per workweek,[9] and per pay period.  I then compared the recorded work hours per pay period to the hours paid during the pay period in the payroll files.

*Unpaid Overtime Hours as a Result of the Non-24-Hour Work Day*

21.     I have been asked by Plaintiffs' counsel to determine regular, overtime, and double-time hours based on the calendar date on which recorded work hours were actually worked, rather than the payroll date Defendants assigned to these hours when calculating an employee's pay.

22.     As noted above, Plaintiffs' counsel informed me that the time punch and payroll data's reported date reflects the date that a shift started.  My analysis of the time and payroll data confirms that, regardless of the date on which hours were worked during a shift, McDonald's attributed all hours from that shift to the payroll date on which the shift started for purposes of determining the number of hours to pay for that date and the number of hours that should be considered overtime and double time hours.  While the calendar date on which hours are worked is the same as the payroll date for daytime shifts, for shifts worked through midnight (including overnight shifts), the hours worked after midnight are worked on a different calendar date than the payroll date to which they are assigned.

23.     As a result of McDonald's use of the payroll date to determine pay, an employee who worked more than eight hours in a calendar day would not be paid overtime if he did not have over eight hours of work in one or more shifts that started on the same payroll date.  This could occur if an employee worked an overnight shift that started on one day and continued into a second

---

[9] It appears from my review of time and payroll records that ███████████████████████ ██████████.

day, and then started another shift on that second day.  Because the two shifts would have different payroll dates, Defendants would not add the hours from the shifts worked in the same calendar day together to determine if the employee worked over eight hours in a day, so the employee would not receive overtime pay even if he or she worked more than eight hours in one continuous 24-hour period.

24.     For example, the time records reflect that █████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████.

25.     My analysis of the data for those employees who are within the class shows that, if their regular, overtime, and double-time hours had been calculated on a calendar-date basis instead of the date on which their shifts began, (1) an additional ████ of regular hours would be overtime or double-time hours and (2) ██████████████ of the ██████ employees would experience at least one workweek where regular hours would have been recognized and compensated as overtime or double-time hours.  Based on my analysis, this practice resulted in the undercounting of employee overtime or double time hours at all but one of the stores (i.e., ██████), and undercounted the most hours at stores ████████████████████████████.

26.     Further, comparing the methodology Defendants actually used to calculate overtime with the calendar date method demonstrates that far more workweeks would have included overtime under the calendar date method than under Defendants' method.  Based on the ████████

7

workweeks in the data for those employees who are within the class, ███ of those weeks include hours that Defendants considered regular hours but that would be considered overtime or double-time hours if Defendants had looked at all hours worked on a calendar date in calculating overtime.[10]  In contrast, only ███ workweeks included hours that Defendants considered overtime or double-time hours but that would have been considered regular hours using the calendar day method.

27.     A similar analysis can be completed based on any designated standard 24-hour work day, not just a midnight-to-midnight calendar day.

*Other Unpaid Overtime Hours*

28.     Plaintiffs' counsel has informed me, and provided me documentation, of ISP "Labor Laws" settings for six of the eight restaurants,[11] which appear to include certain value parameters for determining when an employee has reached the overtime threshold.  The "Labor Laws" setting for store 30911, which is dated May 1, 2015, reflects a Daily Overtime Threshold of "08:59," and a Weekly Overtime Threshold of "50:00."[12]  I have reviewed the time and payroll records provided for store 30911 for employees within the class.  I found that, with respect to pay periods in which an employee works more than eight but fewer than nine hours on a payroll date, ███████ of the ███ pay periods with overtime do not show any record of overtime hours being calculated or paid to the employee at the overtime rate.  The remaining ███████ of the pay periods that show daily overtime being paid are due to ████████████████████████████████████████ ████████████████████████████████████.

29.     It further appears that, with respect to pay periods at store 30911 in which an employee worked more than 40 but fewer than 50 hours in a week, ███████████ pay periods in which an employee worked more than 40 hours in a week do not show any record of overtime

---

[10] To determine whether, under the calendar-date method, overtime hours would increase for a given employee workweek, I have combined all days within that workweek, including those days that showed an increase in overtime hours and those days that showed a decrease in overtime hours.

[11] HAYNES_088965-088979.

[12] HAYNES_088977-088979.

Declaration of David M. Breshears in Support of Plaintiffs' Motion for Class Certification
Case No. 3:14-cv-02096-RS

hours being calculated or paid to the employee at the overtime rate.  The remaining ███ pay periods that show overtime being paid are due to daily hours in excess of nine hours in a day or an employee working a seventh consecutive day.

**Non-Compliant, Missed, and Late Meal Breaks**

30.     Plaintiffs' counsel has instructed me to assume certain hours during which each restaurant's lobby is closed and has instructed me to identify meal breaks that were recorded during these hours.  Specifically, counsel instructed me to assume the lobby was closed (1) from 8:30 pm to 6:00 am for store 1666, (2) from 9:00 pm to 6:00 am for store 7100, (3) from 8:30 pm to 6:30 am for store 10235, (4) from 8:00 pm to 6:00 am for store 11834, and (5) from 10:30 pm to 5:00 am for store 23467.[13]  In this declaration I refer to these circumstances as "restricted" meal breaks.[14]

31.     Plaintiffs' counsel has instructed me to assume that Defendants are required to provide employees within the class with (1) an uninterrupted meal break for each shift an employee works in excess of five hours, with the meal break beginning before the end of the employee's first five hours of work, and (2) a second meal break for each shift an employee works more than ten hours, with the second meal break beginning before the end of the employee's tenth hour of work.

32.     I have identified the shifts of five hours or more with no recorded meal break, and the shifts of ten hours or more with no recorded second meal break.  In this declaration I refer to these circumstances as involving a "missed" meal break.  I have also identified the shifts where there was no recording of a meal break until after an employee's first five hours of work, and the shifts where there was no recording of a second meal break until after ten hours of work.  In this declaration I refer to these circumstances as involving a "late" meal break.

33.     Plaintiffs' counsel further directed me to assume that an employee is entitled to an extra hour of wages as premium pay for each day in which an employee has at least one meal break

---

[13] A similar analysis can be prepared for any store based on any designated time period should additional information be provided concerning the lobby closures times for any of these stores.

[14] This description, as well as descriptions of "missed," "late," "back-to-back," and "untimely" breaks, are not intended to convey or draw any conclusions about whether or not those criteria meet the legal definition of a violation.

that is restricted, missed, or late, and instructed me to identify any premium wage payment

associated with any restricted, missed, or late meal break that I identified. ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████.

34.     In total, based on my analysis of Time Punch Reports for employees within the

class, I have determined that ████████████ of the ████ employees, including ████████████

████████████,[16] experienced at least one shift in which their meal break was restricted, missed,

or late; and that ████ of the ██████ shifts of five or more hours (i.e., ██████) involved at least

one restricted, missed, or late meal break.

*Restricted Meal Breaks*

35.     With regard to restricted meal breaks, I have determined that ████████████ of the

█████ employees, including █████████████████████, worked a shift in which their

time punch records reflect a meal break that started when the lobby was closed.  Of the ████████

shifts in excess of five hours with no missed meal breaks, I have determined that ████ shifts, or

██████, showed a meal break starting when the lobby was closed.

*Missed Meal Breaks*

36.     Based on my analysis of the Time Punch Reports for employees within the class, I

have determined that (1) ██████████████████████████ shifts in excess of five hours, show at

least one missed meal break; and (2) ███████████████████ employees, including ████████

██████████████████, experienced at least one missed meal break.

37.     With regard to missed first meal breaks, there are ██████ shifts in excess of five

hours.  I have determined that █████████████████ employees, including █████████████

[15] With respect to HAYNES_059940 and HAYNES_088980, a fraction of the check dates—██████
██████████████████████████████████████████████ Similarly, with respect to
"COL and PLA Employee Payroll Report 03-01-2010-05-20-2016," ████████████████████
████████████████████████████.

[16] i.e., ██████████████████████████████.

1   ████████, experienced at least one such missed first meal break, and ████████

2   shifts in excess of five hours showed no recorded meal break.

3       38.   With regard to missed second meal breaks, there are ██ shifts between ten and 12

4   hours long, and ██ shifts longer than 12 hours.  In total, ████████████, showed no

5   recording of a second meal break, and ████████████ employees experienced at least

6   one such missed second meal break.

7                                    *Late Meal Breaks*

8       39.   With regard to late meal breaks, I have determined that ████████ of the

9   ████ employees, including ████████████, worked a shift in which their first

10  meal break began only after five hours of work had been completed, or in which their second meal

11  break began only after ten hours of work had been completed.  Of the ██████ shifts in excess of

12  five hours with no missed meal breaks, I have determined that ████████████, showed a

13  late first or second meal break.

14

15                          **Missed and Untimely Rest Breaks**

16      40.   Plaintiffs' counsel has instructed me to assume that Defendants are required to

17  provide employees within the class one paid rest break of at least ten minutes for shifts between

18  three and a half and six hours long; two paid rest breaks of at least ten minutes each for shifts

19  longer than six and up to 10 hours long; and three paid rest breaks of at least ten minutes each for

20  shifts longer than 10 and up to 14 hours long.  I have determined the number of shifts between

21  three and one-half and six hours long with no recorded rest break; the number of shifts longer than

22  six and up to 10 hours long with no recorded second rest break; and the number of shifts longer

23  than 10 hours with no recorded third rest break for employees who worked more than ten hours in a

24  shift.  In this declaration I refer to these circumstances as "missed" rest breaks.

25      41.   Plaintiffs' counsel has further instructed me to assume that Defendants are required

26  to provide rest breaks in the middle of each work period insofar as practicable.  At counsel's

27  request, I have determined the number of shifts in which a rest break ended within ten minutes of

28  the end of a shift (termed herein "late" rest breaks) or within ten minutes of another meal or rest

1    break (termed herein "back-to-back" rest breaks), as described below.

2        42.    Plaintiffs' counsel further directed me to assume that an employee is entitled to an

3    extra hour of wages as premium pay for each day in which an employee has at least one missed rest

4    break or at least one of an employee's rest breaks is late or back-to-back (together, termed herein

5    an "untimely" rest break).  Plaintiffs' counsel instructed me to identify any premium wage

6    payments associated with any missed or untimely rest breaks that I identified.  ██████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ██████ .

11                              *Missed Rest Breaks*

12       43.    With regard to missed rest breaks, based on my analysis of the Time Punch Reports

13   for employees within the class, I have determined that (1) ████████████████████████

14   shifts in excess of three and one-half hours, showed at least one missed rest break; and (2) ████

15   ████████████████ employees, including ████████████████ , experienced at

16   least one missed rest break.

17       44.    I have identified that, of the ████ shifts between three and one-half and six hours

18   long, ████████████ , showed no record of any rest break at all.  I have also identified ███

19   shifts longer than six hours that showed no record of any rest break at all.

20       45.    I have further identified that, of the ████ shifts longer than six and up to 10 hours

21   long, (1) ████████████ , showed no record of a second rest break, and (2) ████████

22   ████████████ employees, including ████████████████ , experienced at least one of

23   these missed rest breaks.

24       46.    I have further identified that, of the ██ shifts longer than 10 hours, (1) ██ shifts, or

25   ████ , showed no record of a third rest break and (2) ████████████████ employees

26   experienced at least one of these missed rest breaks.

27

28   [17] _____ *See* footnote 15 above.

─────────────────────────────────────────────

Declaration of David M. Breshears in Support of Plaintiffs' Motion for Class Certification
Case No. 3:14-cv-02096-RS

*Untimely Rest Breaks*

47.     With regard to late rest breaks, based on my analysis of the Time Punch Reports for employees within the class, I have identified that (1) ███████████████████ shifts in excess of three and one-half hours with recorded rest breaks, showed a recorded rest break ending less than ten minutes before the end of a shift and that (2) ███████████████ employees, including ████████████████, experienced at least one of these late rest breaks.

48.     With regard to rest breaks recorded "back-to-back" with another meal or rest break, based on my analysis of the Time Punch Reports for employees within the class, I have identified that, of the ███████ shifts of five hours or longer with recorded rest and meal breaks, (1) ████ ███████████, showed a recorded rest break within ten minutes of a meal break, and (2) ████ ████████ employees, including █████████████████, experienced at least one of these rest breaks.  I have also identified that, of the ███████ shifts in excess of six hours with recorded rest breaks, (1) ███████████████, showed a recorded rest break within ten minutes of another rest break, and (2) █████████████ employees, including ████████████ ████████████, experienced at least one of these rest breaks.  Considered together, I have determined that ████████████████ employees, including ███████████████ ████, experienced at least one "back-to-back" rest break.

49.     Considering both "late" and "back-to-back" rest break issues together, I have determined that (1) ███████ shifts had at least one untimely rest break, and (2) ████████████ ████████ employees, including █████████████████, experienced at least one such untimely rest break.

*Missed and Untimely Rest Breaks*

50.     In total, I have determined that █████████████████████ employees, including ████████████████, experienced a shift in which a rest break was missed or untimely.

**Restricted, Missed or Late Meal Breaks or Missed or Untimely Rest Breaks**

51.     For the ███████ employees within the class, I have determined that (1) ████████

13

1 ██████████████) of all shifts longer than three and one-half hours include at least one restricted,

2 missed or late meal break or missed or untimely rest break, and (2) ██████ of employees suffered at

3 least one missed or late meal break or missed or untimely rest break.

5      I declare under penalty of perjury under the law of the State of California that the foregoing

6 is true and correct.  Executed this **30th** day of September 2016 in _Walnut Creek_, California.

8 _David M. Breshears signature_

9      David M. Breshears, CPA/CFF

# HEMMING MORSE, LLP

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

www.hemming.com

## David M. Breshears, CPA/CFF

### Employment & Education

| | |
|---|---|
| 2012 – Present | **Hemming Morse, LLP**<br>*Certified Public Accountants,*<br>*Forensic and Financial Consultants*<br>Partner |
| 1999 – 2011 | **Hemming Morse, Inc.**<br>Director, 2011<br>Manager, 2006-2010<br>Associate<br>Staff Accountant |
| 1998 | **California State University, Chico**<br>B.S.  Accounting |

### Professional & Service Affiliations

- Certified Public Accountant,
  State of California, since 2006

- Certified in Financial Forensics, since 2008

- American Institute of Certified Public Accountants

- California Society of Certified Public Accountants

- Association of Certified Fraud Examiners
  (Associate Member)

page 1 of 6

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

**H E M M I N G
MORSE, LLP**

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# David M. Breshears, CPA/CFF

## Presentations & Seminars

- *"E-Discovery & Electronically Stored Information 101"*
  Beeson Tayer & Bodine, May 2013

- *"How to Collect, Produce, and Use E-Documents:
  A Practical Primer"*
  BASF - Labor & Employment Conference, Yosemite,
  February 2013

- *"Forensic Accounting for Today's Busiest Practice
  Areas"*
  Continuing Education of the Bar-California,
  March 2012

- *"Utilizing Experts in Wage and Hour Litigation"*
  Buchalter Nemer, July 2011

- *"Class Action Employment Litigation"*
  California Socity of Certified Public Accountants-
  State Steering Committee, August 2010

- *Adjunct Professor, Golden Gate University,
  Wage & Hour Damages, Spring 2009, Fall 2009,
  Spring 2010*

## Testimony

*Trial*

- **Honora Keller et al v. The Board of Trustees of
  California State University (2015)**
  Superior Court of the State of California
  County of San Francisco, Case No. CGC-09-490977

- **Amanda Quiles, et al v. Koji's Japan Incorporated,
  et al. (2014)**
  Superior Court of the State of California, County of
  Orange, Case No. 30-2010-00425532-CU-OE-CXC

- **Ming-Hsiang Kao v. Joy Holiday, Joy Express, Inc.,
  et al. (2014)**
  Superior Court of the State of California
  County of San Mateo, Case No. CIV509729

- **Salinas, et al. v. Imperial Irrigation District (2014)**
  Superior Court of the State of California
  City and County of Riverside, Case No. 10017367

- **Amerman v. Gurvinder Musafar (2013)**
  Superior Court of the State of California
  County of Santa Clara, Case No. 112CV226364

- **Michael J. Pexa v. Farmers Group, Inc. (2012)**
  Superior Court of the State of California
  County of Sacramento, Case No. 34-2009-00034950

- **Marina Puchalski and Rajeev Chhibber v. Taco
  Bell Corp. (2012)**
  Superior Court of the State of California
  County of San Diego, Case No. GIC 870429

- **Maria Martinez and Juana Guzman v. Jatco, Inc.
  (2011**)
  Superior Court of the State of California
  County of Alameda, Case No. RG08397316

page 2 of 6

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

**H E M M I N G**
**M O R S E, LLP**

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# David M. Breshears, CPA/CFF

## Testimony continued

### Deposition

- Jamie Steeb v. Overlake Hospital Medical Center (2016)
  Superior Court of the State of Washington
  for King County, Case No. 15-2-16399-0 SEA

- Bernstein, et al. v. Virgin America, Inc. (2016)
  U.S. District Court, Northern District of California
  Case No. 15-CV-02277-JST

- John Hance, et al. v. Super Store Industries (2016)
  Superior Court of the State of California
  County of Stanislaus, Case No. 673904

- Daniel Villalpando v. Exel Direct Inc. (2016)
  U.S. District Court, Northern District of California
  Case No. 3:12-cv-04137-JCS

- Chris Elliott, et al. v. Schlumberger Technology Corporation (2016)
  U.S. District Court, District Court of North Dakota,
  Fargo Division, Civil Action No. 3:13-cv-00079

- Sanchez, et al. v. McDonald's Restaurants of California, Inc. (2015)
  Superior Court of the State of California
  County of Los Angeles, Case No. BC499888

- Betelhem Shiferaw v. Sunrise Senior Living Management, Inc. (2015)
  U.S. District Court, Central District of California
  Case No. 2:13-cv-02171-JAK-PLA

- Honora Keller et al v. The Board of Trustees of California State University (2015)
  Superior Court of the State of California
  County of San Francisco, Case No. CGC-09-490977

- Ming-Hsiang Kao v. Joy Holiday, Joy Express, Inc., et al. (2014)
  Superior Court of the State of California
  County of San Mateo, Case No. CIV509729

- Fraser, et al. v. Patrick O'Connor & Associates, L.P. (2014)
  U.S. District Court, Southern District of Texas
  Case No. 4:11-cv-03890

- Salinas, et al. v. Imperial Irrigation District (2014)
  Superior Court of the State of California
  City and County of Riverside, Case No. 10017367

- Smith, et al. v. Family Video Movie Club, Inc. (2013)
  U.S. District Court, Northern District of Louisiana
  Case No. 1:11-cv-01773

- Lang v. DirecTV, Inc. (2013)
  U.S. District Court, Eastern District of Louisiana
  Case No. 2:10-cv-01085-NJB-SS

- Sabas Arredondo, et al. v. Delano Farms Company, et al. (2013)
  Eastern District of California, Fresno Division
  Case No. 1:09-cv-01247-LJO-DLB

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

**HEMMING MORSE, LLP**

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

www.hemming.com

# David M. Breshears, CPA/CFF

## Testimony continued

### Deposition continued

- **Gabriel Fayerweather v. Comcast Corporation (2012)**
  Superior Court of the State of California
  County of San Diego, Case No. C-08-01470

- **Green v. Konica Minolta Business Solutions U.S.A., Inc. (2012)**
  U.S. District Court, Northern District of Illinois
  Eastern Division, Case No. 11-CV-03745 (N.D. Ill.)

- **Marina Puchalski and Rajeev Chhibber v. Taco Bell Corp. (May 2012)**
  Superior Court of the State of California
  County of San Diego, Case No. GIC 870429

- **Marina Puchalski and Rajeev Chhibber v. Taco Bell Corp. (April 2012)**
  Superior Court of the State of California
  County of San Diego, Case No. GIC 870429

- **Martin Marine v. Interstate Distributor Co. (2012)**
  Superior Court of the State of California
  County of Alameda, Case No. RG073582777

- **Maria Martinez and Juana Guzman v. Jatco, Inc. (2011)**
  Superior Court of the State of California
  County of Alameda, Case No. RG08397316

page 4 of 6

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

**HEMMING MORSE, LLP**

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# David M. Breshears, CPA/CFF

### Selected Case Experience

- Engaged as damage expert by plaintiff, to analyze and quantify; meal and rest period claims, improper distribution of gratuities, and off-the-clock hours, for an upscale restaurant chain.

- Engaged as damage expert by defendant, a farm labor contractor, to evaluate claims related to off-the-clock hours worked and expense reimbursement for small tools for over 20,000 employees.

- Engaged as neutral accounting expert by plaintiff and defendant to calculate potential unpaid hours worked and additional overtime premiums for commission bonuses, for a manufacturing/engineering firm.

- Expert for the plaintiff. Retained to determine the frequency and magnitude of time shaving claims of a mid-size manufacturing firm.

- Provided consulting services to defense counsel in a class-action wage and hour matter, which alleged that hundreds of County employees were paid improper overtime wages under the FLSA. Prepared analyses using hours worked records, compensation data, employee records, and other data to determine the proper calculation of employees' regular rate of pay and related overtime compensation.

- Assisted counsel in preparing a case involving unpaid overtime, meal and rest break violations, and off-the-clock time for an employee of a hotel chain. Reviewed employment history files, time records, and other documents to determine the number of potential violations and to quantify damages.

- Assisted expert for plaintiffs' counsel in a class-action wage and hour matter, which alleged that over 250 small business banking officers were improperly classified as exempt. Reviewed statistical sample of hours worked, salary and commission related earnings, paid time off records, and other data to determine the damages related to unpaid overtime and missed meal breaks.

- Assisted expert for plaintiffs' counsel in a class-action matter against a fortune 500 company, which alleged that a class of several hundred individuals was misclassified as independent contractors in the state of Washington. Prepared analysis of average earnings across all class members and performed comparison to national averages for similarly situated employees and independent businesses. Performed business valuation services to determine economic value of independent contractor assets and to incorporate any discounts that may apply related to the controls and requirements of the customer/employer operating agreement.

- Assisted expert for plaintiffs' counsel in a class-action matter against a Fortune 500 company, which alleged that over 75,000 California employees were required to pool their tips with supervisory employees in direct violation of the California Labor Code.

page 5 of 6

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

**HEMMING MORSE, LLP**

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# David M. Breshears, CPA/CFF

## Selected Experience continued

- Provided consulting services to plaintiffs' counsel in a class-action wage and hour matter, which alleged that hundreds of employees were not paid the proper "living wage" in accordance with the company's contractual obligation. Created a database of hours worked and earnings information from paper and electronic records, and then providing damages estimates based on a variety of assumptions and legal theories.

- Advised counsel on class certification issues by applying economic and statistical approaches to analyze evidence relating to class member variation, if any, and to determine both liability and damages.

- Consulted for Health Provider in a dispute involving a guaranteed maximum price contract for the construction of various structures. Assisted the expert in analyzing construction costs incurred and calculating the amount due to the general contractor.

- Performed statistical and contractual analysis for labor settlement or arbitration purposes, including analysis of pay and benefits, job content, productivity, labor costs, and profitability.

- Consulted clients in their efforts to identify overpayments of construction projects; discover errors and identify unreasonable project charges; identify weaknesses in contractual agreements; reduce risks of fraud, waste, and abuse; and recover payments made in error.

- Prepared financial analyses in connection with assignments involving fraud, contract disputes and lost profits.

- Performed extensive research for a variety of cases, including cases involving fraud, contract disputes, and lost profits.

- Created various databases and/or tested the accuracy of databases created by others in order to assimilate large amounts of information to be presented in a meaningful manner.

- Managed audit engagements from planning to reporting, including delegation and review of staff assignments and control of time and expenses.

- Prepared and examined financial reports including research and analysis of technical accounting issues.

- Analyzed client accounting systems and related controls and developed specific recommendations for improvements.

page 6 of 6

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

**Guadalupe Salazar, et al. v. McDonald's Corp., et al.**
**Exhibit B: Documents Considered**


Class Action Complaint
Class Action - First Amended Complaint
HAYNES_00460 - HAYNES_059935
HAYNES_089171 - HAYNES_113875
HAYNES_059940.xlsx
HAYNES_088980.xlsx
COL AND PLA Employee Payroll Report 03-01-2010-05-20-2016.xlsx
HAYNES_088963-HAYNES_088965
HAYNES_088966-HAYNES_088967
HAYNES_088968-HAYNES_088970
HAYNES_088971-HAYNES_088973
HAYNES_088974-HAYNES_088976
HAYNES_088977-HAYNES_088979