UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE SALAZAR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MCDONALD'S CORP., et al., <br><br> Defendants. | Case No. 14-cv-02096-RS <br><br> **ORDER DENYING MOTION FOR CLASS CERTIFICATION AND GRANTING MOTION TO STRIKE REPRESENTATIVE PAGA CLAIMS** |

**I. INTRODUCTION**

Plaintiffs Guadalupe Salazar, Judith Zarate, and Genoveva Lopez bring suit, on behalf of themselves and a putative class, against McDonald's Corporation and McDonald's USA, LLC ("McDonald's") and the Bobby O. Haynes and Carol R. Haynes Family Limited Partnership ("Haynes") for a variety of alleged labor violations. Plaintiffs are crew members at Haynes-owned, McDonald's franchise restaurants in Oakland, California. Earlier this year, McDonald's moved for summary judgment on the ground that it does not jointly employ Plaintiffs. That motion was granted in part and denied in part on August 16, 2016. The summary judgment order allowed Plaintiffs to proceed with their claims against McDonald's under an ostensible agency theory only. Plaintiffs now move for class certification and McDonald's moves to deny class certification and to strike Plaintiffs' representative claims under the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq*. ("PAGA"). Because the ostensible agency analysis requires individual inquiries into class members' experiences, McDonald's motions are granted and Plaintiffs' motion is denied.

**II. FACTUAL BACKGROUND**

The summary judgment order provides a general overview of the dispute and a more

detailed analysis of the evidentiary record appears in the discussion below. In short, Plaintiffs aver, among other things, that Haynes failed to pay them correct wages, compensate them for the time and expense of uniform cleaning, and provide timely and legally compliant meal and rest breaks. They assert various claims under the California Labor Code and for negligence, violation of PAGA, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*. The summary judgment order concluded that McDonald's is not liable as a joint employer with Haynes, but factual disputes precluded summary judgment on the issue of whether McDonald's might be liable under an ostensible agency theory. Now, Plaintiffs move to certify a class of more than 1,200 hourly, non-exempt, non-managerial workers at eight Haynes-operated McDonald's franchise restaurants in Oakland and San Leandro from March 12, 2010 until the date the class notice is mailed. Plaintiffs recently reached a preliminary settlement with Haynes, so the McDonald's entities are the only remaining defendants.

### III. LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs class actions. To obtain class certification, plaintiffs bear the burden of showing they have met each of subsection (a)'s four requirements and at least one requirement from subsection (b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If all four prerequisites of Rule 23(a) are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Rule 23(b)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(3) permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *see also Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 588 (9th Cir. 2012) ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23."). This "rigorous" analysis applies both to Rule 23(a) and Rule 23(b). *See Comcast*, 133 S. Ct. at 1432.

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. at 1195. If a court concludes that the moving party has met its burden of proof, the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## IV. DISCUSSION

At this point, Plaintiffs may only proceed against McDonald's under a theory of ostensible agency. Thus, as a threshold matter, Plaintiffs must show, under the facts of this case, that such theory is amenable to classwide treatment. McDonald's insists in this instance it is not, particularly because Plaintiffs cannot satisfy Rule 23's commonality and predominance requirements.

### A. Rule 23(a) and (b)(3)

#### 1. Commonality and Predominance

The commonality and predominance requirements call upon courts to give scrutiny to the common and individual questions a case presents. "[M]embers of a proposed class will need to

present evidence that varies from member to member" for an individual question; for a common question "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S Ct. 1036 (2016) (citing 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).  The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id*. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citing 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778 (3d ed. 2005)).

California law controls the issue of whether an ostensible agency relationship exists. *See Mallott & Peterson v. Dir., Office of Workers' Comp. Programs*, 98 F.3d 1170, 1173 n. 2 (9th Cir. 1996). California Civil Code section 2300 provides: "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Civil Code section 2334 further provides: "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." California courts describe "three requirements necessary before recovery may be had against a principal for the act of an ostensible agent.  [(1)] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [(2)] such belief must be generated by some act or neglect of the principal sought to be charged; and [(3)] the third person in relying on the agent's apparent authority must not be guilty of negligence." *Kaplan v. Coldwell Banker Residential Affiliates, Inc*., 59 Cal. App. 4th 741, 747 (1997) (citing *Associated Creditors' Agency v. Davis*, 13 Cal.3d 374, 399 (1975)).    McDonald's argues that individualized inquiries are necessary to establish each element.

### i. Actual Belief

To satisfy the first element, "[t]he person dealing with the agent must do so with belief in

the agent's authority." *Kaplan*, 59 Cal. App. 4th at 747; *see also Associated Creditors' Agency*, 13 Cal. 3d at 399. Thus, Plaintiffs must show that crew members believed Haynes to be an agent of McDonald's. Plaintiffs argue this element is amenable to common proof because California law permits ostensible agency to "be implied from circumstances." *Kaplan*, 59 Cal. App. 4th at 747-48. The plaintiff in *Kaplan*, however, "believed that he was dealing with the [principal]," so the court of appeal there did not necessarily decide that actual belief may be implied. *Id.* Other cases holding that ostensible agency "may be implied from circumstances" appear similarly limited. *See, e.g., Pierson v. Helmerich & Payne Int'l Drilling Co.*, 4 Cal. App. 5th 608, 2016 WL 6216570, at *16 (Cal. App. Oct. 6. 2016)(employees "believed [agent] had the authority to either fire them, or have them fired").

Even interpreting broadly the rule that ostensible agency may be inferred from circumstances, Plaintiffs' factual showing falls short. Plaintiffs say evidence of common circumstances across crew members supports the inference of common beliefs across crew members. *See* Dkt. No. 207 (describing Plaintiffs' plan to prove common belief based on "uniform and standardized documents and processes").[1] They contend that crew members apply for employment either on the McDonald's website or on paper documents with the McDonald's logo. Rajendra Decl. Ex. F at 171:5-172:19; *id.* Ex. C at 33:4-6 & Ex. C-1. Once hired, crew members receive the McDonald's orientation packets welcoming them to McDonald's. *Id.*, Ex. F at 159:20-161:9, F-58. They are trained to perform their jobs using McDonald's-produced videos and training modules. *Id.*, Ex. F at 133:3-17. They receive paychecks that include the McDonald's logo. *Id.*, Exs. F-73-74. They wear the standard McDonald's logoed uniforms and work in stores that use the McDonald's "System," logo, brand, and operational guidelines. *Id.*, Ex. F at 182:11-14, Ex. E-4. A jury, Plaintiffs argue, could conclude that these common circumstances support the classwide inference that crew members believed McDonald's was their

---

[1] McDonald's stand-alone objections to the Rubin Declaration, Dkt. No. 234, are improper under Local Rule 7-3(a); only objections contained within the briefs are considered. The parties raised other evidentiary objections, pursuant to L.R. 7-3(a) and (d). As this order reflects, only admissible evidence is considered. None of the specific objections would alter the ultimate conclusion, so no individual rulings are necessary or appropriate.

employer.[2]

The factual record, however, refutes such conclusion. Crew members did not receive the same orientation materials. *See, e.g.,* Lopez Dep. 103:6-23; Zarate Dep. 51:19-22. Nor did they receive the same job training—all did not watch the training videos, *see, e.g.,* Zarate Dep. 29:2-3, or attend the same orientation sessions, *see id.* As explained in Section IV.A(1)(ii) below, employees received different information regarding the agency relationship from managers and Haynes family members. These differences preclude an inference of common belief among class members. Indeed, the record shows that some class members understand that McDonald's does not employ them, *see, e.g.*, Muñoz Decl., ¶ 12, Pantoja Decl. ¶ 15, Solis Decl. ¶ 6 (Dkt. No. 247-1), Ibañez Decl. ¶ 5, while others do not. *See, e.g.,* Ayala Decl. ¶2; Jackson Decl. ¶2.[3] At bottom, the question of belief turns on an individualized inquiry here. *See Hershkowitz v. Apple,* 301 F.R.D. 460, 471-72 (N.D. Cal. 2014) (denying certification where claim hinged on "customers' subjective intent regarding assent to a contract"); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679 (C.D. Cal. 1999) (denying certification where "action would focus on the 'state of mind' of individual plaintiffs").

### ii. Reasonable (and Non-Negligent) Belief

Plaintiffs must also show that the crew members' subjective beliefs are objectively reasonable and not negligent. *See Kaplan*, at 748 (declining to grant summary judgment because "an ordinary reasonable person might also think that Marsh was an ostensible agent of Coldwell Banker"); *Mejia v. Cmty. Hosp. of San Bernardino*, 99 Cal. App. 4th 1448, 1456-57 (2002)

---

[2] McDonald's argues that uniform workplace standards cannot establish ostensible agency, citing *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 497-98 (2014). The summary judgment order considered this merits argument. *See* Order at 22-23.

[3] Plaintiffs argue that the record only includes four declarations from current crew members who understand McDonalds does not employ them. While several other declarations are from employees who are currently training to become managers or have become managers, they still include testimony regarding those individuals' beliefs at the time they were crew members, and most of them were crew members during the relevant period, which makes them putative class members. *See, e.g.,* Martinez Decl. ¶¶ 4, 6; Willis Decl. ¶¶ 4, 7-8; Ledesma ¶¶ 4, 7; Obil Decl. ¶¶ 4, 14.

(asking whether the principal's conduct "would cause a reasonable person to believe there was an agency relationship"); *see also Hansen v. Horn Rapids O.R.V. Park of the City of Richland*, 85 Wash. App. 424, 429 (1997) ("A person acts with apparent authority when a principal makes objective manifestations to a third party that lead the third party to believe the person is the agent of the principal. The manifestations must have two effects: 'First, they must cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for the principal. Second, they must be such that the claimant's actual, subjective belief is objectively reasonable.').[4]

Plaintiffs fail to show how reasonable belief can be established on a classwide basis. The reasonableness of a party's belief depends upon the information known or available to the party. *See, e.g., J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 404 (2009) (finding plaintiff's belief was not reasonable given facts that plaintiff was "aware" of); *OCM Principal Opportunities Fund, LP v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 864 (2007) ("The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience."); *Id.* at 865 ("Generally, '[a] plaintiff will be denied recovery only if his conduct is manifestly unreasonable in the light of his own intelligence or information.'")

Here, the information that any crew member knew or should have known varies. For example, some crew members are told at or near the time of their hire that they were employees of Haynes and/or that they were not employees of McDonald's. *See, e.g.,* Ibañez Decl. ¶ 7; Willis Decl. ¶ 8; Martinez Decl. ¶ 6; Ledesma ¶ 7. Some Haynes' family members tell new hires that Haynes is their employer during new-hire orientation conducted at Haynes' offices. *See, e.g.*, Willis Decl. ¶ 8; Keaton Decl. ¶ 6. Likewise, some shift managers and general managers tell crew members that the Haynes family owns their restaurant. *See, e.g.,* Hankton at ¶ 16; Sanchez ¶ 7; N.

---

[4] In *Markow v. Rosner,* 3 Cal. App.5th 11027 (2016), the jury was instructed to "resolve the reasonableness of Markow's belief, not on an objective 'reasonable person' standard, but on a subjective standard—that is, the jury had to determine whether, given Markow's own knowledge and experience, his belief was reasonable." *Id.* at 1027. On appeal, however, the court asked whether Markow "knew or should have known." *Id.* at 1041.

Hankton ¶ 9; Gonzalez ¶ 7. Putative class members may have received all, some, or none of this information depending on when they were hired, who at Haynes hired them, and who trained them. *See* Dkt. No. 106 at 23 n. 53("Plaintiff Zarate did not attend any orientation []; Lopez's orientation was in English and not understandable to her []; and Salazar's orientation did not include any statement that McDonald's was not her employer[.]"). Also, some putative class members had constant contact with members of the Haynes family, multiple rounds of hiring, or lengthy terms of employment. *See, e.g.,* Muñoz Decl. ¶¶ 4, 7; Ibañez Decl. ¶ 8, Ledesma Decl. ¶¶ 4, 6.

Moreover, putative class members received, reviewed, and signed different disclosures regarding their employer. The online employment applications, orientation booklets, orientation receipts, acknowledgment forms, wage statements, and tax forms all state that putative class members are employees of an independent McDonald's franchise. McCree Decl. Exs. CC, EE-KK, MM. Some class members received these documents and others did not. *See, e.g.*, Lopez Dep. 103:6-23 (received orientation booklet); Pantoja Decl. ¶ 8 (same); Zarate Dep. 51:19-22 (did not receive orientation booklet); Dkt. No. 106 at 23 n. 53("No [named] plaintiffs recalled receiving or understanding a Labor Code § 2810.5 notice."); Keaton Decl. ¶ 5 ("I provide new crew members with . . . a notice pursuant to Labor Code section 2810.5[.]"). Some class members read these documents, others did not. *See* Dkt. No. 106 at 23:13-16; Jackson Dep. 17:11-22. Some signed these documents, others did not. *See id.* at 23, n. 54 ("no evidence plaintiffs Lopez or Zarate ever signed an orientation receipt"); Salazar Dep. Ex. 11 (Salazar's signed orientation receipt). Courts have distinguished between plaintiffs who "did not see the fine-print disclaimer" and those who "read it a number of times and initialed it each time." *See Markow*, 3 Cal. App.5th at 1043; *see also id.* at 1039 (finding as a matter of law, that no ostensible agency existed where the plaintiff "received, read [], signed, and initialed [] forms that informed him [of the absence of an agency relationship]").

As explained in the summary judgment order, ostensible agency has been found in interactions generally involving non-employees who had isolated or short-term contact with the

1   defendants, which makes sense because third parties must rely "on the appearance of agency
2   arguably because they ha[ve] *no other knowledge* of the actual relationship between the franchisee
3   and the franchisor." Order at 23 (citing *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 752
4   (E.D. Tenn 2012)(emphasis added)). In this context, the record shows that crew members had
5   various types of "other knowledge" of the relationship between Haynes and McDonald's, beyond
6   the "appearance of agency."

### iii. Reliance

Finally, Plaintiffs must show that reliance can be established on a classwide basis. As an initial matter, Plaintiffs argue that they need not prove individualized reliance. The code requires proof that the principal "cause[d] a third person to believe another to be his agent who is not really employed by him" and that the third party "incurred a liability or parted with value, upon the faith thereof." Cal. Civ. Code §§ 2300, 2334. "In this setting, as is the case generally, ostensible authority requires justifiable reliance by a third party." *Snukal v. Flightways Mfg., Inc.*, 23 Cal. 4th 754 (2000); *see also Kaplan*, 59 Cal. App. 4th at 748 ("Liability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury.") (quoted with approval in *Patterson v. Domino's Pizza, LLC*, 60 Cal. App. 4th 474, 494 (2014)); *Preis v. Am. Indem. Co.*, 220 Cal.App.3d 752(1990); *Yanchor v. Kagan*, 22 Cal.App.3d 544, 549 (1971).

Plaintiffs further argue that "reliance is established when the plaintiff 'looks to' the [ostensible principal] for services, rather than to [the ostensible agents]." Opp. 12 (citing *Mejia*, 99 Cal. App. 4th at 1454). They note "reliance need not be proven by direct testimony" and "many courts presume reliance, absent evidence that the plaintiff knew or should have known the [agent] was not an agent of the [principal]." *Id.* This standard is often invoked where a patient seeks to hold a hospital liable for a physician's negligence. *See J.L. v. Children's Inst., Inc*, 177 Cal. App. 4th 388, 405 (2009); *Mejia*, 99 Cal. App. 1448 (ostensible agency doctrine in the context of "physicians working within hospitals"). Even if properly applied here, the record

suggests that class members did not uniformly "look to" McDonald's as their employer. *See, e.g.,* Zarate Dep. 125:5-17 (no interactions with a McDonald's employee); Salazar Dep. 110:18-113:10 (one interaction with a McDonald's employee); Muñoz Decl. ¶ 4 (worked at multiple Haynes-owned restaurants); Ledesma Decl. ¶ 4 (same); Moore Decl. ¶ 4 (worked for Haynes multiple times because they "are always willing to re-hire" her). Moreover, the inquiry requires proof of what each crew member "knew or should have known," which is necessarily individual in this context, as discussed above.[5]

Plaintiffs rely primarily on cases where reliance has been inferred from a "common sense" or "logical explanation" for putative class members' actions. *See, e.g., Cohen v. Trump*, 303 F.R.D. 376, 385 (S.D. Cal. 2014).[6] Such inferences are appropriate "where the behavior of plaintiffs and class members cannot be explained in any way other than reliance upon the defendant's conduct." *Id.* Yet, no such "common sense" or "logical explanation" exists here. The diverse knowledge and expectations that class members bring to the job ensures that the "value" of working at McDonald's differs greatly from one to another. Class members do not "share a common universe of knowledge and expectations." *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004) (finding that common issues would not predominate over individualized issues in a fraud case brought by casino patrons because "individualized reliance issues related to plaintiffs' knowledge, motivations, and expectations bear heavily on the causation analysis"). Classwide circumstantial evidence will not suffice to prove reliance in this case.

Other courts have refused to certify classes in similar ostensible agency cases. For example, in *Schmidt v. Bassett Furniture Industries*, No. 08-c-1035, 2011 WL 67255 (E.D. Wisc.

---

[5] McDonald's insists Plaintiffs must show that each putative class member chose his or her job "because of" the belief that Haynes was McDonald's agent. It notes that the declarants cite different reasons for choosing to work at Haynes-owned, McDonald's franchise restaurants. There is no authority, however, for the specificity of reliance that McDonald's suggests, and other courts have refused to require it. *See, e.g., Miller v. McDonald's Corp.*, 150 Or. App. 274, 285 (1997) (rejecting the argument that customer had to prove she went to the restaurant "because she believed that McDonald's Corporation operated" it).

[6] They also rely on securities fraud cases involving "a failure to disclose" where reliance is presumed, but do not argue that such presumption applies here.

Jan. 10, 2011), the court considered whether customers who contracted to purchase furniture during a liquidation sale conducted at an authorized dealership of defendant could sue defendant under an ostensible agency theory. The court concluded that establishing each putative class member's reasonable belief was "necessarily an individualized inquiry" because it depended on the "background, understanding and expectation," level of "sophisticat[ion]" and awareness of each one. *Id.* at \*5. *See also Cannon v. GunnAllen Fin., Inc.*, No. 3:06-0804, 2008 WL 4279858, at \*9 (M.D. Tenn. Sept. 15, 2008) ("The issues of good faith belief and reliance identified in the second and third prongs of the test, however, are issues that will require individualized proof."); *Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 444 (C.D. Cal. 2012) (theory required individualized proof where court would need to determine "whether any third parties detrimentally relied on such apparent agency").

Plaintiffs rely on three cases in which class certification has been granted in the ostensible agency context: *Ochoa v. McDonald's Corp.*, No. 3:14-cv-02098, 2016 WL 3648550 (N.D. Cal. July 7, 2016) (*Ochoa II*); *Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, 2014 WL 1577465 (N.D. Ohio Apr. 17, 2014); and *Guardian Angel Credit Union v. MetaBank*, 2010 WL 1794713 (D.N.H. May 5, 2010). In *Ochoa II*, unlike here, the court found "no evidence at all indicating that any named plaintiff or putative class member did not believe McDonald's was their employer or that they were unjustified or unreasonable in relying on that belief." *Id.* at \*3. So too in *Guardian*. *Id.* at \*10 ("MetaBank has offered nothing beyond conclusory assertions to suggest that the evidence that bears on Guardian Angel's apparent authority claim will differ substantially from plaintiff to plaintiff."). Moreover, *Guardian* involved bank customers, who would have had fewer and less substantial interactions with the principal and the agent than long-term employees. *Siding* is a summary judgment decision that never analyzed Rule 23. Moreover, the class members there received identical fax advertisements. As with *Guardian*, the circumstances from which agency could be inferred were entirely uniform, unlike here where crew members worked over different terms, trained in different ways with different managers, and reviewed and signed different notices, acknowledgments, and disclosures.

Plaintiffs argue that common evidence and representative testimony can establish liability

and they note that McDonald's may challenge such inferences by contesting the representativeness of Plaintiffs' proffered testimony. In support, they rely on *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) and *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016). In *Tyson*, workers alleged their employer denied them overtime compensation for time required to don and doff protective gear. They sought to introduce a representative sample to estimate the average time needed to don and doff gear to fill an evidentiary gap created by the employer's failure to record adequately donning and doffing time. *Id.* at 1047 ("there were no alternative means for the employees to establish their hours worked"). The court explained, "[i]n a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class." *Id*. at 1046. Yet, here, there is no similar evidentiary gap caused by a record-keeping failure and "representative testimony will not avoid the problem that the inquiry needs to be individualized." *Jimenes v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. Cal. 2006). In *Torres*, plaintiffs alleged that the defendant employer failed to inform them of the availability of certain jobs for which they were eligible. The court found that the existence of a common policy of non-disclosure would drive the resolution of case, even though class members would have to prove their eligibility for the jobs that were not disclosed. It further noted that the employer had "not show[n] that the class as a whole was exposed to 'disparate information from various representatives of the defendant." *Id.* at 1137 (citation omitted). Here, there is no similar "common policy," and McDonald's has pointed to significant evidence of class member exposure to disparate information.

At its core, Plaintiffs' proposal for establishing agency via common inference seeks to prove too much. While there is not a general bar on certification in cases involving ostensible agency, and the theory may well be amenable to common proof under certain circumstances, such is not the case here. On this record, the experiences of class members, many of whom have been long-term employees of the Haynes family, are too varied for it to be appropriate to rely on a common set of documents to infer the reasonable belief, lack of negligence, and reliance of 1,200 crew members.

**B. Rule 23(b)(2)**

While Plaintiffs focus on certification of claims under Rules 23(b)(3), they also seek certification under Rule 23(b)(2). They fail, however, to describe precisely the injunctive relief sought. They acknowledge their preliminary settlement with Haynes is slated to provide injunctive relief, but do not describe how the settlement affects current employment practices. Thus, the scope of requested injunctive relief is unclear, making it impossible to assess the request for injunctive relief and determine whether "the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).

Moreover, Plaintiffs seek relief related to aspects of their employment which the summary judgment order already decided McDonald's does not control. *See* Order at 1 ("McDonalds did not retain or exert direct or indirect control over plaintiffs' hiring, firing, wages, hours, or material working conditions. Nor did McDonald's suffer or permit plaintiffs to work, engage in an actual agency relationship, participate in a conspiracy, or aid and abet the alleged wage and hour violations.") Certification of a (b)(2) class is thus improper.

**C. Representative PAGA Claims**

McDonald's moves to strike Plaintiffs' representative PAGA claim on the ground that a representative action is unmanageable. Rule 12(f) enables courts to strike from the pleadings any "redundant, immaterial, impertinent or scandalous matter." To start, Plaintiffs argue that Rule 12(f) does not permit McDonald's motion. Yet, McDonald's moves to strike references to a PAGA action brought on behalf of "aggrieved employees" and/or "the plaintiff class," which are arguably "immaterial" to the extent a representative PAGA action is unmanageable. Moreover, Plaintiffs exalt form over substance. "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Numerous federal courts in California have struck representative PAGA claims on manageability grounds under Rule 12(f). *See Ortiz v. CVS Caremark Corp.*, No. C–12–05859 EDL, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014), *Brown v. Am. Airlines, Inc.*, No. CV 10–8431–AG (PJWx), 2015 WL 6735217, at *1 (C.D. Cal. Oct. 5, 2015), *Bowers v. First Student, Inc.*, No.

2:14–CV–8866–ODW (Ex), 2015 WL 1862914, at *4 (C.D. Cal. April 23, 2015); *Litty v. Merrill Lynch & Co., Inc.*, No. CV 14–0425 PA (PJWx), 2014 WL 5904904, at *3 (C.D. Cal. Nov. 10, 2014).

Next, Plaintiffs argue that there is no legal basis for striking PAGA claims as unmanageable because Rule 23 does not apply to such claims. Indeed, "the vast majority of courts in this district . . . have held that representative PAGA claims need not be certified under Rule 23 to proceed." *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1135 (N.D. Cal. 2014); *Amey v. Cinemark USA Inc.*, No. 13-05669, 2015 WL 2251504 (N.D. Cal. May 13, 2015) (same). The Ninth Circuit has also declared that "representative PAGA claims do not require any special procedures." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015); *see also Baumann v. Chase Inv. Serv. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014) cert. denied, 135 S.Ct. 870 (2014) ("[A] PAGA suit is fundamentally different than a class action."). Additionally, the California Supreme Court has ruled that PAGA claims do not need to satisfy class action requirements. *See Arias v. Superior Court*, 46 Cal. 4th 969, 981–86 (2009).

Plaintiffs further argue that imposing a manageability requirement, "found nowhere in PAGA itself and apparently not imposed upon the government, would 'obliterate the purpose' of representative PAGA actions." *Zackaria v. Wal-Mart Stores, Inc.*, 142 F.Supp.3d 949, 950 (C.D. Cal. 2015). The purpose of PAGA—which "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state"—was to correct two perceived flaws in California's Labor Code enforcement scheme. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 360, 378–79 (2014). The first flaw was that civil penalties were not available to redress violations of some provisions of the Labor Code. *Id*. at 378. PAGA addressed this problem by providing for civil penalties for most Labor Code violations. The second flaw PAGA addressed was that, even where the Labor Code provided for civil penalties, "there was a shortage of government resources to pursue enforcement." *Id*. at 379. To compensate for the lack of adequate financing of essential labor law enforcement functions, the legislature enacted PAGA to permit aggrieved employees to act as private attorneys general to

collect civil penalties for violations of the Labor Code.

In *Zackaria*, the court declined to hold that individualized liability determinations made a representative PAGA action unmanageable because doing so "would impose a barrier on such actions that the state law enforcement agency does not face when it litigates those cases itself." 142 F.Supp.3d at 959.  The *Zackaria* court noted that "[s]eeking civil penalties on behalf of aggrieved employees may make plaintiff's case difficult to prove, and may require evidence regarding a significant number of individual employees," but nevertheless ruled that "the fact that proving his claim may be difficult or even somewhat burdensome for himself and for defendant does not mean that he cannot bring it at all." *Id*.

Other courts have declined to impose such an absolute rule.  They have stricken or dismissed representative PAGA claims "where the evidence shows that numerous individualized determinations would be necessary to determine whether any class member has been injured." *Amey*, 2015 WL 2251504, at *16; *see also Ortiz*, 2014 WL 1117614, at *3–4; *Litty*, 2014 WL 5904904, at *3; *Bowers*, 2015 WL 1862914, at *4; *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 2:15-CV-02862-ODW, 2015 WL 5680310, at *3 (C.D. Cal. Sept. 25, 2015).  At the same time, they have been careful not to hold that PAGA actions can never be maintained wherever individual assessments are required because "every PAGA action in some ways requires some individualized assessment regarding whether a Labor Code violation has occurred." *Brown*, at *3 (citing *Plaisted v. Dress Barn, Inc*., 2012 WL 4356158, at *2 (C.D. Cal. Sept. 20, 2012)); *see also Ortiz*, at *4 (same).  Instead, they have found, on a case-specific basis, that certain representative actions would be unmanageable.

McDonald's insists that such approach is proper based both on the court's inherent power to manage litigation and on California courts' approach to manageability in the context of representative PAGA claims and, by analogy, representative UCL claims brought before Proposition 64.  Plaintiffs disagree.  First, they argue that the court's inherent powers to "sanction," "impose silence, respect, and decorum," or "rein in abusive conduct" do not extend to the power to strike unmanageable PAGA claims.  Opp. 22 (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 43-44 (1991)).  While "inherent powers must be exercised with restraint and discretion,"

*id.*, they are not necessarily quite as limited as Plaintiffs suggest. *See Holloway v. Best Buy Co., Inc.*, 2010 WL 816630 (N.D. Cal. Mar. 9, 2010) ("[I]t remains unclear whether the court may [] take into account the goals of efficiency and manageability in determining the propriety of class treatment overall, as part of the court's inherent power to control the litigation on its docket.")

Second, Plaintiffs contend that pre- Proposition 64 UCL cases are irrelevant. Before the passage of Proposition 64, which required representative UCL actions to comply with the procedural requirements applicable to class action lawsuits, the California Supreme Court noted that, under certain circumstances, courts could decline to entertain a UCL action "as a representative suit." *Kraus v. Trinity Mgmt.Serv., Inc.*, 23 Cal.4th 116 (2000). In making their determinations regarding the appropriateness of representative status, California courts considered whether defendants' conduct was "sufficiently uniform to allow representative treatment." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 894 (1999) (private attorney general claim under the UCL was properly denied because plaintiff had not shown that defendant's dealerships were "similarly situated as to their likelihood of deception by GMAC's business practices" across the state).[7] Some courts have distinguished these early UCL cases because "unlike claims under the UCL, which require an individualized determination of the particular restitution due to each plaintiff, PAGA claims require only a showing that a Labor Code violation has occurred." *Alcantar v. Hobart Serv.*, 2013 WL 146323 (C.D. Cal. Jan. 14, 2013). Here, however, where Plaintiffs must first establish ostensible agency, the underlying claims require individualized determinations regarding belief and reliance. Courts have also distinguished these early UCL cases because they "address manageability at later stages of the lawsuit." *Amey*, 2015 WL 2251504 at *16; *see also Nelson v. Southern California Gas Company*, 2013 WL 2358670 (May 30, 2013) (unpublished) ("South Bay dismissed the representative UCL claim only after the plaintiff's presentation of evidence at a bench trial revealed the absence of a

---

[7] Several California courts have applied a manageability requirement to representative PAGA claims, relying on the pre-Proposition 64 UCL cases. *See, e.g., Bright v. 99 ₵ Only Stores*, BC415527 (Los Angeles Sup. Ct. Dec. 7, 2011) (striking PAGA representative allegations on manageability grounds, citing *Kraus*).

statewide claim"). Here, the parties have presented a robust evidentiary record in support of their motions regarding class certification, which provides a sufficient basis for assessing the manageability of proving ostensible agency on a classwide basis.

Related to the argument on manageability, McDonald's argues that Plaintiffs fail to identify adequately the "aggrieved individuals." Plaintiffs must provide some "description of the aggrieved employees . . . to give fair notice as to what the scope the PAGA claim is." *Chie v. Reed Elsevier, Inc.*, 2011 WL 3879495, at *4 (N.D. Cal. 2011). While Plaintiffs bring suit on behalf of hourly, non-exempt, non-managerial workers, they offer no easy way to identify those who may actually be aggrieved under the ostensible agency theory. There are more than 1,200 putative class members in this case. As described above, some—but not all—of them were notified explicitly of their employment relationship through orientations, training, and documents. Thus, the "aggrieved employees" are not defined with particularity here. For these reasons, the representative PAGA claims are stricken.

## V. CONCLUSION

McDonald's motion to deny class certification and strike Plaintiffs' representative PAGA claim is granted. Plaintiffs' motion for class certification is denied.

**IT IS SO ORDERED**.

Dated: January 5, 2017

_____
RICHARD SEEBORG
United States District Judge