UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GUADALUPE SALAZAR, et al.,

    Plaintiffs,

    v.

MCDONALD'S CORP., et al.,

    Defendants.

Case No. 14-cv-02096-RS

**ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

# I. INTRODUCTION

Previously, McDonald's moved for summary judgment on the grounds that it was not a joint employer of the named plaintiffs. The order granting in part and denying in part that first summary judgment motion ("prior order" or "Order") found that McDonald's did not directly or indirectly control the terms of plaintiffs' employment, nor did McDonald's suffer or permit plaintiffs to work, or engage in an actual agency relationship with them. Summary judgment was entered as to plaintiffs' joint employer and actual agency theories of liability, leaving as ongoing their ostensible agency theory. Now, McDonald's argues that ostensible agency is not a viable predicate on which to impute liability for plaintiffs' Labor Code claims. On this basis, McDonald's moves for summary judgment a second time. Upon consideration of the specific issue presented here, McDonald's motion is granted. Pursuant to Civil Local Rule 7-1(b), this motion is suitable for disposition without oral argument and the hearing set for March 16, 2017 is hereby vacated.

# II. BACKGROUND[1]

---

[1] As the factual background of this dispute is discussed in the prior order it will not be repeated here.

The prior order evaluated McDonald's joint employer liability under the analytical framework supplied in *Martinez v. Combs*, 49 Cal. 4th 35 (2010).[2] In *Martinez*, the California Supreme Court found that, under the Labor Code, the term "employ" has three alternative definitions: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id*., at 64. The prior order considered McDonald's status under all three tests and determined that McDonald's was not an "employer" under any applicable test. It considered and rejected the argument that the franchise agreement between McDonald's and Haynes, the franchise owner of the restaurants involved, established a generic right to control the terms and conditions of plaintiffs' employment. Nevertheless, it found that, viewing the evidence in the light most favorable to plaintiffs, a jury could reasonably find McDonald's to be a joint employer by virtue of an ostensible agency relationship. In its first motion for summary judgment, McDonald's did not raise the question of whether ostensible agency is a valid predicate for claims under the Labor Code. The prior order thus did not address the issue presented here.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks

---

[2] As noted in the prior order, courts applying California law have not definitively resolved the scope of *Martinez*'s application to claims arising outside of section 1194 of the Labor Code, but nonetheless have applied *Martinez* to such claims. *See Johnson v. Serenity Transp., Inc*., 141 F. Supp. 3d 974, 996 (N.D. Cal. 2015).

1   omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law
2   when the non-moving party fails to make a sufficient showing on an essential element of the case
3   with respect to which he or she bears the burden of proof at trial. *Id*. at 322–23.

4       The non-moving party "must set forth specific facts showing that there is a genuine issue
5   for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly
6   supported motion for summary judgment simply by alleging some factual dispute between the
7   parties. To preclude the entry of summary judgment, the non-moving party must bring forth
8   material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law."
9   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or
10  unnecessary will not be counted." *Id.* The opposing party "must do more than simply show that
11  there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*
12  *Radio*, 475 U.S. 574, 588 (1986).

13      The court must draw all reasonable inferences in favor of the non-moving party, including
14  questions of credibility and of the weight to be accorded particular evidence. *Masson v. New*
15  *Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475
16  U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set
17  forth by the nonmoving party, coupled with undisputed background or contextual facts, are such
18  that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W.*
19  *Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment
20  will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a
21  reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.
22  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
23  non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

24                          **IV. DISCUSSION**

25  **A. Labor Code**

26      McDonald's argues that it cannot be held liable for violations of the California Labor Code
27  because it does not fall within the statutory definition of an "employer." For purposes of Labor

Code violations, the Industrial Welfare Commission's ("IWC") wage orders "define the employment relationship, and thus who may be liable." *Martinez*, 49 Cal.4th at 52; *see also* Department of Labor Standards Enforcement ("DLSE") Op. Ltr. (June 18, 2002) ("The only definition of the term employer . . . is found . . . in the various orders of the [IWC] which govern the payment of wages, hours of work, and working conditions of employees in every industry and occupation in California."). IWC Wage Order 5-2001 provides that to "employ" is to "engage, suffer, or permit to work," *id*. § 2(E), and defines an "employer" as one who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." *Id*. § 2(H). The prior order considered these various tests and concluded McDonald's was not liable under any one.

Plaintiffs argue that the wage order permits a finding of liability for Labor Code violations under an ostensible agency theory because it includes the phrase "through an agent." *Id*. § 2(H). Read in context, however, that phrase is explicitly limited. The wage order restricts the definition of an "employer" to one who, through an agent, "employs or exercises control over" the workplace environment. *Id.* Because plaintiffs' interpretation would render this added limitation meaningless, it must be rejected. *See Boise Cascade Corp. v. U.S. E.P.A*., 942 F.2d 1427, 1432 (9th Cir. 1991) (courts must "interpret [a] statut[e] as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous"). As Defendants note, the IWC is presumed to have drafted its definition of "employer" against the backdrop of existing law. The principles of ostensible agency were well-established and codified in California's civil code when the IWC authored the definition at issue. Therefore, the IWC's decision to limit the scope of agency liability in the context of the Labor Code must be credited.

Moreover, plaintiffs identify no legal authority in support of their position.[3] Instead, they

---

[3] They note that ostensible agency was deemed a valid predicate for liability under the Labor Code in *Ochoa v. McDonald's Corp*., 133 F. Supp.3d 1228, 1239 (N.D. Cal. 2015), but that decision provided no legal analysis on the issue.

rely on the general principle that ostensible agency is a full form of agency under California law. They claim that the rules of principal-agent liability "sweep across the civil law," such that "whatever the context, the rule remains that an agent acting within his ostensible authority binds his principal." *Pasadena Medi-Ctr. Assocs. v. Super. Ct.,* 9 Cal.3d 773, 781 (1973).  In *Pasadena*, however, the defendants fell within the scope of the underlying service statute because actual notice had been provided to them.  Moreover, there, neither party argued that there was an inconsistency between the underlying statutes and those codifying the principles of ostensible agency.

While plaintiffs identify no specific guidance on the application of ostensible agency principles where those principles could be interpreted as inconsistent with an implementing order, basic rules of statutory interpretation provide assistance.[4]  First, it is well-established that "when a general and particular provision are inconsistent, the latter is paramount to the former."  Cal. Civ. Proc. § 1859; *see also United States v. Soberanes*, 318 F.3d 959, 963 (9th Cir. 2003) (noting the "fundamental canon of statutory interpretation [which] holds that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs"). The IWC has provided a specific definition of "employer" which is inconsistent with the general provisions of California law codifying ostensible agency.  Accordingly, the IWC's definition takes precedence.  Additionally, another "familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).  The wage order includes the "through an agent" language in the control-based test but not in the others.  Plaintiffs argue that only one of the three disjunctive definitions of "employer" is based on control.  That definition, however, is the only one that includes the "through an agent" language.

---

[4] The dearth of relevant case law is not surprising given the highly unusual application of ostensible agency in this case.  As explained in the prior order, in the franchising context, ostensible agency has been found in interactions generally involving non-employees who had isolated or short-term contact with the defendants. *See* Order at 23. (citing cases).

In the end, plaintiffs resort to policy arguments.  They insist that adopting their interpretation would advance the purpose of the Wage Order, but their arguments fall short.  While courts are required to construe wage statutes broadly in favor of employees, "this principle does not provide [courts] with the authority to rewrite applicable legislation." *Soto v. Motel 6 Operating, L.P.*, 4 Cal.App.5th 385, 393 (2016).  "The rules of statutory construction provide that [u]nder the guise of construction, a court should not rewrite the law, add to it what has been omitted, omit from it what has been inserted, give it an effect beyond that gathered from the plain and direct import of the terms used, or read into it an exception, qualification, or modification that will nullify a clear provision or materially affect its operation so as to make it conform to a presumed intention not expressed or otherwise apparent in the law." *Id*. (internal citations omitted).  To ignore the IWC's decision to limit the definition of "employer" to those who, through an agent, control workplace conditions would be to rewrite the law.  Moreover, the factual predicate of plaintiffs' policy argument is that McDonald's can remedy the alleged Labor Code violations, but that argument was previously rejected.  In light of the plain language of the wage order and relevant principles of statutory interpretation, plaintiffs' efforts to impose liability on McDonald's for Labor Code violations based on ostensible agency principles must be rejected.

**B. Remaining Claims**

Plaintiffs' UCL, PAGA, and declaratory relief claims are derivative of their Labor Code claims and thus judgment will be entered in McDonald's favor on those claims.[5]  In light of the above analysis, McDonald's alternative arguments related to those claims need not be reached.

## V. CONCLUSION

McDonald's motion is granted as to all claims based on Labor Code violations.  Judgment is thus entered in McDonald's favor as to all remaining claims.

---

[5] Plaintiffs' UCL claim includes one stray allegation that McDonald's "conceal[ed] from workers material information concerning Defendants' joint employer status."  Comp. ¶ 229.  While this allegation is not based on a violation of the Labor Code, judgment in McDonald's favor is proper in light of the prior order's finding that McDonald's is not a joint employer.

**IT IS SO ORDERED**.

Dated: March 10, 2017

_____
RICHARD SEEBORG
United States District Judge