MICHAEL RUBIN (SBN 80618)
BARBARA J. CHISHOLM (SBN 224656)
P. CASEY PITTS (SBN 262463)
MATTHEW J. MURRAY (SBN 271461)
RAPHAEL N. RAJENDRA (SBN 255096)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail:  mrubin@altber.com
         bchisholm@altber.com
         cpitts@altber.com
         mmurray@altber.com
         rrajendra@altber.com

JOSEPH M. SELLERS (*pro hac vice*)
MIRIAM R. NEMETH (*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
E-mail:  jsellers@cohenmilstein.com
         mnemeth@cohenmilstein.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – San Francisco

| | |
|---|---|
| GUADALUPE SALAZAR, *et al.*, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MCDONALD'S CORP., *et al.*,<br><br>Defendants. | CASE NO. 3:14-cv-02096-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:           September 15, 2017<br>Time:           1:30 p.m.<br>Courtroom:    3<br>Judge:          Hon. Richard Seeborg<br><br>Complaint Filed:  March 12, 2014<br>Trial Date:        None set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................iii

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT
APPROVAL ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I. FACTUAL BACKGROUND ................................................................................ 3

    A. Litigation History ........................................................................................ 3

    B. Settlement ................................................................................................... 5

    C. Preliminary Approval, Class Notice, and Claims Process ...........................7

II. ARGUMENT ....................................................................................................... 8

    A. Final Approval of the Settlement Is Appropriate ........................................ 8

        1. The Settlement Is Beneficial to Class Members................................9

        2. The Risks and Delay of Further Litigation Support Approval ....................... 11

        3. The Substantial Discovery Completed and the Stage of the Proceedings
           Support Approval ....................................................................... 11

        4. The Lack of Opposition by the Class Supports Approval.............................. 12

        5. The Experience and Views of Class Counsel Support Approval ................... 12

        6. The *Bluetooth* Factors Support Approval........................................ 13

    B. The Requested Named Plaintiff Service Awards Should Be Approved.................... 14

        1. Named Plaintiffs Took Significant Actions That Benefitted the Class as a
           Whole, and Expended Substantial Time Assisting with the Successful
           Prosecution of the Lawsuit and Negotiation of the Settlement...................... 14

        2. The Broader Release Accepted by the Plaintiffs Supports Their Request for
           Service Awards...........................................................................15

        3. The Risks Plaintiffs Took Support Their Request for Service Awards ........... 16

        4. The Reasonableness of Plaintiffs' Request Favors Granting Service Awards . 17

        5. Plaintiffs Should Be Awarded Service Payments to Encourage Private
           Attorneys General to Enforce Important Remedial Statutes........................... 18

1

C. The Claims Administrator Should Be Ordered To Provide Class Counsel with
Individual Settlement Class Members' Payment Amounts Before Distribution ......... 19

III. CONCLUSION ................................................................................................................. 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Federal Court Cases**

3

*Boyd v. Bechtel Corp.*,
    485 F.Supp. 610 (N.D. Cal. 1979) ...................................................................................9

4

*Bredbenner v. Liberty Travel, Inc.*,
    No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .....................................16

5

6

*Chavez v. PVH Corp.*,
    No. 13-CV-01797-LHK, 2015 WL 9258144 (N.D. Cal. Dec. 18, 2015).........................15, 18

7

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................... 8, 9, 10

8

9

*Connolly v. Weight Watchers N. Am. Inc.*,
    No 14-CV-01983 THE, 2014 WL 3611143 (N.D. Cal. July 21, 2014) ..................................16

10

*Dent v. ITC Serv. Grp., Inc.*,
    No. 12-CV-0009 JCM, 2013 WL 5437331 (D. Nev. Sept. 27, 2013) ....................................16

11

12

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980).........................................................................................9

13

*Garner v. State Farm Mutual Auto. Insurance Co.*,
    No. CV 08 1365 CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................18

14

15

*Glass v. UBS Fin. Servs., Inc.*,
    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ....................................18

16

*Graham v. Overland Solutions, Inc.*,
    No. 10-CV-0672 BEN, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) .................................18

17

18

*Guippone v. BH S&B Holdings, LL.*,
    No. 09-CV-01029 CM, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011)...........................16, 17

19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .....................................................................................2, 9

20

21

*Harris v. Vector Marketing Corp.*,
    No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ......................................18

22

*Hopson v. Hanesbrands, Inc.*,
    No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ....................................19

23

24

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)...............................................................................10

25

*In re Bluetooth Headset Products Liability Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................................13

26

27

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
    No. C-10-02124 SI, 2014 WL 186375 (N.D. Cal. Jan. 16, 2014).......................................18

28

*In re High-Tech Emp. Litig.*,
  11-CV-02509 LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)...................................16, 18

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ....................................................................................17, 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ....................................................................................18, 19

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .............................................................................................12

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003)..............................................................................10

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .......................................................................................2, 10

*Lopez v. Bank of Am., N.A.*,
  No. 10-CV-01207-JST, 2015 WL 5064085 (N.D. Cal. Aug. 27, 2015) ...............................18

*Nat'l Rural Telecomm. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................11, 12

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .........................................................................................8, 9

*Parks v. Eastwood Ins. Servs., Inc.*,
  235 F. Supp. 2d 1082 (C.D. Cal. 2002)............................................................................20

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .............................................................................14, 16, 19

*Sauby v. City of Fargo*,
  No. 3:07-CV-10 RRE, 2009 WL 2168942 (D.N. Dakota, Jul. 16, 2009) .............................19

*Smith v. Am. Greetings Crop.*,
  No. 14-CV-02577-JST, 2016 WL 2909429 (N.D. Cal. May 19, 2016)....................14, 15, 18

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................9, 14, 17, 18

*Thornton v. East Texas Motor Freight*,
  497 F.2d 416 (6th Cir. 1974) ...........................................................................................19

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................................18

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) ..................................................................................9, 11

*Wade v. Kroger Co.*,
  No. 3:01-CV-699-R, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008) ...................................16

*Willner v. Manpower Inc.*,
  No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 20, 2015) ................................15

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)................................14, 19

**Federal Rules and Regulations**

Fed. R. Civ. P. 23(e).............................................................................................2, 4, 8

Fed. R. Civ. P. 23(g) ................................................................................................20

**Additional Authorities**

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to
Named Plaintiffs in Employment Discrimination Class Actions*
   10 Emp. Rts. & Emp. Pol'y J. 395 (2006)................................................................17

Elisabeth M. Sperle, *Here Today, Possibly Gone Tomorrow: An Examination of
Incentive Awards and Conflicts of Interest in Class Action Litigation*
   23 Geo. J. Legal Ethics 873 (2010) ......................................................................19

## PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE that on September 15, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Richard Seeborg, plaintiffs Guadalupe Salazar, Genoveva Lopez, and Judith Zarate will, and hereby do, move this Court to grant final approval to the proposed class action settlement between plaintiffs and defendant the Bobby O. Haynes, Sr. and Carole R. Haynes Family Limited Partnership ("Haynes"); to award named plaintiff service awards of $1,500 to each of the three named plaintiffs; and to order the claims administrator to provide class counsel with settlement class members' individualized settlement payment amounts in advance of the claims administrator's distribution of settlement payments.

This motion is made on the grounds that the settlement—to which no objections or opt-outs have been filed—is fair, reasonable, and adequate; that the named plaintiff service awards, which are less than the amount deemed presumptively reasonable by courts in this Circuit, are more than justified by the substantial time and efforts each named plaintiff expended in this litigation, the significant risks to current and future employment the named plaintiffs shouldered by stepping forward on behalf of their low-income current and former coworkers, and the significant benefits the named plaintiffs have achieved for those coworkers through this settlement; and that, as court-appointed counsel for the settlement class, class counsel has a right and obligation to review settlement class members' individual settlement payments in advance of distribution.

This motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; the supporting declarations of plaintiffs Guadalupe Salazar, Genoveva Lopez, and Judith Zarate, and the claims administrator's representative, Melissa E. Baldwin; the executed settlement agreement (Dkt. 278-1); the Court record in this action; all matters of which the Court may take notice; and such argument as the Court permits.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      Plaintiffs request final approval of their proposed class action settlement with defendant

3   Bobby O. Haynes, Sr. and Carole R. Haynes Family Limited Partnership ("Haynes"). *See* Dkt.

4   278-1 (executed settlement agreement). This Court has already concluded that the settlement "has

5   no obvious defects and falls within the range of possible approval as fair, adequate, and

6   reasonable." Dkt. 290 at 3. The class has received notice of the settlement, and no objections, opt-

7   outs, or other new facts justifying any change in this Court's conclusion have emerged from the

8   notice process. The Court should accordingly confirm that the settlement merits final approval.

9      As this Court has already recognized, the settlement is the product of lengthy, arms-length

10  negotiations following extensive litigation, substantial discovery, and numerous in-person

11  mediation sessions conducted by Magistrate Judge Jacqueline Scott Corley. *Id.* Plaintiffs and class

12  counsel believe this settlement is fair, adequate, and well within the range of reasonableness,

13  particularly given Haynes' current financial condition. *See Hanlon v. Chrysler Corp.*, 150 F.3d

14  1011, 1026 (9th Cir. 1998); *Lane v. Facebook, Inc.*, 696 F.3d 811, 823-24 (9th Cir. 2012) (taking

15  defendant's financial condition into account in determining reasonableness). The settlement

16  provides class members with significant injunctive relief and creates a $235,000 gross settlement

17  fund, of which at least $183,000 will be distributed to class members. *See* Dkt. 278-1 ¶¶31-32.

18  The settlement will afford partial, substantial, and immediate relief to current and former crew

19  members at the Haynes-franchised McDonald's restaurants, while plaintiffs and their counsel will

20  continue to pursue complete relief from the McDonald's defendants on appeal. Class members

21  have received notice of the terms of the proposed settlement pursuant to this Court's preliminary

22  approval order, Dkt. 290, and no class member has objected to its terms or opted out. Decl. of

23  Melissa E. Baldwin ("Baldwin Decl.") ¶¶10-15. Because the Settlement is "fair, reasonable, and

24  adequate," final approval should be granted. Fed. R. Civ. P. 23(e)(2).

25      The Court should also award service awards of $1,500 to each of the named plaintiffs.

26  These awards are more than justified by the time and effort expended by the named plaintiffs in

27  achieving significant benefits to the class through this settlement, the significant risks plaintiffs

28  took in bringing and maintaining this action, the public interest in encouraging individuals like the

named plaintiffs to act as private attorneys general in order to vindicate the rights of their low-income and vulnerable current and former coworkers, and the significantly broader release of claims the named plaintiffs agreed to accept as part of the settlement.

Finally, the Court should confirm that, as court-appointed counsel for each member of the settlement class, class counsel has a right and obligation to review the amount of each settlement class member's individual settlement payment in advance of the claims administrator's distribution of those payments.  Plaintiffs request this relief because Haynes' counsel, without justification, has refused to authorize the claims administrator to provide this information to class counsel.

## I. FACTUAL BACKGROUND

### A. Litigation History

Plaintiffs brought this wage-and-hour lawsuit on behalf of current and former McDonald's employees at eight Bay Area restaurants operated by Haynes (including related Haynes family entities) under franchise agreements with defendant McDonald's USA, LLC.  Plaintiffs filed their initial Complaint on March 12, 2014 and their First Amended Complaint on November 7, 2014, alleging that Haynes and McDonald's are jointly and severally liable for a number of California Labor Code violations.  *See* Dkts. 1-2, 34.  The complaints asserted 12 class claims for relief that challenged a series of common policies and practices that resulted in defendants' systematic underpayment of class members, including: (1) failure to pay all earned wages because of a recurring error in converting employee time punch data to payroll data; (2) failure to pay daily overtime to all class members at certain restaurants and to those class members at all restaurants who work overnight shifts, as a result of legally incorrect parameters programmed into defendants' automated timekeeping and payroll system; (3) failure to provide meal periods and rest breaks in the time and manner required by California law and failure to ever pay missed meal period or rest break premium wages; (4) failure to reimburse crew members for the time and money needed to maintain their McDonald's uniforms; and (5) failure to provide wage statements that accurately list all wages earned and that identify McDonald's as an employer.  *Id.*  Plaintiffs' lawsuit also raised the overarching issue of whether McDonald's is a joint employer or otherwise liable for the relief requested under California law.  *See id.*  Plaintiffs sought damages and injunctive relief.  *Id.*  The

1   operative complaint separately asserted an individual retaliation claim on behalf of plaintiff

2   Salazar.  Dkt. 34 ¶¶62-63, 235-240.

3       Following the filing of plaintiffs' lawsuit, the parties engaged in extensive discovery—

4   including over a dozen depositions—concerning the merits of plaintiffs' claims, class certification

5   issues, and defendants' liability under various legal theories.  Decl. of Michael Rubin in Support of

6   Pls' Mot. for Attorneys' Fees ("Rubin Decl."), Dkt. 293, ¶12.  Each named plaintiff responded to

7   extensive document requests and interrogatories and sat for a day-long deposition.  Decl. of

8   Guadalupe Salazar in Support of Mot. for Final Approval ("Salazar Decl.") ¶¶3c, 3d; Decl. of

9   Genoveva Lopez in Support of Mot. for Final Approval ("Lopez Decl.") ¶¶3c, 3d; Decl. of Judith

10  Zarate in Support of Mot. for Final Approval ("Zarate Decl.") ¶¶3c, 3d.  Since this case was filed in

11  March 2014, defendants have produced hundreds of thousands of pages of documents, including

12  payroll and time records for the purported class.  Rubin Decl. ¶12.  The parties also litigated

13  multiple discovery disputes.  *Id.*  Plaintiffs retained experts to analyze Haynes' extensive pay and

14  time punch records, to analyze the McDonald's defendants' relationship with Haynes and the

15  prospective class members, and to analyze Haynes' confidential financial records.  *Id.*

16      As part of this litigation, the parties engaged in extensive motions practice.  *Id.* ¶13.  The

17  McDonald's defendants filed a motion for summary judgment on May 6, 2016, which the Court

18  granted in part and denied in part on August 16, 2016.  Dkts. 87, 193.  On September 23, 2016, the

19  McDonald's defendants filed a motion to deny class certification and strike plaintiffs'

20  representative California Labor Code Private Attorneys General Act ("PAGA") claims, and on

21  September 30, 2016, plaintiffs filed a motion for class certification.  Dkts. 199, 206.  On January 5,

22  2017, the Court granted the McDonald's defendants' motion to deny class certification and strike

23  plaintiffs' PAGA claims against McDonald's, and denied plaintiffs' motion for class certification

24  of claims against McDonald's.  Dkt. 265.  On January 31, 2017, the McDonald's defendants filed a

25  second motion for summary judgment, which the Court granted on March 10, 2017.  Dkts. 267,

26  273.[1]

27

28  _____

[1] Plaintiffs are pursuing an appeal of the Court's orders denying class certification, striking
plaintiffs' PAGA claims against the McDonald's Defendants, and granting summary judgment to
the McDonald's Defendants.  *See* Dkt. 286 (Revised Notice of Appeal).

**B.      Settlement**

The settlement agreement here was reached after lengthy settlement negotiations between plaintiffs and Haynes.  The parties first participated in a mediation session under the direction of Magistrate Judge Jacqueline Scott Corley in the fall of 2015, which included the McDonald's defendants and two other franchisees who were sued jointly with McDonald's in other lawsuits. Rubin Decl. ¶14.   Although the mediation was unsuccessful, plaintiffs and Haynes continued to discuss settlement, including by participating in a separate all-day mediation session attended by Haynes and all three named plaintiffs.  *Id*; Salazar Decl. ¶3h; Lopez Decl. ¶3h; Zarate Decl. ¶3h. After Haynes provided confidential financial information to plaintiffs that plaintiffs' counsel reviewed with the assistance of a forensic accountant, plaintiffs and Haynes participated in yet another, all-day mediation session under Magistrate Judge Corley's direction.  Rubin Decl. ¶14.  At that mediation, taking into account Haynes' financial condition and after Haynes agreed to provide the injunctive relief that it was capable of providing, plaintiffs and Haynes were able to reach a mutually agreeable settlement.  *Id.*  The parties memorialized the settlement in a short written memorandum of understanding signed on March 15, 2016, after the all-day mediation session.  *Id.*[2] Pursuant to that MOU, the parties then worked to draft the full settlement agreement.  *Id.*; *see* Dkt. 278-1 (executed settlement agreement).

The settlement establishes a non-reversionary $235,000 fund that will be distributed according to a Plan of Allocation (Exhibit 3 to the agreement).  Subject to Court approval, payments will include: (1) a minimum of $183,000 for distribution to settlement class members, (2) $7,500 to California's Labor and Workforce Development Agency ("LWDA") pursuant to PAGA; (3) $1,500 as "service fees" to each of the three named plaintiffs who have, *inter alia*, submitted declarations, responded to discovery, been deposed at length, and participated in mediation sessions; (4) up to $10,000 for plaintiffs' counsel's litigation expenses; and (5) up to $30,000 for plaintiffs' counsel's statutory attorneys' fees.  *See id.* ¶¶31-32.  Payments to class members will be based primarily upon the number of weeks each class member worked during the class period

---

[2] Named plaintiff Guadalupe Salazar and Haynes also reached a separate settlement agreement resolving Salazar's individual retaliation claim against Haynes.  *See* Dkt. 277 at 3 n.2; Decl. of Michael Rubin in Support of Motion for Preliminary Approval, Dkt. 278, ¶6.

(March 12, 2010 to March 31, 2016).  *Id.* ¶¶1(h), 1(j), 38 & Ex. 3.  The $2,500 employee portion of the PAGA penalty payment will be distributed on a pro rata basis for each week worked after March 12, 2013 (the start of the PAGA limitations period).  *Id.* ¶¶1(u), 31, 38 & Ex. 3.  Any payments to LWDA, service fees to named plaintiffs, or payments for attorneys' fees and costs that are reduced by the Court will be added to the amount available for distribution to the settlement class.  *Id.* ¶¶35-36.  Class members who do not receive notice of the settlement before the opt-out deadline are not covered by the Settlement and will not release any claims.  *Id.* ¶1(bb).

Haynes is required to fully fund the settlement within 10 days after final approval by depositing the full settlement amount into a jointly controlled interest-bearing escrow account; within seven days of the effective date of this settlement, the funds will be transferred to a qualified settlement fund established by the claims administrator, RG/2 Claims Administration LLC.  *Id.* ¶¶28-29.  The claims administrator will distribute the monies from the qualified settlement fund to class members within 30 days after the effective date.  *Id.* ¶32.  Any amounts remaining uncashed 90 days after the distribution date will be redistributed among all other class members in proportion to their initial settlement shares.  *Id.* ¶¶33, 42.  If the total amount of remaining funds after redistributions does not exceed $10,000, these funds will be donated as *cy pres* to Bay Area Legal Aid.  *Id.* ¶42.  Separate and apart from these amounts, Haynes will also pay the claims administrator for all costs of class notice and administration.  *Id.* ¶¶1(f), 37.

In addition to the monetary payments, the settlement provides for the following injunctive relief, which took effect 10 days after the Court's preliminary approval of the settlement and which will be made part of a court-enforceable Consent Decree upon the effective date of the settlement:

    a.   Haynes shall pay overtime premiums to any Plaintiff, Class Member, or future hourly employee who works more than eight hours in any designated workday (such designation to be made in advance in writing to the affected employee(s)) or if no workday is so designated, in any 24-hour period.

    b.   Haynes shall review all time and payroll records at least once at the end of each pay period, either manually or through re-programming of its timekeeping and payroll software, and shall pay an additional one hour's wages to each Plaintiff, Class Member, or future hourly employee for each day during that pay period on which the time records (as may be adjusted in accordance with existing policy, upon approval of the affected employee and a representative of Haynes) reflect that such Plaintiff, Class Member, or future hourly employee was not provided all full and timely 30-minute meal periods as required by California law, and for each day during that pay period on which the time records reflect that such Plaintiff, Class Member, or future

hourly employee was not provided all full and timely 10-minute paid rest breaks as required by California law. For purposes of this paragraph, a first meal break is required for all shifts longer than five hours and is not timely if the records reflect that it began more than five hours after the beginning of a shift, and a second meal break is required for all shifts longer than 10 hours and is not timely if the records reflect that it began more than 10 hours after the beginning of a shift. For purposes of this paragraph, a rest break is not timely if records reflect that it began or ended within 15 or fewer minutes of the beginning or end of a shift, work period, meal period, or another rest break. For purposes of this paragraph, an early or late meal period or rest break (including a meal period or rest break that is defined as not timely elsewhere in this paragraph) is deemed timely if the Plaintiff, Class Member, or future hourly employee acknowledges in writing prior to the close of the current pay period that he or she voluntarily requested to take such break early or late.

c.  Haynes shall provide wage statements to Plaintiffs, Class Members, and future hourly employees that separately record regular hours and overtime hours each pay period, the rate of pay, premium wages for missed, untimely, or short meal periods and rest breaks, and any deductions taken from that pay.

d.  Haynes shall make available to each Plaintiff, Class Member, and future hourly employee a clean apron at the beginning of such employee's shift. Apron use will be at the employee's option and the apron must be turned in at the end of the employee's shift.

e.  For five (5) years following final approval of the settlement, Haynes will provide a report documenting the implementation of and compliance with the injunctive relief described above to Plaintiffs' counsel every six (6) months using the mutually agreed-upon form attached to th[e Settlement] Agreement as Exhibit 4.

*Id.* ¶¶25-26.

## C.  Preliminary Approval, Class Notice, and Claims Process

On May 4, 2017, this Court granted preliminary approval and ordered that notice of the proposed settlement be provided to the settlement class. Dkt. 290. On June 9, 2017, the claims administrator made live to the public a website containing information about the settlement and also mailed the Court-approved class notice and claim forms, in English and Spanish, to the 1,444 individuals on the putative class list. Baldwin Decl. ¶¶9-10 & Exs. B-C; *see also* Dkt. 278-1 ¶16(b). As of August 7, 2017, the claims administrator was able to send the class notice to all but 49 of those individuals, and was in the process of attempting to find updated addresses to re-mail notice to four of those individuals. Baldwin Decl. ¶12. Each personalized class settlement notice stated the recipient's estimated settlement amount (assuming full participation), the deadline for submitting a claim form (if a form were necessary), and the deadlines and procedures for opting out of or objecting to the settlement. Dkt. 278-1 ¶16(e); Baldwin Decl. Ex. C.

1    Class members have until August 23, 2017—75 days from the postmarked date of notice—

2 to opt out or object.  Baldwin Decl. ¶10; Dkt. 278-1 ¶¶18(b), 19(a).[3]  As of August 7, 2017, no

3 class member had opted out or submitted objections to the settlement.  Baldwin Decl. ¶¶13-14.

4    For settlement class members with deliverable home addresses, settlement checks will be

5 mailed to those addresses following final approval, and the class members need not submit any

6 claim form.  Dkt. 278-1 ¶16(e).  The only class members required by the settlement to file claim

7 forms are those who did not receive class notices at their home addresses.  *Id.*  The deadline for

8 submitting such a claim form or challenging the dates of employment listed in the personalized

9 class notices is August 23, 2017.  Baldwin Decl. ¶10; Dkt. 278-1 ¶16(e).  As of August 7, 2017,

10 twenty claim forms were submitted, but each was from a class member already on the class list,

11 such that the form simply provided a new deliverable home address.  Baldwin Decl. ¶16.

12 Accordingly, receipt of those twenty forms did not increase total class member participation in the

13 settlement.  *Id.*  As of August 7, 2017, no challenges have been lodged regarding the dates of

14 employment listed in the personalized class notices.  *Id.* ¶15.

15 **II.    Argument**

16    **A.    Final Approval of the Settlement Is Appropriate**

17    The Ninth Circuit recognizes a strong policy favoring voluntary settlement of complex class

18 actions.  "[V]oluntary conciliation and settlement are the preferred means of dispute resolution."

19 *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  This is "especially

20 true in complex class action" cases, which lend themselves to compromise because of the

21 difficulties of proof, uncertainty of outcome, and length and complexity of litigation.  *Id.*; *see also*

22 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy …

23 favors settlements, particularly where complex class action litigation is concerned.").

24    Federal Rule of Civil Procedure 23(e) requires that a class action settlement be "fair,

25 reasonable, and adequate" to merit approval.  The Ninth Circuit has identified a non-exhaustive list

26 of factors to guide the final approval inquiry, including (1) the amount offered in settlement, (2) the

27 _____

28 [3] Plaintiffs' filed their motion for attorneys' fees on July 26, 2017, 28 days before the deadline for submitting objections or opting out.  *See* Dkt. 291.  The claims administrator posted a copy of that motion to the public settlement website.  Baldwin Decl. ¶9.

1   strength of the plaintiffs' case balanced against the "risk, expense, complexity, and likely duration

2   of further litigation" and the "risk of maintaining class action status throughout the trial," (3) the

3   "extent of discovery completed" and the "stage of the proceedings," (4) the reaction of the class to

4   the proposed settlement, and (5) the informed views of experienced counsel.  *Hanlon*, 150 F.3d at

5   1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Vasquez v. Coast Valley

6   Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("This list of factors is not exclusive and the

7   court may balance and weight different factors ….").  With respect to the last factor, the

8   "recommendations of plaintiffs' counsel should be given a presumption of reasonableness,"

9   particularly when counsel has significant experience litigating similar cases.  *Boyd v. Bechtel

10  Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

11  (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the

12  settlement after hard-fought negotiations is entitled to considerable weight.").  The relative

13  importance of each factor will depend on the nature of the claims, the types of relief sought, and

14  the facts and circumstances presented by the individual case.  *Class Plaintiffs*, 955 F.2d at 1291.

15          When determining whether to grant final approval, "the court's intrusion upon what is

16  otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

17  limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

18  of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

19  taken as a whole, is fair, reasonable, and adequate to all concerned."  *Officers for Justice*, 688 F.2d

20  at 625; *see also Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the

21  individual component parts, that must be examined for overall fairness.").  This Court has already

22  concluded that the settlement "falls within the range of possible approval as fair, adequate, and

23  reasonable," Dkt. 290 at 3, and there is no reason to change that conclusion.

24              **1.      The Settlement Is Beneficial to Class Members**

25          The settlement with Haynes is a positive result for the class, especially in light of the risks

26  and uncertainties of litigation.  This settlement allows for the immediate disbursement of at least

27  $183,000 to the class, while class counsel continues to seek additional relief from the McDonald's

28  defendants by pursuing an appeal of this Court's adverse rulings.  The settlement also requires

1  Haynes to provide the significant prospective relief that is within Haynes' power to provide to

2  current workers. *See* Dkt. 278-1 ¶26; Dkt. 290 at 3-4 (ordering implementation of injunctive relief

3  effective May 14, 2017).

4       This settlement is particularly beneficial to plaintiffs and class members because they are

5  low-wage workers who generally earn at or near the minimum wage—such that providing them

6  with monetary relief now rather than later is of particular importance—and because the injunctive

7  aspects of the settlement are already binding and in effect.  In the absence of a settlement, class

8  members would at best recover damages many years from now, after a lengthy trial and possible

9  appeal, and would not benefit from the already-in-effect injunctive relief.  The certainty of a partial

10 monetary recovery and meaningful injunctive relief *now*, before additional fees and costs are

11 incurred, and before it becomes even more difficult to locate class members, is extremely

12 beneficial to the class.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503,

13 510 (E.D.N.Y. 2003) ("The potential for this complex litigation to result in enormous expense, and

14 to continue for a long time, was great."); *In re Austrian & German Bank Holocaust Litig.*, 80 F.

15 Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement

16 avoids the costs, delays and multitude of other problems associated with them.").

17      Moreover, because of Haynes' weakened financial condition and the potential that much or

18 all of any judgment against Haynes would be uncollectable, class counsel believe that this

19 settlement provides for payment to the class of a significant portion of the actual recovery that

20 could have been obtained from Haynes were plaintiffs to fully prevail on their claims at trial, as

21 well as all of the injunctive relief that it is within Haynes' power to implement.  *See* Dkt. 278-1 ¶5

22 (Haynes' financial condition was a material factor giving rise to plaintiffs' agreement to the

23 settlement amount); Rubin Decl. ¶14 (settlement became possible after Haynes provided

24 confidential financial documents for plaintiffs' counsel to review); *see also Class Plaintiffs*, 955

25 F.2d at 1295 ("[A] settling defendant's ability to pay may be a proper factor to be considered in

26 evaluating a proposed class action settlement."); *Lane*, 696 F.3d at 823-24.

27      For these reasons, both the settlement amount and the non-monetary benefits provided by

28 the settlement agreement support a finding that the settlement is fair, adequate, and reasonable.

### 2.     The Risks and Delay of Further Litigation Support Approval

Although plaintiffs believe they have a strong case and will ultimately prevail as they continue this litigation against the McDonald's defendants, all of the defendants in this lawsuit have disputed the facts, the applicable law, and the appropriateness of maintaining this case as a class action.  These are fact-intensive issues.  Given the sheer number of issues involved and the many potential stumbling blocks, the settlement achieved with Haynes is fair, adequate, and reasonable.  *See Nat'l Rural Telecomm. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (citation and internal quotation marks omitted).

The timing of the settlement is also beneficial to class members.  Plaintiffs continue to pursue the class claims against the McDonald's defendants, but even if plaintiffs are ultimately successful, the costs of continued litigation and uncertain results make settling with Haynes now preferable.  Plaintiffs settled with Haynes prior to obtaining a ruling on their motion for class certification and before Haynes' liability was conclusively determined.  If litigation against Haynes continued alongside the ongoing litigation against the McDonald's defendants, plaintiffs would have to incur further expert fees and face a trial and any appeals with respect to their claims against Haynes, all of which would delay recovery and incur expenses potentially cutting into class members' recovery.  Even an ultimately successful judgment against Haynes years in the future might be uncollectable, given Haynes' financial circumstances.  The McDonald's defendants, in contrast, face no similar financial limitations.  Settling with Haynes now is plainly in plaintiffs' best interest.  *See Nat'l Rural Telecomm.*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (internal quotation marks omitted).

### 3.     The Substantial Discovery Completed and the Stage of the Proceedings Support Approval

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Vasquez*, 266 F.R.D. at 489.  In this case, the parties have conducted extensive

1   discovery into the merits of plaintiffs' claims, class certification, and defendants' liability under

2   various legal theories.  The parties have taken more than a dozen depositions, including depositions

3   of representatives of both Haynes and McDonald's and all of the named plaintiffs.  Rubin Decl.

4   ¶12; Salazar Decl. ¶3d; Lopez Decl. ¶3d; Zarate Decl. ¶3d.  The parties also exchanged significant

5   written discovery.  Defendants produced more than 100,000 pages of documents, including payroll

6   and time records for the class (which were then analyzed by plaintiffs' expert).  Rubin Decl. ¶12.

7   Plaintiffs have carefully reviewed and analyzed the discovery produced, including with the

8   assistance of a forensic expert who reviewed Haynes' financial condition.  *Id.* ¶¶12, 14.  The

9   discovery conducted during this litigation is more than sufficient to provide class counsel with the

10   thorough understanding of the strength of plaintiffs' claims necessary to make a reasoned

11   evaluation of the proposed class action settlement's fairness and adequacy.

12   **4.      The Lack of Opposition by the Class Supports Approval**

13   As detailed above, the claims administrator mailed notice of the settlement to class

14   members on June 9, 2017, pursuant to the Court's preliminary approval order.  *See supra* at 7-8.

15   As of August 7, 2017, no class member has objected to or opted out of the settlement.  Baldwin

16   Decl. ¶¶13-14.  "The reactions of the members of a class to a proposed settlement is a proper

17   consideration for the trial court."  *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (internal quotation

18   marks omitted).  The fairness, reasonableness, and adequacy of the settlement are further supported

19   by the absence of any objections or requests to opt out.

20   **5.      The Experience and Views of Class Counsel Support Approval**

21   In evaluating a proposed class action settlement, "[g]reat weight is accorded to the

22   recommendation of counsel, who are most closely acquainted with the facts of the underlying

23   litigation."  *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (internal quotation marks omitted).  "Parties

24   represented by competent counsel are better positioned than courts to produce a settlement that

25   fairly reflects each party's expected outcome in the litigation."  *In re Pac. Enters. Sec. Litig.*, 47

26   F.3d 373, 378 (9th Cir. 1995).  Here, class counsel have extensive experience litigating

27   employment class actions and are well-positioned to assess the risks of continued litigation and the

28   benefits obtained by the settlement.  *See* Rubin Decl. ¶¶3-10; Declaration of Joseph M. Sellers in

1   Support of Plaintiffs' Motion for Attorneys' Fees and Costs, Dkt. 292, ¶¶3-13.  The parties

2   negotiated the settlement in good faith and at arm's length.  Rubin Decl. ¶14; Dkt. 290 at 3.

3   Substantial discovery, investigation, and research over the course of more than two years enabled

4   plaintiffs' experienced class action counsel to assess the strengths of plaintiffs' claims and the

5   benefits of the settlement.  Plaintiffs' counsel believe the settlement with Haynes is fair,

6   reasonable, adequate, and in the best interests of the class in light of all known facts and

7   circumstances, including in particular Haynes' documented financial condition.  Dkt. 278-1 ¶5.

8                    **6.      The *Bluetooth* Factors Support Approval**

9             This settlement also fully satisfies the factors addressed by the Ninth Circuit in *In re*

10  *Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011).  In *Bluetooth*,

11  the Ninth Circuit held that where a classwide settlement is reached before the district court grants

12  class certification, courts should apply a heightened level of scrutiny to look for evidence of

13  collusion between plaintiffs' counsel and defendants and for any other kind of conflict of interest.

14  *Id.*  There is no such evidence of collusion or conflict here.

15            There is no question, for example, that the attorneys' fees sought in this case are not

16  disproportionately high in relation to the funds available for awards to plaintiffs and members of

17  the class.  *See Bluetooth*, 654 F.3d at 947.  As discussed in plaintiffs' fees motion, class counsel

18  have requested an award of fees representing less than thirteen percent of the $235,000 gross

19  settlement fund, which is well below the range of fees commonly awarded in common fund cases

20  of this type, and significantly below class counsel's actual lodestar.  Dkt. 291 at 1, 7-10.  Likewise,

21  the service awards sought by the named plaintiffs represent a small amount of the gross settlement

22  fund, and fall well below the amount the Ninth Circuit has deemed "presumptively reasonable."

23  *Infra* at 17-18.[4]  Unlike in some cases deemed suspicious by the Ninth Circuit, any amount of fees

24  or service awards that is not approved by the Court will be applied to the net settlement fund

25  available for the class, rather than reverting to the settling defendant.  *See Bluetooth*, 654 F.3d at

26  _____

27  [4] Although plaintiff Salazar and Haynes reached a separate settlement agreement resolving
    Salazar's individual retaliation claim against Haynes, *see* Dkt. 277 at 3 n.2, that individual

28  settlement does not present any risk of collusion or conflict because it involves Salazar's unique,
    non-class claim against Haynes and is not contingent on the Court's approval of the class
    settlement.  *See* Dkt. 278 ¶6.

947.  The settlement is not contingent on the Court's award of fees and costs to class counsel or service awards to the named plaintiffs.  Dkt. 278-1 ¶35.  In short, there are no indicia of collusion or conflicts of interest that should give the Court any pause in approving the proposed settlement.

### B.   The Requested Named Plaintiff Service Awards Should Be Approved

In examining the reasonableness of a requested service payment, courts must consider all "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from these actions, … the amount of time and effort the plaintiff expended in pursuing the litigation … and reasonabl[e] fear[s of] workplace retaliation."  *Staton*, 327 F.3d at 977 (citation omitted).  Each of those factors weighs in favor of granting service payments in the present case.  The modest $1,500 award each named plaintiff seeks is less than one-third of the $5,000 amount that is "presumptively reasonable" in the Ninth Circuit, *Smith v. Am. Greetings Crop.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *10 (N.D. Cal. May 19, 2016), and represents reasonable compensation for the time named plaintiffs spent pursuing and settling class members' claims against Haynes; the information and insight named plaintiffs provided to class counsel to prosecute the case efficiently; the risks involved in bringing this case as named plaintiffs and class representatives; and the delays resulting from bringing this case on a class rather than individual basis.  The service awards are also justified by the broader release of rights that the named plaintiffs agreed to provide to Haynes as part of the settlement.

### 1.   Named Plaintiffs Took Significant Actions That Benefitted the Class as a Whole, and Expended Substantial Time Assisting with the Successful Prosecution of the Lawsuit and Negotiation of the Settlement

Service awards are payments to class representatives for their service to the class in bringing the lawsuit.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Class representatives bring critical factual knowledge to employment class actions, including information about employer policies and practices that affect wages.  *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *32-37 (N.D. Cal. Apr. 1, 2011).

In this case, each of the three plaintiffs took actions to protect the interests of the class and from which the class benefitted as a whole.  Plaintiffs' efforts included, but were not limited to, working with counsel to provide the facts underlying the claims set forth in the original and

1   amended complaints, and continuing to communicate with counsel throughout the litigation.

2   Salazar Decl. ¶¶2, 3a, 3b; Lopez Decl. ¶¶2, 3a, 3b; Zarate Decl. ¶¶2, 3a, 3b.  Each named plaintiff

3   also spent significant time preparing for her deposition, sat for a day-long deposition, and then

4   made corrections to the deposition transcript.  Salazar Decl. ¶¶3d, 3e; Lopez Decl. ¶¶3d, 3e; Zarate

5   Decl. ¶¶3d, 3e.  All three plaintiffs spent significant time searching for and providing documents

6   responsive to defendants' discovery requests, and working with class counsel to prepare, review,

7   and approve responses to interrogatories and multiple declarations.  Salazar Decl. ¶¶3c, 3f; Lopez

8   Decl. ¶¶3c, 3f; Zarate Decl. ¶¶3c, 3f.  Each plaintiff also participated in the settlement negotiation

9   process by speaking with class counsel in preparation for mediation, attending one or more all-day

10  mediation sessions with class counsel in San Francisco, and conferring with counsel after

11  mediation to review, discuss, and execute the written agreement.  Salazar Decl. ¶¶3g, 3h; Lopez

12  Decl. ¶¶3g, 3h; Zarate Decl. ¶¶3g, 3h .  In total, each named plaintiff spent between approximately

13  *58* and *83 hours* assisting in the prosecution and settlement of the class claims.  *See* Salazar Decl.

14  ¶3; Lopez Decl. ¶3; Zarate Decl. ¶3.

15          Courts regularly grant larger service awards to named plaintiffs who have expended less

16  time contributing to litigation.  *See, e.g.*, *Smith*, 2016 WL 2909429, at *10-11 (approving $5,000

17  incentive awards for plaintiffs who spent 20 to 25 hours on case); *Chavez v. PVH Corp.*, No. 13-

18  CV-01797-LHK, 2015 WL 9258144, at *9 (N.D. Cal. Dec. 18, 2015) (awarding $5,000 to plaintiff

19  who spent 40 hours on case and $2,500 to plaintiff who spent 15 hours on case); *Willner v.*

20  *Manpower Inc.*, No. 11-cv-02846-JST, 2015 WL 3863625, at *8-9 (N.D. Cal. June 20, 2015)

21  (awarding $7,500 to class representative who contributed 54 hours to litigation).  By actively

22  participating both in the ongoing litigation and in settlement strategy and negotiations, plaintiffs

23  contributed significantly to the successful resolution of their and the class's claims against Haynes.

24              **2.      The Broader Release Accepted by the Plaintiffs Supports Their Request**
                          **for Service Awards**
25

26          As part of the Settlement, each of the named plaintiffs agreed to execute a much broader

27  release than the release that applies to other settlement class members.  Whereas settlement class

28  members will release any and all claims that were alleged in the action, arise out of or are related to

1   the allegations and claims alleged in the action, and/or could have been alleged based on the facts,

2   matters, transactions, or occurrences alleged in the action through the date of the Settlement

3   Agreement, the named plaintiffs also agreed to waive and relinquish any and all employment-

4   related claims, rights, or benefits they may have against Haynes.  Dkt. 278-1 ¶¶1(z), 43, 44.  The

5   broader scope of release of known and unknown employment-related claims against Haynes

6   warrants an additional service award.  *See Dent v. ITC Serv. Grp., Inc.*, No. 12-CV-0009 JCM,

7   2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding enhancement in part because wage

8   plaintiff signed a general release); *Wade v. Kroger Co.*, No. 3:01-CV-699-R, 2008 WL 4999171, at

9   *13 (W.D. Ky. Nov. 20, 2008) (awarding plaintiffs additional compensation because they agreed to

10  a "release of all claims … broader than the release given by other members of this class").

11              **3.      The Risks Plaintiffs Took Support Their Request for Service Awards**

12              Service awards are particularly appropriate in wage-and-hour class actions where plaintiffs

13  undertake a significant "reputational risk" by bringing suit against their current or former

14  employers.  *Rodriguez*, 563 F.3d at 958-59.  In the workplace context, workers are often blacklisted

15  if they are considered "troublemakers," and employees who sue their employers are vulnerable to

16  retaliation and termination.  *See In re High-Tech Emp. Litig.*, 11-CV-02509 LHK, 2015 WL

17  5158730, at *17 (N.D. Cal. Sept. 2, 2015) (granting service awards based in part on named

18  plaintiffs' risk of future workplace retaliation and diminished future employment prospects for

19  being labeled "troublemakers"); *Connolly v. Weight Watchers N. Am. Inc.*, No 14-CV-01983 THE,

20  2014 WL 3611143, at *4 (N.D. Cal. July 21, 2014) (named plaintiffs assume "the risk of being

21  stigmatized or disfavored by their current or potential future employers by suing their employer");

22  *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *23 (D.N.J.

23  Apr. 8, 2011) (awarding enhancements to named plaintiffs in recognition of the fact that they "risk

24  their good will and job security in the industry for the benefit of the class as a whole").

25              These risks are present here.  Plaintiffs have documented their continued fear regarding

26  future negative impacts on their employment that might occur if a potential future employer

27  discovers (from a simple internet search) that they initiated a class action lawsuit against their

28  employers.  Salazar Decl. ¶¶4-5; Lopez Decl. ¶4; Zarate Decl. ¶4; *see Guippone v. BH S&B*

1  *Holdings, LL.*, No. 09-CV-01029 CM, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today,

2  the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become

3  known to prospective employers when evaluating that person.").  Plaintiffs might have been able to

4  resolve their individual claims against Haynes and McDonald's confidentially, but they were

5  willing to risk exposure and act as named plaintiffs in this litigation in order to secure a remedy for

6  fellow workers who might be unwilling, afraid, or unable to bring their own case.  Salazar Decl.

7  ¶¶4, 7-8; Lopez Decl. ¶¶6-7; Zarate Decl. ¶¶6-7; *see* Nantiya Ruan, *Bringing Sense to Incentives:*

8  *An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class*

9  *Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395, 411-13 (2006) (discussing the realistic fear of reprisal

10  facing employees who bring workplace class actions, unlike plaintiffs who bring consumer and

11  securities class actions).  The risk of retaliation and deterred future employment weighs in favor of

12  the requested service awards, especially for these low-income workers who are particularly

13  vulnerable to the adverse consequences that come with any gap in employment.  *See* Salazar Decl.

14  ¶6; Lopez Decl. ¶5; Zarate Decl. ¶5.

> ### 4.     The Reasonableness of Plaintiffs' Request Favors Granting Service Awards

17         To ensure that the amount of a requested service payment is reasonable, courts balance "the

18  number of named plaintiffs receiving incentive payments, the proportion of the payments relative

19  to the settlement amount, and the size of each payment."  *Staton*, 327 F.3d at 977; *see also I n re*

20  *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (applying these factors

21  and affirming incentive awards).

22         The amount being requested here, $1,500 per named plaintiff, is eminently reasonable in

23  light of the factors courts balance to ascertain the reasonableness of payments.  The service

24  payments amount to only a small amount of the total value of the settlement: The aggregate amount

25  of service awards requested in connection with the settlement ($4,500) is less than 2% of the

26  $235,000 gross settlement fund established by the settlement.  Moreover, this is not a case where

27  representative plaintiffs receive thousands of dollars while the class members get a coupon or

nominal damages.[5]  The average settlement payment from the Haynes settlement for each of the approximately 1,400 participating class members exceeds $130, and some class members will receive payments of more than $660.  *See* Baldwin Decl. ¶17.  Courts often approve service awards that represent a far greater percentage of the overall class settlement and that exceed the average settlement payment by a far greater amount.  *See, e.g.*, *In re Online DVD-Rental*, 779 F.3d at 947-48 (affirming incentive awards of $5,000 each for nine named plaintiffs where class members each received $12); *Chavez*, 2015 WL 9258144, at *9 (awarding named plaintiffs $5,000 and $2,500, where each class member received approximately $130); *In re High-Tech Emp. Litig.*, 2015 WL 5158730, at *17-18 (approving service awards of $80,000 to $120,000 per named plaintiff where the average class member received $5,770).

Further, the service payments that plaintiffs seek are significantly lower than the awards frequently approved by other federal judges in class actions in this Circuit.[6]  Indeed, service awards of up to $5,000—more than three times the amount requested here—are "presumptively reasonable" in the Ninth Circuit.  *Smith*, 2016 WL 2909429, at *10.[7]  Plaintiffs' request for far

---

[5] Nor is this a case like *Staton*, where the Ninth Circuit reversed a district court's settlement approval in part because the settlement involved enhanced payments to a group of *non-named plaintiff* class members selected by class counsel, including at least one individual who was not a class member at all.  *See* 327 F.3d at 975-78 & n.27.

[6] *See, e.g.*, *In re High-Tech Emp. Litig.*, 2015 WL 5158730, at *16-18; *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more …..") (collecting cases); *Graham v. Overland Solutions, Inc.*, No. 10-CV-0672 BEN, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (preliminarily approving $25,000 to each named plaintiff for their time, effort, risks undertaken for the payment of costs in the event the action had been unsuccessful, stigma upon future employment opportunities for having initiated an action against a former employer, and a general release of all claims related to their employment); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff).

[7] *See also Chavez*, 2015 WL 9258144, at *9 ("The Ninth Circuit has established $5,000 as a reasonable benchmark award for representative plaintiffs."); *Lopez v. Bank of Am., N.A.*, No. 10-CV-01207-JST, 2015 WL 5064085, at *8 (N.D. Cal. Aug. 27, 2015); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, No. C-10-02124 SI, 2014 WL 186375, at *3 (N.D. Cal. Jan. 16, 2014) ("In general, courts have found incentive payments of $5,000 presumptively reasonable"); *see also Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202,

1  more modest service payments of $1,500 each is thus reasonable.

2  **5.   Plaintiffs Should Be Awarded Service Payments to Encourage Private Attorneys General to Enforce Important Remedial Statutes**

3

4   Courts in this Circuit grant service payments to encourage "private attorney[s] general" to

5  bring important civil rights and employment rights cases that would not otherwise be heard.

6  *Rodriguez*, 563 F.3d at 959; *see also Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th

7  Cir. 1974) ("We also think there is something to be said for rewarding those [employees] who

8  protest and help to bring rights to a group of employees who have been the victims of [employer

9  wrongdoing].").  Without individuals who are willing to step forward and represent a class, the

10  public policies served by wage-and-hour class actions such as this litigation would be undermined.

11  "[E]ncouraging participation in class actions suits is a societal good, and if a fee is needed in order

12  to ensure that more people are willing to 'take the plunge' by serving as the named plaintiff in a

13  class action lawsuit, then incentive awards can be justified."  Elisabeth M. Sperle, *Here Today,*

14  *Possibly Gone Tomorrow: An Examination of Incentive Awards and Conflicts of Interest in Class*

15  *Action Litigation*, 23 Geo. J. Legal Ethics 873, 877 (2010).  Class representatives should be

16  rewarded for the personal sacrifices they make in order to vindicate the rights of others.  *See, e.g.,*

17  *Sauby v. City of Fargo*, No. 3:07-CV-10 RRE, 2009 WL 2168942, at *2 (D.N. Dakota, Jul. 16,

18  2009); *see also* Sperle, 23 Geo. J. Legal Ethics at 880-81 (identifying personal sacrifice,

19  opportunity costs, personal burdens, risk of retaliation, and publicity risks for named class

20  representatives).  Such sacrifices are particularly acute for low-income workers like the named

21  plaintiffs here, who live paycheck to paycheck.  Salazar Decl. ¶6; Lopez Decl. ¶5; Zarate Decl. ¶5.

22  This Court should also grant the requested service payments in recognition of the named plaintiffs'

23  sacrifices and service to the common good, as well as for the other reasons set forth above.

24  **C.   The Claims Administrator Should Be Ordered To Provide Class Counsel with Individual Settlement Class Members' Payment Amounts Before Distribution**

25

26   In the May 4, 2017 order granting preliminary approval to the proposed class action

27  _____

at *7 (N.D. Cal. Feb. 6, 2012) ("$5,000 is a reasonable amount"); *In re Mego Fin. Corp. Sec. Litig.*,

28  213 F.3d 454, 457, 463 (9th Cir. 2000) (approving $5,000 incentive awards); *Wren*, 2011 WL 1230826, at *37 (same); *Hopson v. Hanesbrands, Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (same).

1    settlement, this Court certified a settlement class consisting of individuals employed as crew

2    members in Haynes-operated restaurants during the class period, and appointed Altshuler Berzon

3    LLP and Cohen Milstein Sellers & Toll, PLLC as class counsel.  Dkt. 290 at 1-2.  With that

4    appointment, each of the members of the certified class became clients of Altshuler Berzon LLP

5    and Cohen Milstein Sellers & Toll, PLLC.  *See, e.g.*, *Parks v. Eastwood Ins. Servs., Inc.*, 235 F.

6    Supp. 2d 1082, 1083 (C.D. Cal. 2002).  As class counsel's clients, the class members are entitled to

7    competent and ethical representation, and have the right to receive full information and advice

8    from class counsel regarding the terms of the proposed settlement and their rights thereunder.

9         Disregarding the fact that class counsel now have an attorney-client relationship with each

10   member of the class, Haynes has taken the position during the class notice process that class

11   counsel are not entitled to receive and review the claims administrator's estimates of the individual

12   settlement payments that will be made to each specific class member (and that were included in the

13   class notices distributed to class members on June 9, 2017).  Haynes' counsel has asserted that

14   class counsel are instead entitled to receive only an "anonymized" version of those calculations in

15   which class members' names have been removed.  Because of the parties' dispute, the claims

16   administrator did not provide class counsel with a non-anonymized version of its individual

17   settlement payment calculations before the distribution of class notices.  *See* Baldwin Decl. ¶6

18   (explaining that class counsel were provided a class list and, at the instruction of Haynes' counsel,

19   "a separate file of the preliminary weeks worked and estimated payment calculations *with unique*

20   *identifiers to replace the class members' identifying information*") (emphasis added).

21        Contrary to Haynes' position, there is no basis for restricting class counsel's access to

22   information regarding the individual payment amounts that will be received by each of the

23   settlement class members.  Those class members have an attorney-client relationships with class

24   counsel, and class counsel have a right to receive all relevant information regarding their clients'

25   rights under the settlement, including the specific amount each client is estimated to recover.

26   Without that information, class counsel cannot undertake a full review of the claims administrator's

27   calculations to ensure that there are no errors, and cannot respond to clients' inquiries regarding

28   their rights, including their likely recoveries.  *But see* Fed. R. Civ. P. 23(g) ("Class counsel must

1   fairly and adequately represent the interests of the class.").[8]  Haynes' counsel has suggested that

2   class counsel should attempt to work around these obstacles by contacting the claims administrator

3   each time when clients ask for information that class counsel has been denied, and by reviewing

4   the claims administrator's payment calculations in the abstract rather than by reference to actual

5   class members' names, but there is no legal basis for imposing such limitations on class counsel's

6   ability to represent their clients or ensure that the terms of the settlement and this Court's orders are

7   fully and accurately implemented.  This Court should instruct the claims administrator to provide

8   class counsel with the amount that will be paid to each identified settlement class member and the

9   underlying calculations no fewer than 14 days before settlement payments are distributed.

10  **III.    CONCLUSION**

11          For the foregoing reasons, this Court should grant final approval of the class settlement

12  between plaintiffs and Haynes; award $1,500 in service awards to each of the three named

13  plaintiffs; and order the claims administrator to provide class counsel with each settlement class

14  member's individual settlement payment amount in advance of the distribution of settlement

15  payments, without class member identifying information removed.

16  Date:   August 10, 2017                    Respectfully submitted,

17

18                                              By:    _/s/ Matthew J. Murray_____
                                                       Matthew J. Murray

19                                              MICHAEL RUBIN
20                                              BARBARA J. CHISHOLM
                                                P. CASEY PITTS
21                                              MATTHEW J. MURRAY
                                                RAPHAEL N. RAJENDRA
22                                              Altshuler Berzon LLP

23                                              JOSEPH M. SELLERS (*pro hac vice*)
                                                MIRIAM R. NEMETH (*pro hac vice*)
24                                              Cohen Milstein Sellers & Toll, PLLC

25                                              *Attorneys for Plaintiffs*

26

27  _____

28  [8] The class notice instructs class members to contact either the claims administrator or class
    counsel for information, and numerous class members have contacted class counsel asking about
    the settlement and their rights thereunder.