**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GUADALUPE SALAZAR; GENOVEVA LOPEZ; JUDITH ZARATE, on behalf of themselves and all others similarly situated,<br>*Plaintiffs-Appellants*,<br><br>v.<br><br>MCDONALD'S CORP., a corporation; MCDONALD'S USA, LLC, a limited liability company; MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., a corporation; BOBBY O. HAYNES SR. AND CAROL R. HAYNES FAMILY LIMITED PARTNERSHIP, dba McDonald's, erroneously sued as Bobby O. Haynes and Carole R. Haynes Family Limited Partnership,<br>*Defendants-Appellees.* | No. 17-15673<br><br>D.C. No.<br>3:14-cv-02096-RS<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted October 17, 2018
San Francisco, California

Filed October 1, 2019

Before: Sidney R. Thomas, Chief Judge, and Andrew J.
Kleinfeld and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber;
Partial Concurrence and Partial Dissent by
Chief Judge Thomas

## SUMMARY[*]

### California Employment Law

The panel affirmed the district court's summary judgment
in favor of McDonald's Corp. in a class action brought by
McDonald's employees alleging that they were denied
overtime premiums, meal and rest breaks, and other benefits
in violation of the California Labor Code.

The plaintiff class members worked at McDonald's
franchises in the Bay Area operated by the Haynes Family
Limited Partnership.

The panel held that the district court properly ruled that
McDonald's was not an employer under the "control"
definition, which requires "control over the wages, hours,
or working conditions." *Martinez v. Combs*, 231 P.3d 259,
277 (Cal. 2010). The panel also held that the district court
correctly concluded that McDonald's did not meet the "suffer

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

or permit" definition of employer. The panel held that under California common law, McDonald's cannot be classified as an employer of its franchisees' workers. The panel concluded that although there was arguably evidence suggesting that McDonald's was aware that Haynes was violating California's wage-and-hour laws with respect to Haynes' employees, there was no evidence that McDonald's had the requisite level of control over plaintiffs' employment to render it a joint employer under applicable California precedents.

The panel held that McDonald's cannot be held liable for wage-and-hour violations under an ostensible-agency theory.

The panel rejected plaintiffs' claim that McDonald's owed them a duty of care, which it breached by supervising Haynes' managers inadequately and failing to prevent the alleged hour-and-wage violations. The panel held that plaintiffs met neither the damages nor the duty elements required to prove negligence.

The panel did not consider plaintiffs' arguments on the merits of the district court's rulings striking plaintiffs' representative Private Attorney General Act claims, and denying class certification.

Chief Judge Thomas concurred in part and dissented in part. Chief Judge Thomas agreed with the majority that there was no genuine issue of material fact regarding whether McDonald's was an employer under the "control" or common law definitions. Dissenting, Chief Judge Thomas would hold

that there were genuine issues of material fact regarding whether McDonald's was a joint employer of franchise location workers under the "suffer or permit" definition.

## COUNSEL

Michael Rubin (argued), Barbara J. Chisholm, P. Casey Pitts, and Matthew J. Murray, Altshuler Berzon LLP, San Francisco, California; Joseph M. Sellers and Miriam R. Nemeth, Cohen Milstein Sellers & Toll PLLC, Washington, D.C.; for Plaintiffs-Appellants.

Pratik A. Shah (argued), James E. Tysse, and Martine E. Cicconi, Akin Gump Strauss Hauer & Feld LLP, Washington, D.C.; Michael I. Gray and Elizabeth B. McRee, Jones Day, Chicago, Illinois; Kelsey Israel-Trummel, Jones Day, San Francisco, California; for Defendants-Appellees.

Catherine K. Ruckelshaus, National Employment Law Project, New York, New York; Shannon Liss-Riordan, Lichten & Liss-Riordan P.C., Boston, Massachusetts; for Amici Curiae National Employment Law Project, Impact Fund, Legal Aid at Work, Centro Legal de la Raza, Asian Americans Advancing Justice—Los Angeles, Los Angeles Alliance for a New Economy, and Equal Rights Advocates.

Dennis J. Herrera, City Attorney; Christine Van Aken, Chief of Appellate Litigation, Yvonne Meré, Chief of Complex & Affirmative Litigation; Matthew Goldberg, Deputy City Attorney; Office of the City Attorney, San Francisco,

California; Barbara J. Parker, City Attorney; Maria Bee, Special Counsel; Erin Bernstein, Senior Deputy City Attorney; Malia McPherson, Attorney; Office of the City Attorney, Oakland, California; for Amici Curiae City of Oakland and City and County of San Francisco.

Karen Marchiano, DLA Piper LLP (US), East Palo Alto, California; Norman M. Leon and John F. Verhey, DLA Piper LLP (US), Chicago, Illinois; for Amici Curiae International Franchise Association and California Restaurant Association.

Robert R. Roginson, Ogletree Deakins Nash Smoak & Stewart P.C., Los Angeles, California, for Amici Curiae Employers Group and Chamber of Commerce of the United States of America.

## OPINION

GRABER, Circuit Judge:

In this class action, workers employed at McDonald's franchises in California appeal from a summary judgment entered in favor of McDonald's. Plaintiffs allege that they were denied overtime premiums, meal and rest breaks, and other benefits in violation of the California Labor Code. Plaintiffs further allege that McDonald's (the franchisor) and the franchisee are joint employers and that McDonald's is, therefore, liable for these violations. The district court held that McDonald's is not a joint employer of the franchisee's employees and that Plaintiffs' ostensible-agency and negligence claims fail as a matter of law. Reviewing the summary judgment de novo, and viewing the facts in the light most favorable to Plaintiffs, *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 988–89 (9th Cir. 2016) (en banc) (per curiam), we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

McDonald's U.S.A., LLC[1] contracts with franchisees to license the McDonald's name, trademark, and various business practices. The Haynes Family Limited Partnership ("Haynes") operated eight McDonald's franchises in Oakland and San Leandro, California, during the relevant period. The franchise agreements required Haynes to pay fees to McDonald's. To maintain the franchise, Haynes had to meet certain standards, such as serving McDonald's products.

---

[1] McDonald's Corp. is also a defendant. For ease of reference we label the McDonald's defendants collectively as "McDonald's."

Plaintiffs Guadalupe Salazar, Genoveva Lopez, and Judith Zarate worked at a Haynes-operated McDonald's franchise restaurant in Oakland.  They sued McDonald's and Haynes on behalf of a class of approximately 1,400 employees at Haynes-operated McDonald's franchises in the Bay Area. They allege that McDonald's and Haynes denied overtime premiums, meal and rest breaks, and other benefits in violation of California wage-and-hour statutes.  Plaintiffs also allege negligence and seek civil penalties under California's Private Attorneys General Act ("PAGA").  Plaintiffs further allege that McDonald's and Haynes are their joint employers. The relevant facts in the record, viewed in Plaintiffs' favor, are these.

Haynes selects, interviews, and hires employees for its franchises.  It trains new employees and sets their wages, which are paid from Haynes' bank account.  Haynes sets employees' schedules and monitors their time entries. Haynes also supervises, disciplines, and fires employees such as Plaintiffs.  There is no evidence that McDonald's performs any of those functions.

Nonetheless, evidence in the record, viewed in Plaintiffs' favor, would permit a finding that McDonald's could have *prevented* some of the alleged wage-and-hour violations but did not do so.  Under the franchise agreement, McDonald's required Haynes to use its Point of Sale ("POS") and In-Store Processor ("ISP") computer systems every day to open and close each franchise location of McDonald's.  Managers of the Haynes McDonald's franchises took various courses with McDonald's at Hamburger University and then trained other employees on topics such as meal and rest break policies.  At least one McDonald's-trained manager was required to be present during each shift at the Haynes franchises.

8          SALAZAR V. MCDONALD'S CORP.

Haynes management also voluntarily used the McDonald's computer systems for scheduling, timekeeping, and determining regular and overtime pay through applications that come with the ISP software, including e*Restaurant People Management Deployment and McDonald's Dynamic Shift Positioning Tool. The e*Restaurant app is described as "a bundle of tools designed to innovate employee management—from hire to retire." It includes e*HR and e*Labor. The Positioning Tool determines where employees "should be positioned throughout their shifts and what duties they should perform." McDonald's encouraged franchisees to use these additional applications but did not require them to do so.

McDonald's ISP system assigns all hours recorded by workers to the date on which the shift began, including on overnight shifts. Plaintiffs allege that this system caused many employees who worked more than eight hours in a 24-hour period—for example, by working an overnight shift followed by a day shift—to miss out on overtime pay that they earned, because the system did not recognize these additional hours as overtime. The ISP system is also set to daily and weekly overtime thresholds of 8:59 hours (instead of 8:00 hours) and 50:00 hours (instead of 40:00 hours). Plaintiffs allege that the system's settings caused many workers to miss out on overtime pay that they earned for working between eight and nine hours in one day or between 40 and 50 hours in one week. The ISP settings do not schedule any rest breaks or require second meal periods. Under the ISP settings, meal periods are set to occur at intervals of 5:15, 5:30, or 6:00 hours, instead of at the five-hour mark required by California law. And the ISP does not flag when rest breaks are missed. Plaintiffs allege that these

settings caused workers to miss out on overtime pay that they should have earned for missed and late breaks.

McDonald's represented to Haynes that its computer systems were "user-friendly" and would make "personnel maintenance easier." It further attested that the ISP settings were compliant with labor laws and strongly encouraged Haynes not to change any of the settings. And in some instances, Haynes management did not even have the ability to change ISP system settings to fix overtime allocation errors.

Additionally, McDonald's required Haynes' employees to wear standard uniforms and to keep those uniforms "clean and neat." Plaintiffs allege that their working conditions—for example, being stationed near hot grease—caused excessive soiling of their uniforms, which in turn required special cleaning.

After the filing of this action, Plaintiffs and Haynes reached a classwide settlement involving both injunctive and monetary relief. McDonald's then moved for summary judgment on the ground that it is not a joint employer of workers at franchises and that it owes them no duty of care. The district court entered summary judgment in favor of McDonald's, ruling that McDonald's is not a joint employer of Plaintiffs because "it d[oes] not retain or exert direct or indirect control over plaintiffs' hiring, firing, wages, hours, or material working conditions" and does not "suffer or permit plaintiffs to work, [or] engage in an actual agency relationship" with the franchisee. The court denied Plaintiffs' negligence claim on the basis of California's "new-right exclusive remedy doctrine." Later, the court granted McDonald's' Federal Rule of Civil Procedure 12(f) motion to

strike Plaintiffs' PAGA claims because a classwide adjudication of Plaintiffs' ostensible-agency theory was "unmanageable." McDonald's then filed another summary judgment motion, arguing that ostensible agency can never support employer liability for California wage-and-hour violations. The court granted that summary judgment motion, holding that California Wage Order No. 5-2001, section 2(H)'s definition of an employer precludes ostensible-agency liability. Plaintiffs timely appealed.

## DISCUSSION

### A. *Joint Employment*

Under California Wage Order No. 5-2001, section 2(H), an "employer" is one "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." In construing Wage Order No. 5-2001, the California Supreme Court has provided three alternative definitions for what it means for a person or entity to "employ[]" someone: "(a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law relationship." *Martinez v. Combs*, 231 P.3d 259, 277–79 (Cal. 2010). "When interpreting state law, we are bound to follow the decisions of the state's highest court." *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc). And "[w]hen the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Id.*

*Martinez* considered whether seasonal agricultural workers were employed, not solely by the strawberry farmer

for whom they worked directly, but also by the produce merchants to whom the farmer sold strawberries. 231 P.3d at 262–68. The court held that the farmer alone employed the agricultural workers because he "hired and fired his employees, trained them when necessary, told them when and where to report to work, when to start, stop and take breaks, provided their tools and equipment, set their wages, paid them, handled their payroll and taxes, and purchased their workers' compensation insurance." *Id.* at 264 (footnote omitted). By contrast, the produce merchants merely provided financial support to the farmer and generally benefited from the workers' labor. *Id.* at 282. Any direct orders that they gave—for instance, instructing workers on how best to pack the strawberries—were for quality control purposes. *See id.* at 281–87.

Following the *Martinez* decision, the California Supreme Court considered whether "a franchisor stand[s] in an employment . . . relationship" with franchisee employees "for purposes of holding it vicariously liable for workplace injuries" caused by other employees. *Patterson v. Domino's Pizza, LLC*, 333 P.3d 723, 725 (Cal. 2014). Echoing *Martinez*, the court held that the franchisor was not a joint employer because a franchisor "becomes potentially liable for actions of the franchisee's employees, only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees." *Patterson*, 333 P.3d at 739–40.

### 1. *"Control" Definition of Employer*

The district court properly ruled that McDonald's is not an employer under the "control" definition, which requires

"control over the wages, hours, or working conditions," *Martinez*, 231 P.3d at 277.   Any direct control that McDonald's asserts over franchisees' workers is geared toward quality control, as was true in *Martinez* and *Patterson*. McDonald's does not retain "a general right of control" over "day-to-day aspects" of work at the franchises.   Franchisors like McDonald's need the freedom to "impose[] comprehensive and meticulous standards for marketing [their] trademarked brand and operating [their] franchises in a uniform way."   *Patterson*, 333 P.3d at 725–26. McDonald's involvement in its franchises and with workers at the franchises is central to modern franchising and to the company's ability to maintain brand standards, but does not represent control over wages, hours, or working conditions.

## 2.   *"Suffer or Permit" Definition of Employer*

The district court also correctly concluded that McDonald's does not meet the "suffer or permit" definition of employer.   Plaintiffs argue that McDonald's is a joint employer because it induced Haynes to use the ISP system, while discouraging changes in that system that would have conformed to California wage-and-hour laws—that is, because McDonald's had the ability to prevent wage-and-hour violations caused by its ISP system's settings yet failed to do so.   Plaintiffs' focus on responsibility for the alleged *violations* of wage-and-hour laws is misplaced, because the "suffer or permit" definition pertains to responsibility for *the fact of employment itself*.   The question under California law is whether McDonald's is one of Plaintiffs' employers, not whether McDonald's caused Plaintiffs' employer to violate

wage-and-hour laws by giving the employer bad tools or bad advice.[2]

The history and meaning of "suffer or permit" are well explained in *Curry v. Equilon Enterprises, LLC*, 233 Cal. Rptr. 3d 295 (Ct. App. 2018). The basis of liability, the Court of Appeal explained, is "the defendant's knowledge of and failure to prevent the work from occurring." *Id.* at 311 (quoting *Martinez*, 231 P.3d at 282). Applying that understanding, derived from California Supreme Court cases, the Court of Appeal held that the owner of a gas station was not an employer of the station operator's manager, because the responsibility for hiring, firing, and assignment of daily tasks belonged to the lessee/operator: "Shell did not acquiesce to [the plaintiff's] employment because Shell was not in a position to terminate [the plaintiff] or hire a different person to perform the tasks [he] performed." *Id.* And, "[b]ecause the 'good cause shown' clause was not triggered, Shell could not have [the plaintiff] physically removed from the station." *Id.* Therefore, the court held that Shell could neither suffer nor permit the plaintiff to work. *Id.*; *see also Turman v. Superior Court*, 246 Cal. Rptr. 3d 607, 618–20 (Ct. App. 2017) (holding that the owner of the employing entity may be a joint employer under state wage-and-hour laws where the owner dominated the employing entity, hired and fired the non-exempt managers, instructed them to fire the plaintiff, and exercised actual control over the employing entity's employees); *Futrell v. Payday Cal., Inc.*, 119 Cal. Rptr. 3d 513, 524–25 (Ct. App. 2010) (applying *Martinez* and holding that a payroll processing service was not a joint employer, even though the payroll service exercised control

---

[2] We need not and do not decide here whether McDonald's may be liable to Haynes.

14          SALAZAR V. MCDONALD'S CORP.

over workers' wages by calculating their pay and tax withholding and by issuing paychecks on its own account, and reasoning that "[t]here is no evidence in the current case [the defendant] allowed [the plaintiff] to suffer work, or permitted him to work, because there is no evidence showing [the defendant] had the power to either cause him to work or prevent him from working").

*Guerrero v. Superior Court*, 153 Cal. Rptr. 3d 315 (Ct. App. 2013), on which Plaintiffs rely, is consistent with *Curry*. *Guerrero* held that, although Sonoma County and the Sonoma County In-Home Support Services Public Authority

> do not directly hire, fire or supervise providers, through their "power of the purse" and quality control authority, [the County and Public Authority] have the ability to prevent recipients and providers from abusing [in-home support services] authorizations both as to the type of services performed and the hours worked. [The County and Public Authority] exercise effective control over the eligibility determination and the authorization of particular services for recipients. They can investigate instances of suspected fraud or abuse of the program and can terminate payments where fraud is demonstrated.

*Id.* at 346. In context, the "power of the purse" and the "quality control authority" both appear effectively to describe power over hiring and firing, *see id.* at 345–47, not the ability merely to prevent wage-and-hour violations. Moreover, *Guerrero* considered two public entities—Sonoma County and the Public Authority—with somewhat overlapping

responsibility for implementing a program of benefits, specifically in-home support services to eligible recipients. *Id.* at 319, 321–25. *Guerrero* did not consider a relationship (franchise or otherwise) between independent, private companies.

The more cabined meaning of "suffer or permit to work" stated in *Curry* does not render that definition superfluous when considered in the context of the other two definitions of employer, as Plaintiffs argue. Under other state laws and the Fair Labor Standards Act, for example, the "suffer or permit to work" definition typically applies when a staffing agency, as the primary employer, supplies employees to another entity or person. *See, e.g.*, *Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754, 758–61 (Mo. 2014) (holding that the owner/operator of a hotel was a joint employer with the staffing agency that supplied employees to the hotel); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305–06 (4th Cir. 2006) (holding that a Saudi prince jointly employed the person who guarded him, along with the security firm that employed and provided the guard). Such entities or persons would not be covered by the other, alternative definitions of employer.

We acknowledge that *Martinez* states ambiguously that "[a] proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." 231 P.3d at 281. But *Martinez* held that the defendants did not suffer or permit the plaintiffs to work "because neither *had the power to prevent plaintiffs from working*," and the court noted that the third-party employer "had the exclusive power to hire and fire [the] workers, to set

their wages and hours, and to tell them when and where to report to work." *Id.* at 282 (emphasis added); *cf. Patterson*, 333 P.3d at 739 ("A franchisor . . . becomes potentially liable for actions of the franchisee's employees, only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees.").

Plaintiffs also call our attention to *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018). There, the California Supreme Court adopted a new test for distinguishing employees from independent contractors under California wage orders. That case has no bearing here, because no party argues that Plaintiffs are independent contractors. Plaintiffs are Haynes' employees; the relevant question is whether they are also McDonald's' employees.

### 3. *"Common Law" Definition of Employer*

Finally, the district court correctly concluded that McDonald's is not an employer under the common law definition. According to California common law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 404 (Cal. 1989) (internal quotation marks omitted); *see also Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 171 (Cal. 2014) (the person or entity "retains all *necessary* control over its operations" (internal quotation marks omitted)). In *Patterson*, the court held that the "'means and manner' test generally used by the Courts of Appeal cannot stand for the proposition that a comprehensive

[franchise] system alone constitutes the 'control' needed to support vicarious liability claims." 333 P.3d at 738. Instead, in the franchise context, a franchisor also must "retain[] or assume[] a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees." *Id.* at 739. Essentially, *Patterson* established a connection between the "control" and "common law" definitions of employer in the franchise context.

Here again, McDonald's exercise of control over the means and manner of work performed at its franchises is geared specifically toward quality control and maintenance of brand standards. Thus, McDonald's cannot be classified as an employer of its franchisees' workers under the common law definition.

In short, arguably there is evidence suggesting that McDonald's was aware that Haynes was violating California's wage-and-hour laws with respect to Haynes' employees. But there is *no* evidence that McDonald's had the requisite level of control over Plaintiffs' employment to render it a joint employer under the principles set forth in *Martinez*, *Curry*, and other applicable California precedents.

B.  *Ostensible Agency*

Plaintiffs next argue that McDonald's is liable for wage-and-hour violations under an ostensible-agency theory, pursuant to Wage Order 5-2001. As noted, that order defines "employer" to mean one who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." *Id.* § 2(H). By its plain terms, the reference to an

"agent" applies only to an entity that actually employs the worker or that actually exercises control over the wages, hours, or working conditions of the worker. McDonald's does none of those things.

Plaintiffs correctly note that, in California, agency principles ordinarily encompass both actual and ostensible agency. *See, e.g.*, *Pasadena Medi-Ctr. Assocs. v. Superior Court*, 511 P.2d 1180, 1186 (Cal. 1973) (so stating). But the Wage Order is more specific and, therefore, controls. Cal. Civ. Proc. Code § 1859. Thus, we hold that McDonald's cannot be held liable for those violations under an ostensible-agency theory.

## C.  *Negligence Claim*

Next, Plaintiffs allege that McDonald's owed them a duty of care, which it breached by supervising Haynes' managers inadequately and thereby failing to prevent the alleged wage-and-hour violations. This claim fails for two reasons.

First, the negligence claim arises from the same facts as the wage-and-hour claims. Under California law, "where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." *Rojo v. Kliger*, 801 P.2d 373, 381 (Cal. 1990).

The California Labor Code created new rights not previously existing at common law. *Brewer v. Premier Golf Props.*, 86 Cal. Rptr. 3d 225, 232–33 (Ct. App. 2008). Plaintiffs contend that their negligence claim did exist at common law because it is a claim for negligent supervision of Haynes. But that theory cannot succeed unless Plaintiffs

prove damages.  *Mendoza v. City of Los Angeles*, 78 Cal. Rptr. 2d 525, 528 (Ct. App. 1998) ("The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury.").  And Plaintiffs cannot prove damages except by establishing a *statutory* wage-and-hour violation, which brings us full circle to the exclusivity of the statutory remedy.

Second, Plaintiffs must also prove duty.  *Id.*  Under California law McDonald's had no "supervisory" duties with respect to Haynes.  *See Patterson*, 333 P.3d at 743 (holding that a franchisor is liable vicariously only "if it has retained or assumed the right of general control over the relevant day-to-day operations at its franchised locations"); *cf. Goonewardene v. ADP, LLC*, 434 P.3d 124, 139 (Cal. 2019) (holding that a payroll company did not have a tort duty of care to an employee with respect to the obligations imposed by the applicable labor statutes and wage orders and stating: "An employee's interest in this regard is fully protected by the employee's well-established right under labor statutes to recover in a civil action against the employer the full wages and other significant remedies (including attorney fees and potential civil penalties) that are authorized under those statutes.").  Therefore, Plaintiffs meet neither the damages nor the duty elements required to prove negligence.

D.  *PAGA Claim and Denial of Class Certification*

Finally, Plaintiffs contend that the district court erred by striking their representative PAGA claim and by denying class certification.  Because we affirm dismissal of all claims, we need not and do not consider Plaintiffs' arguments on the merits of these rulings.  *See* Cal. Labor Code § 2699

(employment relationship required to recover PAGA penalties).

**AFFIRMED.**

---

THOMAS, Chief Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly concluded that no genuine issues of material fact exist regarding whether McDonald's is an employer under the "control" or common law employer definitions. However, because genuine issues of material fact exist regarding whether McDonald's is a joint employer of franchise location workers under the "suffer or permit" definition, I respectfully dissent.

The "remedial nature" and legislative history of California wage-and-hour laws compel a broader reading of the "suffer or permit" definition than the one the majority adopts today. *See Martinez*, 49 Cal. 4th at 61 (explaining the "remedial nature of the legislative enactments authorizing the regulation of wages, hours[,] and working conditions" were "for the protection and benefit of employees" and should be "liberally construed with an eye to promoting such protection"). The "suffer or permit" definition, used in wage orders since 1916, has its roots in the language of early 20th-century statutes prohibiting child labor. *Id.* at 69. "Statutes so phrased were generally understood to impose liability on the proprietor of a business who knew child labor was occurring in the enterprise but failed to prevent it, despite the absence of a common law employment relationship." *Id.*

at 69; *see also id.* at 58 (explaining that courts applying this language before 1916 imposed liability on a manufacturer for industrial injuries suffered by a boy hired by his father to oil machinery and a mining company for injuries sustained by a boy paid by coal miners to carry water).  As the California Supreme Court has explained, this "historical meaning continues to be highly relevant today:  A proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so."  *Id.* The basis for liability under this definition is thus a defendant's failure "to prevent the unlawful condition" or "to perform the duty of seeing to it that the prohibited condition does not exist."  *Id*.  It "rests upon principles wholly distinct from those relating to master and servant."  *Id.*  And it is more expansive than the definition for employer status based on control.  *See e.g.*, *id*. at 58 (explaining the test is designed to reach even irregular working arrangements).

The factual circumstances in *Martinez* and *Patterson* do not directly implicate the "suffer or permit" definition, nor do they compel an opposite conclusion.  In *Martinez*, the unrelated merchants had no knowledge that work was occurring under unlawful conditions nor did they cause it or have the power but fail to prevent it from occurring.  *Id.* at 70. In *Patterson*, Domino's did not cause and had no knowledge of, nor the ability to, remedy the sexual harassment out of which that case arose.  60 Cal. 4th at 502–03.  Indeed, the court in *Patterson* underscored that "[t]he uncontradicted evidence showed that the franchisee imposed discipline consistent with his own personnel policies, declined to follow the ad hoc advice of the franchisor's representative, and

neither expected nor sustained any sanction for doing so." *Id.*
at 479.

In contrast, Plaintiffs here presented evidence that
McDonald's In-Store Processor computer system ("ISP")—
with settings McDonald's prescribed, instructed Haynes to
use, and represented were in compliance with wage-and-hour
laws—was a direct cause of their lost wages. Under the
franchise agreement, McDonald's requires Haynes to use its
ISP computer systems to open and close each franchise
location of McDonald's for the day. McDonald's ISP system
assigns all hours recorded by workers to the date the shift
began, including on overnight shifts. Plaintiffs allege this
system caused many workers who worked more than eight
hours in a 24-hour day—for example, by working an
overnight shift followed by a day shift—to miss out on
overtime pay they earned because the system did not
recognize these additional hours as overtime. The ISP system
is also set to daily and weekly overtime thresholds of
8:59 hours (instead of 8:00 hours) and 50:00 hours (instead of
40:00 hours). Plaintiffs allege the system settings caused
many workers to miss out on overtime pay they earned for
working between eight and nine hours in one day or between
40–50 hours in one week. The ISP settings do not schedule
any rest breaks or require second meal periods. The ISP
settings for meal periods are set at 5:15, 5:30, or 6:00 hours
instead of the 5:00 hours required by California law. And the
ISP does not flag when rest breaks are missed. Plaintiffs
allege these settings caused workers to miss out on overtime
pay they earned for missed and late breaks. Plaintiffs allege
that Haynes management had limited or no ability to change
the ISP system to fix overtime allocation errors. They also
presented evidence suggesting McDonald's was aware that
work was occurring under unlawful conditions because

Haynes received "Labor Violations" from McDonald's for shifts where workers should have received proper meal and rest breaks. Reasonable inferences can be drawn that McDonald's had the ability to prevent wage-and-hour violations caused by its ISP system settings yet failed to do so.

In deciding whether summary judgment was appropriate, we must draw all reasonable inferences in favor of the plaintiffs. In liberally construing California Wage Order No. 5-2001, §2(E), and analyzing decisions of California's highest court, I cannot conclude there are no triable issues regarding whether McDonald's is a joint employer of franchise location workers under the "suffer or permit" definition. For this reason, I would reverse the district court's grant of summary judgment for Defendant, and I respectfully dissent, in part.[1]

---

[1] I would accordingly find that the district court's denial of class certification and its order striking Plaintiffs' PAGA claim were in error because they were based on the improper grant of summary judgment. I would not reach Plaintiff's alternative negligence claim.